1  JENNIFER LEE TAYLOR (SBN 161368)
   JTaylor@mofo.com
2  STACEY M. SPRENKEL (SBN 241689)
   SSprenkel@mofo.com
3  JOYCE LIOU (SBN 277720)
   JLiou@mofo.com
4  AMANDA D. PHILLIPS (SBN 305614)
   APhillips@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone:    (415) 268-7000
7  Facsimile:    (415) 268-7522

8  *Attorneys for Defendants*
   UBIQUITI NETWORKS, INC. and
9  CHING-HAN TSAI

10          **IN THE UNITED STATES DISTRICT COURT FOR THE**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                   **SAN FRANCISCO DIVISION**

12

13  SYNOPSYS, INC.,                              Case No. 5:17-cv-00561-WHO

14                   Plaintiff,                   **DEFENDANTS UBIQUITI
                                                  NETWORKS, INC. AND CHING-
15          v.                                    HAN TSAI'S NOTICE OF
                                                  MOTION AND MOTION TO
16  UBIQUITI NETWORKS, INC., UBIQUITI             DISMISS PLAINTIFF'S SECOND,
    NETWORKS INTERNATIONAL LIMITED,               THIRD, FOURTH, FIFTH,
17  CHING-HAN TSAI, and DOES 1-20,                SIXTH, AND SEVENTH CLAIMS
    inclusive                                     PURSUANT TO RULE 12(b)(6)**
18
                     Defendants.                  Date: May 17, 2017
19                                                Time: 2:00 p.m.
                                                  Place: Courtroom 2, 17th Floor
20                                                Judge: Honorable William H. Orrick

21  UBIQUITI NETWORKS, INC.,

22                   Counterclaimant,

23          v.

24  SYNOPSYS, INC.,

25                   Counterdefendant.

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................... 1

STATEMENT OF RELIEF REQUESTED .............................................................. 1

INTRODUCTION ................................................................................................... 2

BACKGROUND ...................................................................................................... 2

LEGAL STANDARD............................................................................................... 2

ARGUMENT ............................................................................................................ 3

I.   PLAINTIFF'S SECOND AND THIRD CLAIM FAIL TO STATE A DMCA
     CLAIM (17 U.S.C. §§ 1201(a)(2), (b)(1)) ........................................................ 3

     A.   Synopsys Fails to Allege that Defendants "Trafficked" in Counterfeit Keys......... 4

     B.   Synopsys Fails to Allege that Its License Keys Prevent Infringement ................... 6

II.  PLAINTIFF'S FOURTH CLAIM FAILS TO STATE A TRAFFICKING CLAIM
     (18 U.S.C. § 2318) ............................................................................................. 6

     A.   Plaintiff Fails to Allege Acts that Constitute "Trafficking".................................... 6

     B.   Plaintiff Fails to Allege that Defendants Knowingly Trafficked in
          "Counterfeit" Labels ............................................................................................. 7

     C.   Plaintiff Fails to Allege that Defendants Knowingly Trafficked in "Illicit"
          Labels .................................................................................................................... 8

III. PLAINTIFF'S SIXTH CLAIM FAILS TO STATE A RICO CLAIM UNDER 18
     U.S.C. § 1962(c) ................................................................................................. 9

     A.   Plaintiff Fails to Plead a Predicate Act ................................................................. 10

          1.   Plaintiff Fails to State a Claim for Trafficking in Counterfeit or
               Illicit Labels .................................................................................................. 10

          2.   Plaintiff Fails to State a Claim for Fraud in Connection with Access
               Devices ........................................................................................................... 11

               a.   Plaintiff Fails to Allege a Covered "Access Device"................... 11

               b.   Plaintiff Fails to Allege an "Unauthorized" or "Counterfeit"
                    Access Device ............................................................................... 12

               c.   Plaintiff Fails to Allege Specific Violations ................................. 13

          3.   Plaintiff Fails to State a Claim for Criminal Copyright Infringement ...... 13

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

i

**TABLE OF CONTENTS**
(continued)

      a.    The Alleged Copyright Infringement Does Not Constitute a Predicate Act ...................................................................................... 14

      b.    Plaintiff Fails to Allege Copyright Infringement or Willfulness ...................................................................................... 14

    4.    Plaintiff Fails to State a Claim for Wire Fraud ......................................... 15

      a.    Plaintiff Fails to Allege Interstate Wire Communications ............ 15

      b.    Plaintiff Fails to Allege an Actionable Material Misrepresentation or Omission ...................................................... 17

 B.    Plaintiff's 1962(c) RICO Claim Fails for Additional Reasons ............................ 20

    1.    Plaintiff Fails to Allege the Required "Pattern" of Racketeering Activity ...................................................................................................... 20

    2.    Plaintiff Fails to Allege a RICO "Person" that "Conducts the Affairs" of any RICO "Enterprise" Sufficiently Distinct From Itself ....... 21

IV.    PLAINTIFF'S SIXTH CLAIM FAILS TO STATE A CLAIM FOR RICO CONSPIRACY UNDER 18 U.S.C. § 1962(d) ................................................................. 23

V.    PLAINTIFF'S FIFTH AND SEVENTH CLAIMS FAIL TO STATE CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION ........................................ 23

VI.    CONCLUSION ............................................................................................................ 24

Case No. 5:17-CV-00561-WHO
Ubiquiti Networks, Inc. and Ching-Han Tsai's Motion to Dismiss Pursuant to Rule 12(b)(6)
sf-3746862

ii

**Cases**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
    307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...................................................5

*Abarca v. Franklin Cnty. Water Dist.*,
    2009 WL 1393508 (E.D. Cal. May 18, 2009) ...........................................18

*Acmet, Inc. v. Wet Seal, Inc.*,
    2015 WL 11670161 (C.D. Cal. Feb. 20, 2015) .........................................15

*Allwaste, Inc. v. Irving*,
    65 F.3d 1523 (9th Cir. 1995) ...................................................................20

*Am. United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ...............................................................18

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
    2011 WL 7447148 (C.D. Cal. Oct. 3, 2011) ..............................................4

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
    2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ...........................................5

*Autodesk, Inc. v. Flores*,
    2011 WL 337836 (N.D. Cal. Jan. 31, 2011) ..............................................5

*Barsky v. Spiegel Accountancy Corp.*,
    2015 WL 580574 (N.D. Cal. Feb. 11, 2015) ...........................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................2, 24

*Boyle v. U.S.*,
    556 U.S. 938 (2009) ...............................................................................22

*Brissette v. Entrust Grp., Inc.*,
    621 F. App'x 461 (9th Cir. 2015) ...........................................................23

*Cafasso, ex rel. U.S. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................3

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
    818 F.2d 1466 (9th Cir. 1987) .................................................................18

*Cavender v. Wells Fargo Bank*,
    2016 WL 4608234 (N.D. Cal. Sept. 6, 2016) ..........................................24

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) .................................................5, 6

iii

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
 2012 WL 713289 (N.D. Cal. Mar. 5, 2012)..........................................................................21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014)..............................................................................................10

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
 2009 WL 1703285 (C.D. Cal. June 17, 2009) ...................................................................18

*GCN Prods., Inc. v. O'Young*,
 22 F. App'x 772 (9th Cir. 2001) .........................................................................................23

*H.J. Inc. v. Nw. Bell Tel. Co.*,
 492 U.S. 229 (1989).............................................................................................................21

*Howard v. Am. Online Inc.*,
 208 F.3d 741 (9th Cir. 2000)...............................................................................................23

*I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*,
 2005 WL 3590984 (N.D. Cal. Dec. 30, 2005) ...................................................................24

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) .............................................................21, 22

*Justice v. Ice King Enters. LLC*,
 2015 WL 576693 (N.D. Cal. Feb. 10, 2015) ......................................................................14

*Kim v. Ramon K. Quichocho*,
 763 F. Supp. 2d 1214 (D. N. Mar. I. 2011).........................................................................23

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
 629 F.3d 928 (9th Cir. 2010)..........................................................................................3, 4, 6

*Microsoft Corp. v. Buy More, Inc.*,
 136 F. Supp. 3d 1148 (C.D. Cal. 2015) ................................................................................7

*Microsoft Corp. v. Ion Techs. Corp.*,
 484 F. Supp. 2d 955 (D. Minn. 2007)....................................................................................9

*Miller v. Facebook, Inc.*,
 2010 WL 1292708 (N.D. Cal. Mar. 31, 2010) ....................................................................15

*Moran v. Bromma*,
 2014 WL 348952 (E.D. Cal. Jan. 31, 2014).........................................................................22

*Neder v. U.S.*,
 527 U.S. 1 (1999).................................................................................................................17

*Oracle Am., Inc. v. TERiX Computer Co., Inc.*,
 2014 WL 31344 (N.D. Cal. Jan. 3, 2014) ...........................................................................13

*Rae v. Union Bank*,
 725 F.2d 478 (9th Cir. 1984)................................................................................................21

iv

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
  641 F. Supp. 2d 913 (N.D. Cal. 2009) ..................................................................6

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .........................................................................................21

*River City Mkts., Inc. v. Fleming Foods W., Inc.*,
  960 F.2d 1458 (9th Cir. 1992) ..........................................................................23

*Salinas v. U.S.*,
  522 U.S. 52 (1997) ...........................................................................................23

*Savage v. Council on Am.-Islamic Relations, Inc.*,
  2008 WL 2951281 (N.D. Cal. July 25, 2008) ...................................................13

*Smith v. Ayres*,
  845 F.2d 1360 (5th Cir. 1988) ..........................................................................16

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*,
  621 F. Supp. 2d 309 (E.D. Va. 2009) ...............................................................13

*Stewart v. Wachowski*,
  2005 WL 6184235 (C.D. Cal. June 14, 2005) ..................................................14

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ...................................................15

*Taylor v. Ahold, USA/Martins Food & Pharmacy*,
  2016 WL 1752763 (E.D. Va. May 2, 2016) .........................................................7

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..............................................................5

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) ..........................................................................21

*United Food & Commercial Workers Cent. Pa. & Regional Health & Welfare
  Fund v. Amgen, Inc.*, 400 F. App'x 255 (9th Cir. 2010) ...................................18

*U.S. v. Bailey*,
  41 F.3d 413 (9th Cir. 1994).............................................................................12

*U.S. v. Brannan*,
  898 F.2d 107 (9th Cir. 1990)............................................................................13

*U.S. v. Bruce*,
  531 Supp. 2d 983 (N.D. Ill. 2008)....................................................................12

*U.S. v. Humes*,
  312 F. Supp. 2d 893 (E.D. Mich. 2004)............................................................11

*U.S. v. Sepulveda*,
  115 F.3d 882 (11th Cir. 1997)..........................................................................11

*U.S. v. Shultz,*
    482 F.2d 1179 (6th Cir. 1973)...................................................................................8

*U.S. v. Truong,*
    587 F.3d 1049 (9th Cir. 2009)..................................................................................12

*U.S. v. Wright,*
    625 F.3d 583 (9th Cir. 2010)....................................................................................15

**Statutes**

17 U.S.C.
    § 106..........................................................................................................................14
    § 506......................................................................................................................*passim*
    § 1201....................................................................................................................*passim*

18 U.S.C.
    § 1029....................................................................................................................*passim*
    § 1343................................................................................................................10, 15
    § 1961(1)...................................................................................................................14
    § 1962(c)................................................................................................................9, 10
    § 1964..........................................................................................................................2
    § 2318...................................................................................................................*passim*
    § 2319................................................................................................................14, 15
    § 2320(f)(5)................................................................................................................7

**Other Authorities**

Civil Local Rule 7-2...........................................................................................................1

Federal Rule of Civil Procedure 9(b)...........................................................................*passim*

Federal Rule of Civil Procedure 12(b)(6)....................................................................1, 2

H.R. Rep. No. 98-894 (1984)...................................................................................11, 12

H.R. Rep. No. 108-600 (2004)........................................................................................8

S. Rep. No. 97-274 (1981)...........................................................................................7, 8

vi

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 17, 2017 at 2:00 p.m., or as soon as the matter may be heard by the Honorable William H. Orrick in Courtroom 2 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Ubiquiti Networks, Inc. ("Ubiquiti") and Ching-Han Tsai ("Tsai") will and hereby do move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Second, Third, Fourth, Fifth, Sixth, and Seventh Claims of Plaintiff's Amended Complaint for failure to state a claim.

This motion will be based on this Notice, the accompanying Memorandum of Points and Authorities concurrently filed herewith, the pleadings and papers on file with the Court, and such other argument as may be presented at the hearing.

## STATEMENT OF RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Civil Local Rule 7-2, Defendants Ubiquiti and Tsai respectfully request an order dismissing the Second, Third, Fourth, Fifth, Sixth, and Seventh Claims of Plaintiff's Amended Complaint without leave to amend.

**INTRODUCTION**

As evidenced by the initial Complaint in this action, this case is fundamentally a case about Defendants allegedly using improperly obtained access keys to access Synopsys software without authorization, in violation of the Digital Millennium Copyright Act (the "DMCA"). Synopsys has now filed an Amended Complaint, based on essentially the same alleged facts and activities, and attempted to turn those wrongful actions into violations of multiple federal statutes, and perhaps most egregiously, civil RICO violations.

Synopsys strains to make its allegations fit the rubric of their newly alleged claims, attempting to turn the Defendants (or some subset of them) into a "Piracy Enterprise." Yet despite the vast number of inflammatory and conclusory allegations in the Amended Complaint, Synopsys fails to present plausible claims.

**BACKGROUND**

On February 3, 2017, Synopsys, Inc. ("Plaintiff") filed this lawsuit against Ubiquiti, Ching-Han Tsai, and Ubiquiti Networks International Limited ("UNIL") (collectively, "Defendants"), alleging violations of § 1201(a)(1) under the DMCA. (ECF No. 1.) UNIL moved to dismiss the original complaint for lack of personal jurisdiction on March 16, 2017. (ECF No. 25.) On March 28, 2017, Synopsys filed an Amended Complaint, which added new claims under § 1201(a)(2) and (b)(1) of the DMCA, a federal anti-counterfeiting statute (18 U.S.C. § 2318), fraud, civil RICO (18 U.S.C. § 1964), and negligent misrepresentation. (Amended Complaint ("Am. Compl."), ECF No. 27.) Ubiquiti and Tsai now move to dismiss those claims.

**LEGAL STANDARD**

A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must allege facts which, if taken as true, raise more than a speculative right to relief. *Id.*

Claims grounded in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires allegations "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) requires Synopsys to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the conduct], and why it is false.'" *Cafasso, ex rel. U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).

**ARGUMENT**

As a preliminary matter, it is far from clear against whom these claims are brought. In fact, with regard to all claims except for the RICO claims (which were brought against all Defendants), every other claim was brought only against the members of the "Piracy Enterprise." The "Piracy Enterprise" in turn is defined as "Tsai and others at Ubiquiti and UNIL." (Am. Compl. ¶ 29; *see also id*. at 124 ("Tsai and others at Ubiquiti and UNIL are associated in fact").) Thus, Ubiquiti and UNIL themselves do not appear to be considered members of the "Piracy Enterprise," and thus the clearest reading of Plaintiff's Complaint is that only Plaintiff's RICO claim was brought against Ubiquiti and UNIL. Nonetheless (in particular in the event the Court construes the Complaint as bringing non-RICO claims against Ubiquiti and UNIL), the arguments set forth below apply to all unless otherwise indicated.

**I.  PLAINTIFF'S SECOND AND THIRD CLAIM FAIL TO STATE A DMCA CLAIM (17 U.S.C. §§ 1201(a)(2), (b)(1))**

Section 1201 of Title 17, the DMCA, contains three separate provisions addressing unlawful circumvention technologies. Section 1201(a)(1)(A) "is a general prohibition against circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act].'" *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942 (9th Cir. 2010) (quotations omitted). Sections 1201(a)(2) and (b)(1) address, however, the unlawful trafficking in such access control devices and the unlawful trafficking in devices for the circumvention of a protection of a *right* of a copyright holder, namely, the right of the copyright owner to the exclusive rights of reproduction, distribution, public performance, public display, and creation of derivative works. *MDY Indus.*, 629 F.3d at 944 (citing 17 U.S.C. § 106); 17

U.S.C. §§ 1201(a)(2), (b)(1).  Accordingly, the Ninth Circuit has held that while § 1201(b)(1) is directed at "those who traffic in circumventing devices that facilitate infringement," § 1201(a)(2) extends "a new form of protection, i.e., the right to prevent circumvention of access controls." *MDY Indus.*, 629 F.3d at 945.  The court found such an interpretation to be consistent with the statute's plain language, as well as the Senate report commentary, which observed that if a technological measure limits access to a protected work "but provides no additional protection against copying, displaying, performing or distributing the work, then a potential cause of action against the manufacturer of a device designed to circumvent the measure lies under § 1201(a)(2), but not under § 1201(b)."  *Id.* at 947 (citation omitted).

For the reasons below, Synopsys fails to state a claim under both DMCA sections.

**A.      Synopsys Fails to Allege that Defendants "Trafficked" in Counterfeit Keys**

Sections 1201(a)(2) and (b)(1) each state that "no person shall manufacture, import, offer to the public, provide, or otherwise traffic in" anti-circumvention devices.  While it is unclear which action Synopsys intends to accuse Defendants of, none of the facts alleged in the complaint meet either the specific acts (manufacture, import, provide) or the general act (otherwise traffic in) prohibited under the statute.  Its allegation that Defendants "obtained and/or created" counterfeit keys from "hacker websites" (Am. Compl. ¶ 28) is insufficient to plead that Defendants *manufactured* counterfeit keys.  At least one court has found similar allegations grossly lacking in detail under the *Twombly* pleading standard.  *See, e.g., Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, 2011 WL 7447148, at *7 (C.D. Cal. Oct. 3, 2011) (dismissed § 1201(a)(2) claim that merely alleged that defendant "worked with" a third-party company to bypass a copy prevention system).  That court held that the complaint failed to "allege *how* the Defendants worked with Video Furnace, or what actions Defendants took that constitute the 'manufacture, import, offer to the public, prov[ision], or otherwise traffic[king]' of the DVDs."  *Id.* (emphasis added).

Synopsys' barebones allegations similarly fail here as it has not alleged specific actions that Defendants took that constitute the manufacture, import, offer to the public, provision, or trafficking of allegedly counterfeit keys.  And it cannot amend its complaint to cure the

deficiencies because curing them would not comport with the rest of its allegations, namely, that Defendants allegedly *patronized* websites that traffic in keys so that they could use previously downloaded Synopsys software. (*See* Am. Compl. ¶¶ 28, 57.) Capturing end users of a third party's anti-circumvention devices is not the purpose of the anti-trafficking provisions of the DMCA, as such use is captured under § 1201(a)(1)(A). *See 321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1097 (N.D. Cal. 2004) ("[A] simple reading of the statute makes it clear that its prohibition applies to the manufacturing, trafficking in and making of devices that would circumvent encryption technology, not to the users of such technology.").

Moreover, the complaint fails to plausibly allege that Defendants "provided" counterfeit keys, because it has not alleged that Defendants made them available to others.[1] Synopsys' allegation that Defendants "distributed amongst themselves counterfeit license keys" is plainly deficient. (*See* Am. Compl. ¶¶ 58, 59.) It is implausible that such an act can be construed as sufficiently public for the purposes of an anti-trafficking law. For example, in *Regents of the University of California*, the court dismissed the plaintiff's §§ 1201(a)(2) and (b)(1) claims in its amended complaint because it alleged that the defendants—the University and its employees— provided software to professors at the University, whom the court found not to be "members of the public" for purposes of its DMCA analysis. *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012).

Finally, several courts have observed that a prima facie claim under § 1201(a)(2) requires showing that, due to the defendant's actions, "third parties can now access" a copyrighted work that was otherwise controlled by a technological measure. *See, e.g., Autodesk, Inc. v. Flores*, 2011 WL 337836, at *4 (N.D. Cal. Jan. 31, 2011) (quoting *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004)); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1056 (N.D. Cal. 2010) (same); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1111 (C.D. Cal. 2007) (same). This requirement of third-party access must apply

---

[1] While the DMCA does not provide a definition for "trafficking," an ordinary construction of the term— based on similar statutes that proscribe a "traffic" activity—stands for the commercial exploitation of anti-circumvention tools by offering them for sale to third parties or for the purpose of such offer. *See infra* at Sections II.A and III.A.1 (noting definitions of "traffic" under 18 U.S.C. §§ 2318 and 1029).

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

5

with equal force under § 1201(b)(1), as it differs only with respect to the purpose of the proscribed anti-circumvention devices, *not* to the actions that give rise to trafficking in those devices. *See Craigslist,* 694 F. Supp. 2d at 1056. Synopsys has not alleged that any individuals unaffiliated with Ubiquiti or UNIL have gained access to its software due to Defendants' actions. Thus, its Second and Third Claims based on trafficking under the DMCA should be dismissed with prejudice.

### B. Synopsys Fails to Allege that Its License Keys Prevent Infringement

Synopsys describes its License Key system as "a built-in security system that controls access to its licensed software by requiring a user to access a key code provided by Synopsys in order to execute the licensed software. This key code controls the quantity and term of the licensed software in accordance with the license terms." (Am. Compl. ¶ 26.) This describes access control, and nothing more. Notwithstanding its conclusory statement that "Synopsys license keys are designed to ensure that users do not designate a higher number of licensed users or licensed copies than authorized and to prevent infringement" (*id.* at ¶ 95), Synopsys has not articulated how its license keys prevent *infringement*, namely reproducing, distributing, public performing, publicly displaying, or creating derivative works of its software. *Cf. Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 935 (N.D. Cal. 2009) (plaintiff's encryption technology prevented both unauthorized access and copying). As the Ninth Circuit in *MDY Industries* observed, "breaking into a locked room in order to read or view a copyrighted work would not infringe on any of the copyright owner's exclusive rights under § 106." 629 F.3d at 947. Because Synopsys does not explain how its license keys prevent infringement, Synopsys' Third Claim under § 1201(b)(1) of the DMCA must be dismissed for this independent reason.

## II. PLAINTIFF'S FOURTH CLAIM FAILS TO STATE A TRAFFICKING CLAIM (18 U.S.C. § 2318)

For Synopsys to state a plausible claim under 18 U.S.C. § 2318, Defendants' acts must constitute a knowing trafficking of counterfeit or illicit labels. They do not for the reasons below.

### A. Plaintiff Fails to Allege Acts that Constitute "Trafficking"

Plaintiff's persistent efforts to square a circle with its allegations cannot succeed. Section

6

2318 of Title 18, which Synopsys tries to assert as an individual claim and a predicate act for a RICO claim, was designed to address counterfeiting activities that defraud "the consumer by leading him to believe that he is purchasing an authentic product." S. Rep. No. 97-274 at 8 (1981). Thus, the statute imposes penalties on one who "traffics" in counterfeit or illicit labels that reach or are intended to reach a third party.[2] Here, Defendants' alleged acts are so far afield from trafficking that the Court should dismiss this claim outright rather than give leave to amend.

Synopsys does not allege that Defendants sold or distributed license keys to third parties. Instead, Synopsys merely alleges that Defendants shared the license keys "amongst *themselves*." (Am. Compl. ¶¶ 58, 59.) Because Synopsys does not allege that Defendants sold or offered to sell license keys *to others*, or are in the business of selling or offering to sell license keys to others, or otherwise "trafficked" in license keys, Synopsys fails to state a viable "trafficking" claim under § 2318. *Cf. Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1157 (C.D. Cal. 2015) (defendants trafficked in counterfeit and/or illicit labels by "offering them for sale and actually selling them to customers"); *see also Taylor v. Ahold, USA/Martins Food & Pharmacy*, 2016 WL 1752763 (E.D. Va. May 2, 2016) (dismissing claim for failure to state "how the defendant's actions constitute trafficking").

### B.     Plaintiff Fails to Allege that Defendants Knowingly Trafficked in "Counterfeit" Labels

Synopsys also fails to allege that Defendants knowingly trafficked in "counterfeit" labels. Under the statute, a "counterfeit label" is defined as an identifying label or container that appears to be genuine, but is not. 18 U.S.C. § 2318(b)(1). Synopsys claims its license key files are considered "identifying labels" accompanying its computer programs. (Am. Compl. ¶ 96.) First and foremost, Defendants dispute this claim because the key files do not "identify" Synopsys' computer programs, which are delivered by Synopsys "to licensees over the Internet via a secured

---

[2] The term "traffic" under the statute, as incorporated by reference in § 2318(b)(2), means "to transport, transfer, or otherwise dispose of, *to another*, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of." *See* 18 U.S.C. § 2320(f)(5) (emphasis added). Legislative history also confirms that "traffic" is to be construed as activity extending to a third party. *See* S. Rep. No. 97-274 at 9 (1981) ("traffic" definition *excludes* "those who knowingly acquire counterfeit articles solely for *personal* use") (emphasis added).

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

7

file transfer protocol in binary form." (*Id.* ¶ 95.) Synopsys' allegations make clear that the keys are files sent to licensees *separate in time* from the software applications that are downloaded from Synopsys' transfer website, and that their function is to enable the applications to execute. (*See id.* ¶¶ 52, 53.) Construing these files, which serve no "identifying" purpose and are not part of the software package, as "labels" for purposes of § 2318 would be inconsistent with legislative intent. *Cf.* S. Rep. No. 97-274 at 9 (1981) (noting that the definition of "counterfeit label" includes components of the product *package*, such as covers, sleeves, jackets, and containers).

Even if the key files could be construed as "labels," Synopsys fails to state a claim that Defendants knowingly trafficked in keys that *appeared* to be genuine, but were not. Synopsys alleges that Defendants used "counterfeit" key generation software, supposedly from "hacker websites," to create keys "for use by Ubiquiti and UNIL" and "to permit employees of Ubiquiti and UNIL to access Synopsys' software without authorization." (*Id.* ¶¶ 28, 57, 58, 71.) But nowhere does Synopsys allege that these keys had the appearance of authenticity or that the Defendants palmed them off to third parties under that pretense. Therefore, Synopsys has not pled the gist of the offense. *See U.S. v. Shultz*, 482 F.2d 1179, 1180 (6th Cir. 1973) (distinguishing "counterfeit" tapes, unlike "bootleg" ones, as products "represented to be genuine articles of particular record companies when, in truth, they are not").

## C. Plaintiff Fails to Allege that Defendants Knowingly Trafficked in "Illicit" Labels

Synopsys' allegations that Defendants knowingly trafficked in "illicit" labels fare no better. The definition of an "illicit" label "specifically excludes labels that are solely used by the copyright owner for the purpose of monitoring or tracking the copyright owner's distribution channel." H.R. Rep. No. 108-600 at 8 (2004). Instead, it covers genuine labels that a copyright holder uses "to verify" that a program "is not counterfeit or infringing of any copyright." *See* 18 U.S.C. § 2318(b)(4).

Because the license keys control Synopsys' distribution channel and nothing more, they cannot be "illicit" labels. The programs at issue were downloaded by Defendants from Synopsys' website with Synopsys' authorization. (*See* Am. Compl. ¶¶ 44, 45, 53.) Synopsys alleges that

customers "purchase licenses" granting limited rights to "access and use" programs "subject to control by Synopsys' License Key System."  (*Id.* ¶ 25.)  With respect to these authorized copies, Synopsys' allegations make clear that the license keys verify that *the user* is authorized to access the software (the "License Key system" requires "a user to access a key code provided by Synopsys in order to execute the licensed software"), not that *the software*—already downloaded from Synopsys' website—is not counterfeit or infringing.  (*See id.* ¶ 26.)

Second, for Defendants to have trafficked in "illicit" labels, Synopsys must show that its license keys were distributed or intended for distribution "not in connection with the copy" for which they were intended.[3]  *See* 18 U.S.C. § 2318(b)(4)(B)(i); *cf. Microsoft Corp. v. Ion Techs. Corp.*, 484 F. Supp. 2d 955, 963 (D. Minn. 2007) (defendant trafficked illicit labels when he shipped and sold "standalone" certificates of authenticity apart from software intended to accompany the certificates).  Synopsys' only allegations here involve temporary keys issued for Synopsys' evaluation software: Synopsys claims that "illicit" labels were trafficked when (a) Ubiquiti provided to UNIL the keys meant for Ubiquiti's Mountain View location, and (b) UNIL provided to Ubiquiti the keys meant for UNIL's Taiwan location.  (Am. Compl. ¶¶ 97, 98.)  But these allegations do not establish that the keys were distributed for use *apart from* their intended software.  Regardless of where the license keys were used or by whom, Synopsys intended that these keys be used for its licensed software (*see id.* ¶¶ 26, 95) and does not allege that Defendants distributed keys for a "standalone" purpose.  Accordingly, Defendants' alleged acts cannot be construed as trafficking in "illicit" labels.  Synopsys' Fourth Claim for trafficking should be dismissed.

## III.  PLAINTIFF'S SIXTH CLAIM FAILS TO STATE A RICO CLAIM UNDER 18 U.S.C. § 1962(c)

To plead a RICO violation under § 1962(c), Synopsys must plead that each defendant

---

[3] The statute provides for a second manner of misuse (a label that is knowingly falsified to designate a higher number of licensed users or copies than authorized); however, this has no application when the label is used solely for monitoring or tracking the copyright owner's distribution channel and not for verifying that a copy is infringing.  18 U.S.C. § 2318(b)(4)(B)(ii).  For the reasons discussed, Synopsys has not pled facts showing that its license keys verify whether a copy of a program is infringing.  Further, Synopsys has not pled any facts to show that Defendants "knowingly falsified" genuine keys.

9

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

participated in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. In addition, the conduct must be (5) the proximate cause of harm to the victim. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Plaintiff's § 1962(c) claim fails because Plaintiff has failed to plead a single, let alone a "pattern" of predicate acts, and because Plaintiff has failed to identify any RICO "person" that is sufficiently distinct from any alleged RICO "enterprise," much less that any such RICO "person" conducted the affairs of such enterprise. For each of these four independent reasons, Plaintiff's RICO claim fails.

## A. Plaintiff Fails to Plead a Predicate Act

Plaintiff has identified four predicate acts that the members of the "Piracy Enterprise" (whomever they may be) allegedly committed:

- trafficking in counterfeit and illicit labels under 18 U.S.C. § 2318 (Am. Compl. ¶¶ 131-32);

- fraud in connection with access devices under 18 U.S.C. § 1029 (*id.* ¶ 133);

- criminal copyright infringement under 17 U.S.C. § 506 (*id.* ¶ 129); and

- wire fraud under 18 U.S.C. § 1343 (*id.* ¶ 130);

Plaintiff fails to adequately plead that any Defendant committed any of these alleged predicate acts. For this reason alone, Plaintiff's RICO claims should be dismissed. In addition, for the reasons stated below, Synopsys fails to allege facts sufficient to state a claim based on each predicate act.

### 1. Plaintiff Fails to State a Claim for Trafficking in Counterfeit or Illicit Labels

For the reasons discussed with Plaintiff's Fourth Claim, Synopsys does not state a claim under 18 U.S.C. § 2318. Accordingly, it cannot be a predicate act for the RICO claim.

### 2. Plaintiff Fails to State a Claim for Fraud in Connection with Access Devices[4]

Plaintiff's attempt to use 18 U.S.C. § 1029—a statute aimed at credit card fraud —as a RICO predicate act in this case should be rejected. Section 1029 was designed to target the "growing problem in counterfeit credit cards and unauthorized use of account numbers or access codes to banking system accounts" and "of fraudulent activity relating to debit and credit cards." H.R. Rep. No. 98-894 at 4, 8, 19 (1984). This case clearly does not concern that type of activity. While Synopsys tries to contort its allegations to fit the claim elements, Synopsys does not allege an "access device" within the meaning of the statute and fails to identify any alleged statutory violations with specificity.

#### a. Plaintiff Fails to Allege a Covered "Access Device"

Synopsys alleges, "by way of example and not limitation," two types of access devices to support a § 1029 claim: (1) computers and virtual machines allegedly configured into access devices by Defendants to gain unauthorized access to Synopsys' intellectual property, and (2) "counterfeit" license keys. (Am. Compl. ¶ 133.) As an initial matter, Synopsys must be held to its actual-pled allegations that give Defendants notice of the alleged access devices. As for the devices that are alleged, they cannot be considered "access devices" under the statute.

First, with respect to Defendants' computers and machines, these cannot be actionable "access devices" under § 1029(e)(1). *See U.S. v. Sepulveda*, 115 F.3d 882, 887-888 (11th Cir. 1997) (noting a computer is not an access device for purposes of the statute).

Second, an access device must access an "account," and nothing pled by Synopsys can be reasonably construed as an "account."[5] The Ninth Circuit has defined "account" as "a contractual

---

[4] As discussed *infra* at Sections III.A.4 and V, Synopsys has not pled sufficiently particularized facts to show fraud, and its allegations of intent to defraud are likewise lacking.

[5] Section 1029(e)(1) defines "access device" as "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or *other means of account access* that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds." 18 U.S.C. § 1029(e)(1) (emphasis added). "Cases that have applied § 1029 to punish fraudulent schemes have focused on the structural relationship between the coded information in the access device and an actual account that provides goods, services or cash." *U.S. v. Humes*, 312 F. Supp. 2d 893, 897 (E.D. Mich. 2004) (collecting cases).

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

11

relationship that makes possible the provision of goods, services, or money based on payment, or the expectation of payment, at some later point in time, as described by the entry of credits and debits in a formal record." *U.S. v. Bailey*, 41 F.3d 413, 417 (9th Cir. 1994). Applying this definition, the Ninth Circuit has held "access devices" to include gift cards that associate a transaction with a balance that "both the customer and retailer" can keep track of, and cited a contrasting Northern District of Illinois case that found "access devices" did not include counterfeit Universal Product Codes that generated entries in only "unilateral, internal" business accounts. *U.S. v. Truong*, 587 F.3d 1049, 1052 (9th Cir. 2009) (citing *U.S. v. Bruce*, 531 Supp. 2d 983, 989 (N.D. Ill. 2008)). Here, there is no "account" to speak of. Synopsys cannot plausibly claim that Defendants' alleged use of "counterfeit" keys for Synopsys programs—ones that resided on Defendants' "internal" computers and the mere use of which did not create a "contractual relationship" with Synopsys—constituted "account access." Thus, license keys cannot be "access devices" under § 1029.

### b. Plaintiff Fails to Allege an "Unauthorized" or "Counterfeit" Access Device

In addition to Synopsys failing to plead "access devices," the license keys allegedly used by Defendants do not constitute "unauthorized access devices" or "counterfeit access devices" under the statute. Synopsys does not even plead an "unauthorized access device" as an "example" (*see* Am. Compl. ¶ 133), but even if it had, the device is not an "unauthorized access device" within the meaning of § 1029(e)(3). *See* H.R. Rep. No. 98-894 at 14 (1984) (definition covers "genuine access devices being used without authority"); 18 U.S.C. § 1029(e)(3). The thrust of Synopsys' complaint is that license keys generated from software or tools from "hacker websites" are not genuine keys. (Am. Compl. ¶¶ 28, 57.) If they are not genuine keys, then Defendants did not possess "unauthorized" genuine access devices.

Similarly, Defendants' alleged trafficking of "counterfeit" license keys does not constitute the trafficking of "counterfeit" access devices for the reasons discussed with respect to

"counterfeit" labels, *see supra* at Section III.B.[6]  The term "counterfeit," as used in § 1029(e)(1), also does not cover the keys at issue here because Synopsys has not plausibly shown that Defendants had any role in making the keys when they were allegedly procured through "hacker websites."  *Cf. U.S. v. Brannan*, 898 F.2d 107, 109 (9th Cir. 1990) (finding that definition of "counterfeit" access devices covers illegitimate credit cards the defendant "initiated and contributed to the process of making").

### c.      Plaintiff Fails to Allege Specific Violations

While Synopsys states specific violations that appear to correspond with violations under § 1029(a)(2), (3), and (4), Synopsys only pleads conclusory allegations in the form of the elements.  (*See* Am. Compl. ¶ 133.)  Synopsys does not identify the facts *material* to each alleged violation, and Defendants should not have to sift through the complaint to discern allegations giving rise to specific violations.  *See Savage v. Council on Am.-Islamic Relations, Inc.,* 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) (dismissing RICO claim where plaintiff made "no attempt to allege what facts are material to his claims under the RICO statute, or which facts are used to support what claims under particular subsections of RICO").  For instance, Defendants lack notice of the factual basis for the alleged "value" under (a)(2), the "device making equipment" under (a)(3), or the "fifteen or more devices" under (a)(4).  While Synopsys claims that license keys are "devices," Synopsys does not plead with any clarity how it counts fifteen such devices under (a)(4)—e.g., whether Defendants are accused of using copies of a single key, multiple unique keys, or both.  Therefore, Synopsys fails to plead specific violations under § 1029.

### 3.      Plaintiff Fails to State a Claim for Criminal Copyright Infringement

Stretching for another predicate act, Synopsys alleges a violation of 17 U.S.C. § 506 for criminal copyright infringement.  But a run-of-the-mill *civil* copyright claim, such as the one

---

[6] In addition, courts analyzing the "traffic" definition in § 1029(e)(5)—to "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of"—which resembles the "traffic" definition under § 2318 have held that it does not apply to the sharing of "access devices" between co-defendants.  *See, e.g., Oracle Am., Inc. v. TERiX Computer Co., Inc.*, 2014 WL 31344, at *3 (N.D. Cal. Jan. 3, 2014) (allegations that defendants transferred passwords to one another did not amount to a transfer or disposal under the "traffic" definition); *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 317 (E.D. Va. 2009) (similar).

13

CASE NO. 5:17-CV-00561-WHO
UBIQUITI NETWORKS, INC. AND CHING-HAN TSAI'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
sf-3746862

Synopsys now purports to bring, cannot serve as a predicate act for a RICO claim. Moreover, Synopsys has not sufficiently pled required elements of a claim for copyright infringement or facts showing "willful" infringement as required under § 506.

### a. The Alleged Copyright Infringement Does Not Constitute a Predicate Act

Through 18 U.S.C. § 2319, criminal violations of 17 U.S.C. § 506 may serve as predicate acts for a RICO claim. *See* 18 U.S.C. §§ 1961(1), 2319. However, as the court in *Stewart v. Wachowski*, 2005 WL 6184235, at *5 (C.D. Cal. June 14, 2005), noted:

> Congress did not intend to criminalize *all* intentional copyright infringement or subject all multiple acts of intentional infringement to RICO liability. . . .[T]he Supreme Court has recognized that § 2319 was enacted by Congress because it belie[ved] that the existing misdemeanor penalties for copyright infringement were simply inadequate to deter the enormously lucrative activities of large-scale bootleggers and pirates.

*Id.* (citing *Dowling v. U.S.*, 473 U.S. 207, 224 (1985) (quotations omitted)) (emphasis in original). Like the plaintiff in *Stewart*, Synopsys' infringement claim, to the extent it has even been properly pled, alleges copying of limited works by a business. In other words, this is not the "large-scale" counterfeiting or piracy meant to be addressed by Section 2319. Thus, this Court should find that the alleged infringement cannot serve as a predicate act for RICO liability.

### b. Plaintiff Fails to Allege Copyright Infringement or Willfulness

Even if the Court permits a run-of-the-mill civil copyright claim as a predicate act, Synopsys' claim fails for the reason that Synopsys has not plead sufficient facts to establish the required elements of (a) ownership of a protected work and (b) a violation of at least one of the exclusive rights enumerated in 17 U.S.C. § 106. *Justice v. Ice King Enters. LLC*, 2015 WL 576693, at *5 (N.D. Cal. Feb. 10, 2015) (citation omitted). Beyond conclusory allegations, Synopsys has not pled how Defendants violated any of its rights. In fact, there are no allegations that Defendants distributed, displayed, or performed Synopsys' works to the public or that they prepared derivative works. Therefore, any infringement claim can only rest on Synopsys' reproduction right. In this regard, Synopsys alleges that Defendants made "unauthorized copies

of Synopsys' software and documentation" (*see* Am. Compl. ¶¶ 29, 42, 49, 51, 56), but these allegations are impermissibly vague and do not satisfy *Twombly*'s requirements. *See Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (dismissing Synopsys' claim for "simply speculating on how widespread the copying may be, without describing any acts or works that infringe"); *accord Miller v. Facebook, Inc.*, 2010 WL 1292708, at *3 (N.D. Cal. Mar. 31, 2010) (plaintiff "must include sufficient factual allegations that explain how defendant [] copied").

Nor has Synopsys alleged facts to make out a plausible claim of "willful" copyright infringement. Synopsys must plead more than just that Defendants acted "willfully," and allegations that Defendants intentionally copied programs will not suffice. *See Acmet, Inc. v. Wet Seal, Inc.*, 2015 WL 11670161, at *4 (C.D. Cal. Feb. 20, 2015) (finding allegations that defendants had knowledge of wrongful acts as insufficient pleading of willfulness); *see also* 17 U.S.C. § 506(a)(2) ("evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement"). Therefore, Synopsys has failed to state a predicate act based on 17 U.S.C. § 506 or 18 U.S.C. § 2319.

### 4.   Plaintiff Fails to State a Claim for Wire Fraud

Synopsys's fourth predicate act based on alleged wire fraud fails for two independent reasons. First, Synopsys fails to allege any instance of fraud by interstate or foreign wire communication, as required to sustain a claim under § 1343. Second, Synopsys fails to plead with particularity any actionable material misrepresentation or omission.

### a.   Plaintiff Fails to Allege Interstate Wire Communications

Synopsys fails to plead a claim for wire fraud because Synopsys fails to identify any alleged instance of wire fraud that involved an interstate or foreign wire communication.

Section 1343 on its face covers only transmissions "by means of wire, radio, or television communication *in interstate or foreign commerce*." 18 U.S.C. § 1343 (emphasis added). Purely intrastate wire communications are thus beyond the reach of § 1343. *U.S. v. Wright*, 625 F.3d 583, 594 (9th Cir. 2010) ("[O]ur precedent indicates that criminal statutes punishing the transmission of the relevant material 'in interstate or foreign commerce' require the material itself

to cross state lines."); *see also Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (affirming dismissal of RICO charges where complaint only alleged telephone calls that did not cross state lines, and thus did not constitute interstate wire communications).

In the Amended Complaint, Synopsys alleges only two instances of wire fraud—email communications on October 14, 2013 and on December 2, 2013 (Am. Compl. ¶ 130)—both of which fail to identify an interstate communication. Both alleged emails were sent to "Synopsys in Mountain View." (*Id.* ¶¶ 38, 46.) According to the complaint, Mr. Tsai (the alleged sender of each email communication) is a resident of California. (*Id.* ¶ 11.) And while the complaint states that "from October 2013 to present, Tsai has worked as a Project Lead for Ubiquiti in Taipei," (*id.* ¶ 12), the complaint also explains that "Tsai regularly works out of Ubiquiti facilities in California." (*Id.* ¶ 13.) The complaint does not state that Mr. Tsai was in Taipei, or anywhere outside of California, at the time that he sent the emails at issue. On the contrary, the complaint states that on October 15, 2013, the day *after* he made the alleged misstatement, Mr. Tsai "traveled to Taipei." (*Id.* ¶ 40.) Similarly, the complaint states that when Mr. Tsai sent the alleged emails on December 2, 2013, he was purportedly having trouble working "on a virtual machine running on a computer located at Ubiquiti's San Jose headquarters." (*Id.* ¶ 46.)

Indeed, despite Plaintiff's conclusory allegation that "Tsai, Ubiquiti, and UNIL have each used Internet communications transmitted by means of wire in interstate and foreign commerce in the course of conducting the Piracy Enterprise" (*id.* ¶ 31), there are no allegations in the complaint identifying any alleged misrepresentations (or omissions) that occurred via email (or other form of wire transmission) at a time when Mr. Tsai was outside of California. Rather, the complaint states that Mr. Tsai was "physically present in California" when he allegedly "misrepresented and omitted material facts to Synopsys in order to induce Synopsys to provide UNIL with access to Synopsys' copyright-protected software and documentation." (*Id.* ¶ 18.)

Where, as here, the relevant communications were not transmitted by means of interstate or foreign wire communication, there can be no violation of § 1343.

### b. Plaintiff Fails to Allege an Actionable Material Misrepresentation or Omission

Synopsys also fails to plead with sufficient particularity any affirmative misrepresentation by any Defendant (let alone any material misrepresentations), and cannot sustain its omission claims because it fails to plead that Defendants were under any duty to disclose. To satisfy Rule 9(b), Synopsys must plead with particularity why any alleged misrepresentations were *false when made.* Moreover, any alleged misrepresentations or omissions must be material. *Neder v. U.S.*, 527 U.S. 1, 25 (1999).

In connection with its wire fraud claims, Synopsys alleges that "[o]n at least October 14 and December 2, 2013, Tsai misrepresented and omitted material facts in email communications with Synopsys that were intended to induce Synopsys to provide Ubiquiti and UNIL with access to valuable intellectual property belonging to Synopsys." (*Id.* ¶ 130.) Synopsys alleges that Tsai made three misrepresentations that were false when made on October 14: (1) that "Tsai intended for Ubiquiti to consummate its first EDA tool purchase from Synopsys before October 31, 2013" (Am. Compl. ¶ 38); (2) that Tsai preferred to pay Synopsys from an "offshore account" in Hong Kong (*id.*); and (3) that Tsai requested an evaluation license and represented that he would be "the one doing the eval" (*id.* ¶ 39.) Of these three purported misrepresentations, Synopsys only attempts to explain why one was false when made: the statement that Tsai would be "the one doing the eval." This was allegedly false when made because Tsai "intended all along for the evaluation to be done by other persons in Taiwan on computers that did not belong to Tsai." (*Id.*) But Synopsys does not even attempt to explain how this alleged misrepresentation was material or how Synopsys relied on this misrepresentation to its detriment. The complaint does not allege, for example, that Synopsys would not have given Ubiquiti an evaluation license if it knew that someone other than Tsai would conduct the evaluation, or how the fact that someone other than Tsai would conduct the evaluation caused any damage to Synopsys.

And the alleged misrepresentations on December 2, 2013 are not alleged to be affirmatively false, but rather false by omission. The complaint alleges that Tsai emailed Synopsys to gain assistance in running the license management software and temporary key file,

and to temporarily switch the Host ID listed in Ubiquiti's temporary key file to a new computer. (*Id.* ¶ 46.) According to Synopsys, these representations were false when made because Mr. Tsai *failed to disclose* the purposes of his communications – which allegedly was "to gain the information and means required by the Piracy Enterprise to carry out its purpose of running Synopsys' software on unauthorized computers in unauthorized locations." (*Id.* ¶ 47.)

Ninth Circuit law is crystal clear that "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme" under the federal mail or wire fraud statutes. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). Accordingly, to state a claim under RICO based on an omission under the wire fraud statute, a plaintiff must allege facts establishing a duty to disclose. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 2009 WL 1703285, at *6 (C.D. Cal. June 17, 2009), *aff'd*, *United Food & Commercial Workers Cent. Pa. & Regional Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255 (9th Cir. 2010). Moreover, the facts regarding a duty to disclose must be alleged with particularity. *Abarca v. Franklin Cnty. Water Dist.*, 2009 WL 1393508, at *8 (E.D. Cal. May 18, 2009) ("[i]n conjunction with Rule 9(b), Plaintiffs must allege the existence of a duty to disclose with particularity").

The complaint does not even contain bare allegations of any duty to disclose, let alone plead the facts regarding such a duty with particularity. Courts have unfailingly dismissed RICO claims based on alleged omissions where, as here, the complaint does not allege an independent duty to disclose. *See, e.g., United Food*, 400 F. App'x at 257 (affirming dismissal of RICO claim predicated on alleged mail and wire fraud because plaintiff failed to identify "material omissions in derogation of an independent statutory or fiduciary duty to disclose").

To be clear, although not identified in connection with its RICO claim, Synopsys does allege additional "misrepresentations and omissions" in its complaint. But none of the alleged misrepresentations are sufficiently particularized to satisfy Rule 9(b), and the alleged omissions fail in the absence of any duty to disclose. Specifically, Synopsys alleges:

- On September 11 and 12, 2013, Tsai allegedly represented that Ubiquiti was interested in licensing software from Synopsys, and these statements were allegedly "designed to, and did, create the impression that Ubiquiti was interested in creating a significant business relationship with Synopsys." (Am. Compl. ¶ 35.) Synopsys does not explain why these statements were false when made, beyond stating that they were false when made "as evidenced by the conduct discussed below." (*Id.*) This is not sufficiently particularized to withstand Rule 9(b) scrutiny.

- Similarly, Synopsys alleges that on September 30, 2013, Tsai once again emailed indicating he was interested in taking a number of Synopsys licenses. And again, the only allegation as to why these statements were false when made is based on "the conduct discussed below." (*Id.* ¶ 36.)

- Synopsys alleges that on October 1, 2013, Tsai represented that Ubiquiti wanted a Local Area Network form of Synopsys' licenses rather than a Wide Area Network form, because the intention was for the licenses to be used by a small U.S. team. (*Id.* ¶ 37.) This statement was allegedly false when made because, Synopsys alleges, the intention was to use the licenses at geographically distributed locations from California to Taiwan. (*Id.*) Synopsys does not actually plead facts supporting the conclusion that this was Ubiquiti's intention at the time the statement was made, but even so, the complaint does not explain (and it is hard to imagine) how this statement was material to any decisions or actions by Synopsys.

- Synopsys alleges that during the first two weeks of March 2014, Tsai and other UNIL employees had various communications about the possibility of obtaining a set of temporary evaluation license keys from Synopsys, but failed to disclose that they had no intention of licensing Synopsys' software. (*Id.* ¶ 49.) Because no duty to disclose has been identified, these alleged non-disclosures are not actionable.

What Synopsys is truly complaining of here is that "counterfeit" keys were allegedly used to permit Ubiquiti and UNIL employees to access Synopsys' software without authorization. Synopsys has attempted to turn this allegation into a wire fraud claim by identifying every single

19

communication that Mr. Tsai had with anyone at Synopsys (no matter how mundane or innocuous) and convert them into wire fraud based on the allegation that at some point *after* the majority of the alleged misstatements, employees of Ubiquiti and UNIL allegedly accessed Synopsys' software without authorization. The wire fraud statute and Rule 9(b) require more. For this reason alone, Plaintiff fails to plead a predicate act of wire fraud.

### B. Plaintiff's 1962(c) RICO Claim Fails for Additional Reasons

#### 1. Plaintiff Fails to Allege the Required "Pattern" of Racketeering Activity

Even if Synopsys had adequately pled a predicate act (or more than one), its RICO claims would still fail because Synopsys does not allege the required pattern of racketeering activity. It is not enough to plead one or even several predicate act violations. To establish a "pattern" of predicate acts under RICO, a plaintiff must show that the predicate acts were "continuous," which "can be done either by pleading 'closed-ended continuity' or by pleading 'open-ended continuity.'" *Allwaste, Inc. v. Irving*, 65 F.3d 1523, 1526 (9th Cir. 1995). The Ninth Circuit has explained that "[c]losed-ended continuity refers to a closed period of repeated conduct" which can be established by "showing that the predicate acts occurred over a substantial period of time." *Id.* To plead open-ended continuity, a plaintiff must show that there has been "past conduct that by its nature indicates a threat of future criminal conduct." *Id.*

Here, there is no allegation that the complained of illegal conduct is ongoing (according to the complaint, the alleged actions of the "Piracy Enterprise" lasted until June 2016), to establish open-ended continuity.

While the Ninth Circuit has declined to adopt a bright-line test with regard to whether conduct must occur for a specific length of time to satisfy the closed-ended continuity rule, "courts routinely find that alleged racketeering activity lasting less than a year does not constitute a close-ended pattern." *Barsky v. Spiegel Accountancy Corp.*, 2015 WL 580574, at *6 (N.D. Cal. Feb. 11, 2015). And although Plaintiff generally alleges that the purpose of the "Piracy Enterprise" was carried out from at least October 2013 to June 2016, Plaintiff must plead specific, continuous predicate act violations. Plaintiff identifies the dates of alleged misrepresentations

20

and omissions (spanning from October 2013 to May 2014), but as to all other predicate acts, Plaintiff only states that they occurred "on multiple occasions." The Complaint does not even specify a date range. Plaintiff's allegations, however, are focused on a period of time between October 2013 and May 2014, a period of, at most, ten months. The Supreme Court has made clear that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the close-ended continuity] requirement." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989); *see also Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004) (finding allegations of three fraudulent sets of communications between August of 2000 and February of 2001, followed by 94 communications in a two-month period in June and July of 2001, did not satisfy the closed-ended continuity requirement); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2012 WL 713289, at *10 (N.D. Cal. Mar. 5, 2012) (explaining that "courts have rarely if ever found activity lasting less than a year sufficient [to meet the continuity requirement]" and finding sales over period of six months and nine months insufficient).

And even if the predicate acts had continued over a longer (albeit unspecified) period, Synopsys would at best be able to point to sporadic conduct, and not the continuous conduct required to establish a pattern. *See Ice Cream Distrbs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010 WL 3619884, at *4 (N.D. Cal. Sept. 10, 2010) (finding allegations of "sporadic activity" occurring during the spring of 2004, a four month period between December, 2005 and March, 2006, and in early 2007, insufficient to support a finding of closed-ended continuity). Thus, even if Synopsys had successfully pled any specific predicate acts (and as set forth above, it has not), Synopsys fails to plead the required "pattern."

### 2. Plaintiff Fails to Allege a RICO "Person" that "Conducts the Affairs" of any RICO "Enterprise" Sufficiently Distinct From Itself

Synopsys must allege the existence of two distinct entities: (1) a "person"; and (2) an "enterprise," which must be "a being different from, not the same as or part of," the defendant. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984). Synopsys must also plead that each defendant "operate[d] or manage[d]" the affairs of the alleged enterprise, "not just [its] *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 185 (1993). Synopsys utterly fails to allege

RICO persons distinct from the purported RICO enterprises, or that any RICO person "operated or managed" the affairs of a RICO enterprise, as opposed to simply operating its own affairs.

Synopsys identifies three purported enterprises: Ubiquiti, UNIL, and the "Piracy Enterprise." As discussed above, it is far from clear who Synopsys contends is included in this alleged "Piracy Enterprise." What is clear, however, is that these enterprises are the very same entities and combinations of entities that constitute the Defendants in this case. In other words, Synopsys contends that Ubiquiti, UNIL, Mr. Tsai, and other unidentified employees of Ubiquiti and UNIL directed the affairs of an enterprise consisting of Ubiquiti, UNIL, and/or Mr. Tsai and other unidentified employees of Ubiquiti and UNIL. Courts have repeatedly rejected alleged RICO enterprises as insufficiently distinct from a RICO person where the alleged enterprise is comprised of a corporation, its subsidiaries or other affiliated entities, and its employees. *See, e.g., Ice Cream*, 2010 WL 3619884, at *5 (N.D. Cal. Sept. 10, 2010) ("[A] § 1962(c) claim could not be based on a RICO enterprise comprised of a corporation, a wholly-owned subsidiary and an employee of that corporate family if these entities were also ple[a]d as the RICO persons."); *Moran v. Bromma*, 2014 WL 348952, at *4 (E.D. Cal. Jan. 31, 2014). Moreover, without knowing precisely who is in the alleged association-in-fact enterprise, it is impossible to know whether the structural requirements of an association-in-fact enterprise—namely, relationships, a common purpose to engage in a course of conduct, and longevity—are satisfied. *See Boyle v. U.S.*, 556 U.S. 938, 945-46 (2009).

For the same reasons, the Complaint fails to plead that the defendants were doing anything more than conducting their own affairs (not the affairs of some purported enterprise). While the complaint repeatedly and in conclusory fashion alleges that Ubiquiti and UNIL have "conducted and participated in the affairs of the Piracy Enterprise," the only actual allegations with regard to what Ubiquiti and UNIL purportedly did are that "each provided funding, infrastructure, employee resources, and logistical support needed to conduct the Piracy Enterprise." (Am. Compl. ¶¶ 125, 126.) In other words, Ubiquiti and UNIL operated their respective companies, and these standard operations supported Mr. Tsai in allegedly carrying out a pattern of racketeering activity. These allegations are patently insufficient to sustain a RICO claim.

## IV.  PLAINTIFF'S SIXTH CLAIM FAILS TO STATE A CLAIM FOR RICO CONSPIRACY UNDER 18 U.S.C. § 1962(d)

Synopsys' RICO conspiracy claim fails for two separate and independent reasons.  First, because Synopsys fails to plead a substantive RICO violation, the RICO conspiracy claim fails as well.  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (failure to plead substantive RICO violation defeats RICO conspiracy claim).  But even if Synopsys had successfully pled a substantive violation of § 1962(c), the RICO conspiracy claim would still fail because Synopsys fails to plead that any Defendant agreed to facilitate a scheme to violate § 1962(c), as required to show a conspiracy.  *Salinas v. U.S.*, 522 U.S. 52, 66 (1997); *see also Kim v. Ramon K. Quichocho*, 763 F. Supp. 2d 1214, 1228 (D. N. Mar. I. 2011) (dismissing RICO conspiracy claim where plaintiff insufficiently pled details of alleged agreement).

Other than in very conclusory terms, Synopsys does not allege the existence of any agreement, let alone an agreement to take actions that, if completed, would constitute a RICO violation.  And how could Synopsys allege such an agreement?  Synopsys is basically pointing to the alleged actions of one employee (Mr. Tsai) and claiming that on the basis of those actions, an agreement can be inferred.  Yet it is a fundamental precept of law that there cannot be a conspiracy of one.  *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) ("an individual cannot associate or conspire with himself").  For this independent reason, Synopsys' RICO conspiracy claim fails.

## V.  PLAINTIFF'S FIFTH AND SEVENTH CLAIMS FAIL TO STATE CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION

Synopsys asserts separate California common law claims for fraud and negligent misrepresentation.  Under California law, the elements of fraud are misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and damages.  *Brissette v. Entrust Grp., Inc.*, 621 F. App'x 461, 462 (9th Cir. 2015) (citation omitted).  Fraud based on omission requires that the defendant have "a legal duty to disclose the fact," and parties engaged in an arm's length business transaction—like Defendants here—do not have a duty to disclose absent a "fiduciary or other similar relationship of trust and confidence."  *Id*.; *GCN Prods., Inc. v. O'Young*, 22 F. App'x 772,

774 (9th Cir. 2001) (citation omitted).  Negligent misrepresentation similarly requires a duty owed by the defendant.  *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, 2005 WL 3590984, at *3 (N.D. Cal. Dec. 30, 2005) (citation omitted).

As discussed above in connection with Synopsys' wire fraud claim (*see supra* at Section III.A.4), none of the allegedly fraudulent statements are pled with the requisite Rule 9(b) particularity.  In addition, while Synopsys claims that Mr. Tsai falsely represented that Ubiquiti intended to evaluate VCS in San Jose, California (Am. Compl. ¶¶ 41, 109) and that Mr. Tsai and/or a UNIL employee falsely represented that "time was of the essence" (*see id.* ¶¶ 50, 55, 110), Synopsys does not actually explain why these statements were false.  Synopsys also must allege its damages with particularity, and an empty statement that the alleged fraud has caused it harm "in an amount to be computed at trial" (Am. Compl. ¶ 134) will not suffice.  *See Cavender v. Wells Fargo Bank*, 2016 WL 4608234, at *5 (N.D. Cal. Sept. 6, 2016) (dismissing fraud claim for failure to plead with particularity the damages suffered).  Finally, for both fraud by omission and negligent misrepresentation, Synopsys completely fails to plead any duty owed to it by Defendants.  Thus the Court should dismiss Synopsys' Fifth and Seventh Claims.

## VI.    CONCLUSION

Plaintiff's attempt to turn a garden-variety business dispute into an array of unfounded trafficking, counterfeiting, civil RICO, and tort claims unduly wastes the Court's and Defendants' time and resources.  Under *Twombly* and Rule 9(b)'s heightened pleading standard, Plaintiff's claims should not be allowed to survive.  For the foregoing reasons, the Court should dismiss Plaintiff's Second, Third, Fourth, Fifth, Sixth, and Seventh Claims with prejudice.

24

Case No. 5:17-cv-00561-WHO
Ubiquiti Networks, Inc. and Ching-Han Tsai's Motion to Dismiss Pursuant to Rule 12(b)(6)
sf-3746862

Dated: April 11, 2017

JENNIFER LEE TAYLOR
STACEY M. SPRENKEL
JOYCE LIOU
AMANDA D. PHILLIPS
MORRISON & FOERSTER LLP

By:    /s/ Jennifer Lee Taylor
       JENNIFER LEE TAYLOR

Attorneys for Defendants
UBIQUITI NETWORKS, INC. and
CHING-HAN TSAI

25