1  DENISE M. MINGRONE (STATE BAR NO. 135224)
   dmingrone@orrick.com
2  ROBERT L. URIARTE (STATE BAR NO. 258274)
   ruriarte@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA  94025-1015
   Telephone:    +1 650 614 7400
5  Facsimile:    +1 650 614 7401

6  Attorneys for Plaintiff/Counterdefendant
   SYNOPSYS, INC.
7

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  SYNOPSYS, INC.,                        Case No. 3:17-cv-00561-WHO

13              Plaintiff,                 **SYNOPSYS INC.'S OPPOSITION TO DEFENDANT UBIQUITI NETWORKS INTERNATIONAL LIMITED'S (UNIL) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) OR ALTERNATIVELY FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**

14       v.

15  UBIQUITI NETWORKS, INC., UBIQUITI
    NETWORKS INTERNATIONAL LIMITED,
16  CHING-HAN TSAI, and DOES 1-20,
    inclusive,
17
              Defendants.
18
                                           Date: May 17, 2017
19                                         Time: 2:00 p.m.
                                           Place: Courtroom 2, 17th Floor
20                                         Judge: Hon. William H. Orrick
21

22  UBIQUITI NETWORKS, INC.,

23              Counterclaimant,

24       v.

25  SYNOPSYS, INC.,

26              Counterdefendant.

27

28

1

## TABLE OF CONTENTS

2

Page No.

3    FACTUAL BACKGROUND ................................................................................................ 2

4    LEGAL STANDARD ........................................................................................................ 5

5    ARGUMENT .................................................................................................................... 5

6    I.      UNIL CONSENTED TO PERSONAL JURISDICTION IN THIS DISTRICT ................ 6

     II.     UNIL HAS SUFFICIENT "MINIMUM CONTACTS" WITH THIS DISTRICT ........... 8

7            A.      UNIL Purposefully Directed its Activity to Synopsys, a California Resident........ 8

8                    1.      Intentional Act........................................................................................ 8

9                    2.      Express Aiming...................................................................................... 9

                     3.      Harm Suffered in California.................................................................. 10

10           B.      The Claim Relates to UNIL's Forum-Related Activities..................................... 10

11           C.      Reasonableness ................................................................................................ 11

     III.    UNIL'S EXTRATERRITORIALITY ARGUMENT LACKS MERIT .......................... 12

12   IV.     JURISDICTIONAL DISCOVERY .......................................................................... 12

13   V.      OBJECTIONS TO DEFENDANT TSAI'S DECLARATION....................................... 13

     CONCLUSION ................................................................................................................ 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Autodesk, Inc. v. Kobayashi + Zedda Architects, Ltd.*,
   191 F. Supp. 3d 1007 (N.D. Cal. 2016) ...........................................................................10, 11

*Automattic Inc. v. Steiner*,
   82 F. Supp. 3d 1011 (N.D. Cal. 2015) ......................................................................................6

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995)..............................................................................................5, 11

*United States ex rel. Bilokumsky v. Tod*,
   263 U.S. 149 (1923) (Brandeis, J.)............................................................................................2

*Bliesner v. Communication Workers of America*,
   464 F.3d 910 (9th Cir. 2006)..................................................................................................13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..................................................................................................................8

*Craigslist, Inc. v. Naturemarket, Inc.*,
   694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...............................................................................6, 11

*Data Disc, Inc. v. Systems Tech. Associates, Inc.*,
   557 F.2d 1280 (9th Cir. 1977).................................................................................................13

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009)...................................................................................................6

*Fiore v. Walden*,
   688 F.3d 558 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct. 1115 (2014)..................5, 10

*Flintkote Co. v. Gen. Accident Assurance Co. of Canada*,
   410 F. Supp. 2d 875 (N.D. Cal. 2006) ....................................................................................13

*Gen. Motors L.L.C. v. Autel. US Inc.*,
   No. 14-14864, 2016 WL 1223357 (E.D. Mich. Mar. 29, 2016) ................................................9

*Glud & Marstrand A/S v. Viva Magentics Ltd (Hong Kong)*,
   No. C12-465, 2012 WL 12878686 (W.D. Wash. Aug. 7, 2012) .................................................7

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012).................................................................................................13

*Klein v. Freedom Strategic Partners, LLC*,
   595 F. Supp. 2d 1152 (D. Nev. 2009) ......................................................................................13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011).........................................................................5, 9, 10

*Microsoft Corp. v. Mountain W. Computers, Inc.*,
  No. C14-1772RSM, 2015 WL 4479490 (W.D. Wash. July 22, 2015) ................................9, 10

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
  375 U.S. 311 (1964)...............................................................................................6

*Panavision Int'l L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998).............................................................................9, 11

*Pringle v. Family Dollar Stores of Georgia, Inc.*,
  No. CV 112-044, 2014 WL 4926386 (S.D. Ga. Sept. 30, 2014) ...............................13

*Rivera v. Peri & Sons Farms, Inc.*,
  735 F.3d 892 (9th Cir. 2013)...............................................................................10

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004)..................................................................................8

*Shropshire v. Canning*,
  809 F. Supp. 2d 1139 (N.D. Cal. 2011) ...............................................................12

*Somers v. Digital Realty Trust, Inc.*,
  119 F. Supp. 3d 1088 (N.D. Cal. 2015) ...............................................................11

*Subafilms, Ltd. v. MGM-Pathe Communications, Co.*,
  24 F.3d 1088 (9th Cir. 1994)...............................................................................12

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002)..................................................................................7

*Ubiquiti Networks, Inc. & Ubiquiti Networks Int'l Ltd. v. XCONCEPTS Corp., et al.*,
  No. 11-CV-5968, Dkt. No. 1 (N.D. Cal. Dec. 5, 2011) .........................................12

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) .........................................................................................11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) (*en banc*) ...............................................................8

*Yelp, Inc. v. Catron*,
  70 F. Supp. 3d 1082 (N.D. Cal. 2014) ....................................................................6

**Statutes**

17 U.S.C. § 205(c) ....................................................................................................10

17 U.S.C. § 602(a) ...................................................................................................12

Cal. Civ. Proc. Code § 410.10....................................................................................8

17 U.S.C. § 1201 .......................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................10

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

Fed. R. Civ. P. 56 .....................................................................................................13

*Moore's Federal Practice, Civil*, at § 9.03[3].............................................................10

1

## INTRODUCTION

2    Synopsys is a world leader in semiconductor design software headquartered in Mountain

3 View, California.  From late 2013 to early 2014, Defendant Ubiquiti Networks, Inc. ("Ubiquiti")

4 and its subsidiary Ubiquiti Networks International Limited ("UNIL") used the pretext of good-faith

5 licensing discussions to deceive Synopsys into giving them access to Synopsys' California-hosted

6 file download and customer support websites.  After gaining access to Synopsys' systems, UNIL

7 and its cohorts went on a nearly three-year digital crime spree that included willfully creating illegal

8 copies of Synopsys' software, willfully creating and using counterfeit license keys to circumvent

9 Synopsys' copyright protection measures, willfully trafficking in counterfeit and illicit software

10 labels, and willfully using and distributing counterfeit access devices, among other federal crimes.

11    UNIL does not controvert the essential allegations of Synopsys' complaint, *i.e.*, that UNIL

12 fraudulently obtained Synopsys semiconductor design software in California and then repeatedly

13 pirated Synopsys' software over a period of nearly three years.  Instead, UNIL argues that it is not

14 subject to this Court's jurisdiction[1] because UNIL conducted only a "handful" of "isolated" acts in

15 California.  Dkt. 35 at 3:15-17.  The Complaint alleges far more than a mere "handful" of wrongful

16 acts by UNIL in California, but that is beside the point.  Even a *single* act within the forum state

17 gives rise to jurisdiction where the complained-of injury arises from the wrongful act.  Here, the

18 Complaint alleges that UNIL specifically targeted a Silicon Valley company, fraudulently obtained

19 software from California, and used and sent counterfeit and illicit license keys from Taiwan to

20 California to facilitate its ongoing software piracy scheme, resulting in over 39,000 instances of

21 high-value software piracy.  These and other California-directed activities alleged in the Complaint

22 are sufficient to establish jurisdiction over UNIL.  In addition, UNIL consented to this Court's

23 jurisdiction by agreeing to Synopsys' websites' terms of use.

24    Tellingly, UNIL's motion is not supported by the declaration of any UNIL employee.

25 Instead, Defendant Tsai—who tells the Court, under oath, that he has never been a UNIL

26

27 ---

[1] UNIL purports to "join in" Ubiquiti and Tsai's motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6).  Synopsys opposes that motion, and Synopsys hereby incorporates by reference the
28 arguments made in that opposition.  The arguments apply to UNIL with equal force.

employee—makes the equivocal statement that he does not *remember* agreeing to the Synopsys websites' terms of use, and that he is not *aware* of any UNIL employees who communicated directly with Synopsys in California. Dkt. 35-1. These statements are incompetent and immaterial, as discussed below. Nevertheless, Tsai's declaration *is* significant for what it *doesn't* say. Among other glaring omissions, Tsai does not say that all of UNIL's circumvention activity occurred outside of California, does not say who downloaded all of the software at issue, does not say that UNIL never downloaded software from Synopsys' California-based servers, and does not state that UNIL lacked knowledge that the pirated software was coming from California. The Court can and should draw appropriate inferences from these glaring omissions in Synopsys' favor. "Silence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923) (Brandeis, J.).

## FACTUAL BACKGROUND[2]

Synopsys develops advanced software to assist in the design of cutting-edge electronic circuits. *See* First Amended Complaint ("FAC"), Dkt. 30, at ¶¶ 22-23 (March 30, 2017). Synopsys' FAC alleges that Ubiquiti and its wholly-owned subsidiary UNIL carried out a criminal scheme to pirate Synopsys' software for commercial gain. Synopsys and Defendant Ubiquiti both have their principal places of business in this District. *Id.* at ¶¶ 1-2. Defendant Tsai is a Project Lead employed by Ubiquiti and resides in California. *Id.* at ¶¶ 10-11. Neither Ubiquiti nor Tsai challenges this Court's jurisdiction.

Ubiquiti and its wholly-owned subsidiaries develop networking technology, and a significant part of Ubiquiti's research and development operations are conducted outside the U.S., including in Taiwan. FAC at ¶¶ 3-5. One of Ubiquiti's offshore R&D facilities is UNIL's Taiwan branch office in Taipei. *Id.* at ¶¶ 6, 8. Although located in Taipei, UNIL's operations are managed from Ubiquiti's U.S. headquarters, and Ubiquiti and UNIL share a common CEO. *Id.* at ¶¶ 7-8. Ubiquiti and UNIL also share certain information technology infrastructure, including shared company communications networks, file repositories, email servers, IP addresses, and external and

---

[2] The facts stated in this Factual Background section are those relevant to UNIL's instant jurisdictional motion to dismiss.

SYNOPSYS' OPPOSITION TO UNIL'S MOTION TO DISMISS
CASE NO. 3:17-CV-00561-WHO

1    internal websites, including the web domain "www.ubnt.com," which is registered, hosted, and

2    maintained in the United States, and its subdomain "tw.corp.ubnt.com." *Id.* at ¶ 30.  Both of these

3    domains are associated with the misconduct alleged in the FAC.  *Id.*

4          UNIL's Taipei facility employs several individuals who work in the field of semiconductor

5    design, and UNIL regularly conducts semiconductor design activities in Taipei for Ubiquiti.  FAC

6    at ¶¶ 8-9.  From October 2013 to present, Defendant Tsai worked for Ubiquiti in Taipei and in San

7    Jose, *id.* at ¶¶ 12-13, apparently managing the semiconductor design team responsible for the

8    federal crimes alleged in the FAC.  *See* Tsai Declaration, Dkt. 35-1.  It is undisputed that Tsai's

9    responsibilities at Ubiquiti included procuring semiconductor design software from Synopsys for

10   use by Ubiquiti and UNIL.  *See id.*, *accord* FAC at ¶¶ 34-48.

11         **UNIL's Misrepresentations in California.**  Sometime prior to October 2013, Tsai and

12   others at Ubiquiti and UNIL conspired to fraudulently obtain Synopsys' software, make

13   unauthorized copies of the software, and create and use counterfeit license keys to access the

14   software, in circumvention of Synopsys' License Key System.  FAC at ¶ 29.  During the first and

15   second weeks of March 2014, Tsai, while physically located in the Northern District of California

16   at Ubiquiti's headquarters and acting on behalf of UNIL, negotiated with Synopsys in an attempt

17   to procure for UNIL temporary license keys for Synopsys' Formality, DC Ultra, HDL Compiler,

18   Verilog, and Design Ware Library applications.  *Id.* at ¶¶ 49-52.  Tsai continued these negotiations

19   in April 2014, traveling to Taiwan to facilitate a meeting between Synopsys and UNIL employees

20   in Taipei that ultimately culminated in Synopsys' provision of temporary license keys to UNIL for

21   Formality, DC Ultra, HDL Compiler, Verilog, Power Compiler, and Design Ware Library

22   applications.  *Id.* at ¶¶ 49-52.  Throughout the course of his communications with Synopsys, Tsai

23   made fraudulent representations in order to deceive Synopsys into granting UNIL access to

24   Synopsys' valuable software.  *See id.* at ¶¶ 108-116.

25         **UNIL's Downloads in California.**  Using the access Tsai had procured for it, UNIL

26   downloaded Synopsys' software and documentation on April 16, 2014 and May 19, 2014.  FAC at

27   ¶¶ 52-53.  The files UNIL downloaded on April 16, 2014 were hosted on, and downloaded from,

28   servers located in the United States, including servers located within the Northern District of

SYNOPSYS' OPPOSITION TO UNIL'S MOTION TO
DISMISS
CASE NO. 3:17-CV-00561-WHO

California and a remote host server located at Synopsys' Mountain View headquarters. *Id*. UNIL continued to access Synopsys' customer support and file download websites subsequent to May 19, 2014. *Id.* at ¶ 54. In order to access Synopsys websites, UNIL had to assent to Synopsys' websites' terms of use, which contain choice-of-law and venue provisions under which UNIL consented to jurisdiction in this Court. *Id.* at ¶ 17. Notably, although Tsai's declaration states that he personally downloaded Synopsys' VCS application, Tsai says nothing about who downloaded the different set of software and materials downloaded on April 16, 2014 and May 19, 2014, or who continued to access Synopsys websites after May 19, 2014.

**UNIL's Use of Illegal License Keys in California.** The precise details of Defendants' conduct is known only to them because Defendants used technical measures to obfuscate and alter Host IDs, IP addresses, MAC addresses, and other identifying information that could identify the specific computers and locations from which Defendants conducted their piracy activities. FAC at ¶ 133. Nevertheless, information in Synopsys' possession indicates that UNIL and Ubiquiti both used the same virtual machines to run unauthorized copies of Synopsys software using counterfeit license keys, and that certain of these virtual machines were used in both California *and* Taiwan. *Id.* at ¶ 62. Tsai's declaration does not deny that UNIL used counterfeit keys to access Synopsys software within California.

**Distribution of Illegal License Keys and Key Generators in California.** Using the Internet and Ubiquiti and UNIL's shared IT infrastructure, UNIL transmitted counterfeit keys and key generation tools to Ubiquiti in California. FAC at ¶¶ 57-58. Data associated with Defendants' use of Synopsys' software indicates that Ubiquiti and UNIL set up networks of computers that permitted persons to remotely access counterfeit keys, counterfeit key generation software, and unauthorized and counterfeit copies of Synopsys' software from multiple workstations connected to the Internet and to shared IT infrastructure via IP addresses, domains, and subdomains owned and/or controlled by Ubiquiti and UNIL. *Id.* at ¶ 59.

In some instances, Defendants configured computers to operate in "license server" mode, in which case a host server containing counterfeit license key files and running unauthorized copies of Synopsys' license management software could distribute counterfeit keys over the Internet to

1  multiple remote computers.  FAC at ¶ 60.  Other times, Defendants employed a "serverless"

2  configuration in which they would store counterfeit license key files at specific file paths located

3  on Ubiquiti and UNIL networks for retrieval by any computer with access to the file path.  *Id.* at

4  ¶ 61. Other times, Defendants configured computers so that Synopsys' applications and counterfeit

5  license keys were accessible from a virtual machine that could be accessed remotely and/or

6  transported and used in and outside of California.  *Id.* at FAC at ¶ 62.

7  **Distribution of Illegal Software Copies in California.**  As soon as they obtained access

8  to Synopsys' file download and customer support websites, UNIL and its co-conspirators began

9  making and distributing unauthorized copies of Synopsys' software and documentation.  FAC at

10  ¶¶ 42, 51.  In particular, during April and May of 2014, UNIL obtained access to Synopsys software

11  and began making, distributing, and using unauthorized copies of Synopsys' software and

12  documentation, including Synopsys Formality and Design Compiler applications.  *Id.* at ¶¶ 53, 56.

13  All told, Defendants infringed 13 different software applications using 15 distinct usernames

14  associated with Ubiquiti and UNIL employees.  *Id.* at ¶¶ 63, 64.

15  <u>**LEGAL STANDARD**</u>

16  In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

17  "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v.*

18  *Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  Courts draw "reasonable inferences from the

19  complaint in favor of the plaintiff." *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012), *rev'd on*

20  *other grounds*, 134 S. Ct. 1115 (2014).  The plaintiff need only make a *prima facie* showing of

21  jurisdictional facts to withstand the motion to dismiss.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

22  647 F.3d 1218, 1223 (9th Cir. 2011).  The Court must assume as true all factual allegations in the

23  complaint that defendant does not rebut via a declaration.  *See id.*  A defendant may submit a

24  declaration in support of its motion to dismiss, but courts resolve factual disputes in the plaintiff's

25  favor.  *Id.*

26  <u>**ARGUMENT**</u>

27  The FAC alleges that UNIL consented to jurisdiction in this Court by assenting to Synopsys'

28  websites' terms of use.  The FAC also alleges, clearly and in even more detail than that required by

1   the Federal Rules, multiple instances of purposeful conduct that UNIL engaged in within, and

2   directed to, California.  The unrebutted allegations of the FAC make it abundantly fair for UNIL to

3   answer to this Court for its illegal conduct.

4   **I.      UNIL CONSENTED TO PERSONAL JURISDICTION IN THIS DISTRICT**

5           Parties to a contract may agree in advance to submit to the jurisdiction of a given court.

6   *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).  Forum-selection clauses are

7   presumptively valid, and a party seeking to avoid the clause bears a "heavy burden" to establish

8   that the clause is unenforceable.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009).  A party

9   may consent to personal jurisdiction in a particular forum via website "terms of use" provisions.

10  *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015); *Yelp, Inc. v. Catron*,

11  70 F. Supp. 3d 1082, 1092 (N.D. Cal. 2014); *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp.

12  2d 1039, 1052-53 (N.D. Cal. 2010).

13          The FAC alleges that UNIL consented to personal jurisdiction by agreeing to Synopsys'

14  websites' terms of use.  *See* FAC at ¶ 17 ("This Court has personal jurisdiction over UNIL because

15  UNIL expressly assented to personal jurisdiction in the Northern District of California for any

16  disputes arising from UNIL's use of Synopsys' file download websites by affirmatively assenting

17  to Synopsys' websites' terms of use in order to gain access to copyright-protected software and

18  documentation hosted on Synopsys' file download website.").  The evidence will show that UNIL

19  assented to jurisdiction *at least* by accessing Synopsys' customer support and file download

20  websites after November 24, 2014, thereby agreeing to terms of use that stated, in part: "You agree

21  to submit to the exclusive jurisdiction of the courts located within the county of Santa Clara,

22  California, to resolve any legal matter arising from these Terms."[3]  UNIL's motion hardly mentions

23  this dispositive issue, attempting to sweep it under the rug by simply stating that "UNIL disputes

24  that it affirmatively assented to Synopsys terms of use."  Dkt. 35 at 4:4-5; 9:13-20.  The fact that

25  _____

26  [3] The FAC alleges that UNIL obtained temporary license keys in the spring of 2014 and was responsible for software application downloads in April and May of 2014.  FAC at ¶¶ 52-56.

27  Discovery will reveal the identities of the specific persons responsible for each login to Synopsys' systems, but it is clear that UNIL continued to access Synopsys customer support and download websites in 2014 and 2015 in order to facilitate use of the software it downloaded in April and

28  May of 2014.

1    UNIL purportedly disputes FAC ¶ 17 in its brief, relying purely on attorney argument, is not a basis

2    to grant a Rule 12 motion.  Because UNIL has not offered competent evidence to rebut Synopsys'

3    allegation, the Court must presume its truth.  *See Glud & Marstrand A/S v. Viva Magentics Ltd*

4    *(Hong Kong)*, No. C12-465, 2012 WL 12878686, at *2 (W.D. Wash. Aug. 7, 2012) (denying

5    motion to dismiss where defendant's declarations failed to contradict allegation in complaint that

6    defendant consented to personal jurisdiction).

7        The only "evidence" UNIL offers to support its argument that it did not assent to jurisdiction

8    is Tsai's Declaration, Dkt. 35-1, in which Tsai states that he does not recall agreeing to any terms

9    of use.  *See* Tsai Declaration at ¶¶ 4, 11.  This declaration is unavailing for two reasons.  First, the

10   FAC alleges that UNIL assented to personal jurisdiction, and Tsai cannot authoritatively declare

11   on behalf of UNIL or otherwise confirm that no UNIL employee ever assented to Synopsys'

12   websites' terms of use.  Tsai Declaration at ¶ 1 ("I am not and have never been an employee of

13   [UNIL] . . . .").  Tsai does not even offer speculation about whether any employee of UNIL agreed

14   to be bound by Synopsys' terms of use.  Furthermore, Tsai's declaration states only that he

15   downloaded one single application—VCS—out of the thirteen infringed applications discussed in

16   the FAC.  The reasonable inference to draw from Tsai's declaration is that *someone else*

17   downloaded the Formality, DC Ultra, Power Compiler, HDL Compiler, Verilog, and Design Ware

18   Library applications from Synopsys' U.S. servers in April and May of 2014.  *See* FAC at ¶ 52.

19       Second, the Tsai declaration does not even contradict the substance of paragraph 17 of the

20   FAC because Tsai does not say in his Declaration that he never agreed to Synopsys' terms of use.

21   Rather, he stated that he ***does not recall*** whether he explicitly agreed to the terms of use.  *See* Tsai

22   Declaration at ¶ 4 ("So far as I recall, the links that I received . . . ."); *id.* at ¶ 11 ("I do not recall

23   any point in time when I . . . .").  These non-committal statements are not sufficient to contradict

24   the allegations of Synopsys' FAC.  *See, e.g., Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-736 (7th

25   Cir. 2002) (no material factual dispute where plaintiff "does not recall seeing" arbitration program

26   brochure).  Because UNIL has not offered any evidence that contradicts paragraph 17 of the FAC,

27   the Court must accept Synopsys' allegations as true.

28

SYNOPSYS' OPPOSITION TO UNIL'S MOTION TO
DISMISS
CASE NO. 3:17-CV-00561-WHO

## II.    UNIL HAS SUFFICIENT "MINIMUM CONTACTS" WITH THIS DISTRICT

As a separate and independent basis for jurisdiction, UNIL has acted within California and has also expressly aimed tortious conduct at Synopsys in the Northern District of California, subjecting it to this Court's jurisdiction.   California's long-arm statute is coextensive with the Federal Constitution.  *See* Cal. Civ. Proc. Code § 410.10.  Accordingly, courts in this District use a three-part test to analyze personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  While all three requirements must be met, in considering the first two prongs, "[a] strong showing on one axis will permit a lesser showing on the other."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (*en banc*).  So long as it creates a substantial connection with the forum, even a single act can support specific jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).

### A.    UNIL Purposefully Directed its Activity to Synopsys, a California Resident

Under Ninth Circuit precedent, "purposeful direction" means that a plaintiff must allege that the defendant has 1) committed an intentional act, 2) expressly aimed at the forum state, and 3) caused harm that the defendant knows is likely to be suffered in the forum state.  *See Schwarzenegger*, 374 F.3d at 803.

#### 1.    Intentional Act

The FAC alleges the required "intentional acts" because it alleges: (1) that UNIL downloaded and used software stored on Synopsys' California servers (FAC at ¶¶ 18, 48, 53, 54, 56); (2) that UNIL transmitted counterfeit and illicit license keys and unauthorized copies of Synopsys' software to California-based Ubiquiti (*id.* at ¶¶ 28, 33, 42, 46, 49, 51, 56, 58, 63); (3)

1    that UNIL is associated with virtual machines that used counterfeit license keys within California

2    (*id.* at ¶ 62); and (4) that UNIL employees contacted Synopsys' U.S.-based customer support

3    personnel to obtain assistance in using the pirated software. *Id.* at ¶ 55.   These are undoubtedly

4    "intentional acts." *See Mavrix*, 647 F.3d at 1229 (finding "[t]here is no question" that element was

5    satisfied where complaint alleged intentional posting of photographs that infringed plaintiff's

6    copyrights).

7                                    **2.      Express Aiming**

8            Synopsys has also alleged acts expressly aimed at California because the FAC alleges that

9    UNIL targeted Synopsys' California servers to unlawfully download and use Synopsys' software.

10   *See, e.g.*, FAC at ¶¶ 18, 48, 53, 54, 56.   UNIL also shared pirated software and license keys with

11   California-based Ubiquiti, and is associated with virtual machines that used counterfeit license keys

12   within California.   By expressly reaching out to California to unlawfully access Synopsys' systems

13   and its software, which all Defendants knew are located in California, UNIL expressly aimed its

14   tortious conduct at Synopsys in this District. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316,

15   1322 (9th Cir. 1998) (purposeful direction where cybersquatter attempted to extort money from

16   Panavision, which defendant knew was based in California); *Microsoft Corp. v. Mountain W.*

17   *Computers, Inc.,* No. C14-1772RSM, 2015 WL 4479490, at *7 (W.D. Wash. July 22, 2015)

18   ("express aiming" where defendant accessed Microsoft's computer servers to validate unlicensed

19   software because defendant knew Microsoft was located in Washington state); *Gen. Motors L.L.C.*

20   *v. Autel. US Inc*., No. 14-14864, 2016 WL 1223357, at *4 (E.D. Mich. Mar. 29, 2016) ("[Chinese

21   defendant] has reached into Michigan to access GM's intellectual property located on its servers

22   residing in Michigan.   This is an example of purposeful availment.") (citation omitted).

23           There is ample support for Synopsys' allegations that UNIL ***knowingly*** copied software and

24   documentation from Synopsys servers located in California.   Synopsys has its principal place of

25   business in Mountain View, California, which UNIL knew by virtue of its course of dealing with

26   Synopsys, its use of Synopsys software, and its participation in the semiconductor design industry.[4]

27   _____

28   [4] A quick and simple internet search shows that Synopsys is headquartered in Mountain View,
     California. *See* https://www.synopsys.com/company/contact-synopsys.html.   Moreover,

Furthermore, Synopsys, Ubiquiti—UNIL's corporate parent—and Tsai all reside in California. Although UNIL complains that "Synopsys' conclusory allegations do not establish that any UNIL employee knew Synopsys even had servers in California,"[5] the Court may plausibly infer that UNIL knew—or at a minimum, recklessly disregarded the possibility—that it reached out to California-based servers to pirate Synopsys' software. *See Fiore*, 688 F.3d at 575 ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility.").

And, in any event, because Synopsys cannot read UNIL's thoughts, it is not required to prove up UNIL's state of mind at the pleading stage. *Cf.* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) ("At the pleading stage, a plaintiff need not allege willfulness with specificity."); *Moore's Federal Practice, Civil*, at § 9.03[3] ("A rationale for allowing conditions of the mind to be generally stated is that a pleader cannot be expected to know the adverse party's state of mind.").

### 3.   Harm Suffered in California

For the reasons just described, it is apparent that UNIL knew its conduct would harm Synopsys in California.  UNIL—like most (if not all) companies involved in the electronic design automation business—knows that Synopsys is headquartered in this District.  In the context of other violations of Title 17, the Ninth Circuit has held that it is foreseeable that harm occurs both in the forum where the infringement took place and where the copyright holder has its principal place of business.  *See Mavrix*, 647 F.3d at 1231; *Autodesk, Inc. v. Kobayashi + Zedda Architects, Ltd.*, 191 F. Supp. 3d 1007, 1017-18 (N.D. Cal. 2016).  The same principle applies here.  *See Microsoft*, 2015 WL 4479490, at *8.

### B.   The Claim Relates to UNIL's Forum-Related Activities

The Supreme Court recently clarified the requirement that the plaintiff's claim be one that

---

Synopsys software applications and documentation contain copyright notices, and Defendants are on constructive notice of Synopsys' ownership of such copyrights.  *See* 17 U.S.C. § 205(c).

[5] Dkt. 35 at 9.

SYNOPSYS' OPPOSITION TO UNIL'S MOTION TO DISMISS
CASE NO. 3:17-CV-00561-WHO

1    arises out of or relates to the defendant's forum-related activities.  The Court held that "[a] forum

2    State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on

3    intentional conduct by the defendant that creates the necessary contacts with the forum."  *See*

4    *Walden v. Fiore,* 134 S. Ct. 1115, 1123 (2014).  Thus, there is no specific jurisdiction where "no

5    part of [Defendant's] course of conduct occurred" in the forum state.  *Id.* at 1124.  The Ninth Circuit

6    uses a "but for" test, which asks whether the plaintiff's claims would have arisen but for the

7    defendant's contacts with California.  *See Ballard*, 65 F.3d at 1500.

8         UNIL claims there can be no "but for" causation because "Plaintiff has not alleged *any*

9    contacts by UNIL with the forum state." Dkt. 35 at 6 (emphasis in original).  But, as previously

10   described, UNIL connected to Synopsys' servers in California to unlawfully access Synopsys'

11   software, shared illicit license keys and Synopsys software with California-based Ubiquiti,

12   communicated with U.S.-based Synopsys personnel, and is associated with virtual machines that

13   used counterfeit licenses within California.  But for UNIL's illegal conduct in California, UNIL

14   would not have been able to access and use Synopsys' software in contravention of Synopsys'

15   rights.   Unlike *Walden*, where the defendant "never . . . conducted activities within . . . or sent

16   anything or anyone to" the forum state, 134 S. Ct. at 1124, UNIL connected to, sent data to, and

17   received data from, Synopsys and its California-based servers.  Such electronic access is sufficient

18   to create personal jurisdiction. *See Panavision*, 141 F.3d at 1320 ("It is not required that a defendant

19   be physically present or have physical contacts with the forum, so long as his efforts are

20   'purposefully directed' toward forum residents."); *Autodesk,* 191 F. Supp. 3d at 1018 ("but for"

21   cause requirement satisfied where defendant's conduct caused injury to owner of intellectual

22   property owner located within the forum state); *Craigslist,* 694 F. Supp. 2d at 1053-54 (similar).

23        **C.    Reasonableness**

24        UNIL's motion to dismiss fails to address the final element of the three-prong test to

25   determine when specific jurisdiction over a non-resident defendant is appropriate—

26   reasonableness." Dkt. 35 at 7 n.3.  UNIL has therefore waived this argument. [6]  *See Somers v.*

27   

28   _____

[6] Furthermore, UNIL well knows it would be reasonable and just for it to be held accountable for
its actions in this District, and that it cannot argue in good faith that it would violate fundamental
notions of fair play and substantial justice to require it to defend itself in the Northern District of

SYNOPSYS' OPPOSITION TO UNIL'S MOTION TO
DISMISS
CASE NO. 3:17-CV-00561-WHO

1   *Digital Realty Trust, Inc.*, 119 F. Supp. 3d 1088, 1106 (N.D. Cal. 2015) ("Because Digital Realty

2   did not make this argument in its initial motion to dismiss, the argument is waived.").

3   **III.   UNIL'S EXTRATERRITORIALITY ARGUMENT LACKS MERIT**

4           UNIL argues that Synopsys' claims fail because of the general rule against extraterritorial

5   application of U.S. copyright law.  This last-ditch argument fails for several reasons.  First,

6   Synopsys has not brought a stand-alone claim for copyright infringement in this case; it asserts

7   DMCA claims against UNIL.  UNIL cites no case holding that the DMCA lacks any extraterritorial

8   effect, because no such authority exists.  Indeed, the Ninth Circuit has recognized that statutes that

9   impose import restrictions (like DMCA sections 1201(a)(1)(2) and 1201(b)) can have at least some

10  extraterritorial application.  *See Subafilms, Ltd. v. MGM-Pathe Communications, Co.*, 24 F.3d

11  1088, 1096 (9th Cir. 1994) (characterizing import restriction provision of 17 U.S.C. § 602(a) as

12  "one specific 'extraterritorial' application of the [Copyright] Act").  Second, nothing in the FAC—

13  or in UNIL's motion, for that matter—suggests that all of UNIL's acts of circumvention occurred

14  outside the United States.  On the contrary, the FAC alleges that UNIL engaged in acts of

15  circumvention that were partially, if not wholly, carried out within California.  *See, e.g.*, FAC at

16  ¶¶ 18, 48, 53, 54, 56.  Although "*wholly* extraterritorial" activity does not violate U.S. copyright

17  infringement law, that rule applies only to violations that occur ***entirely*** abroad.  *See Subafilms,* 24

18  F.3d at 1090; *see also Shropshire v. Canning,* 809 F. Supp. 2d 1139, 1147 (N.D. Cal. 2011)

19  (plaintiff stated claim for copyright infringement where video was copied in Canada and loaded

20  onto YouTube servers in California).

21  **IV.   JURISDICTIONAL DISCOVERY**

22          As previously explained, UNIL has not presented competent evidence that contradicts the

23  FAC on any material point.  Therefore, Synopsys need not adduce any evidence to overcome

24  UNIL's motion.  However, to the extent the Court believes Synopsys must present evidence to

25  defeat UNIL's motion, Synopsys requests leave to conduct targeted jurisdictional discovery, on an

26  _____

27  California.  UNIL closely coordinates with Ubiquiti on semiconductor design, shares
    management, executive, and board of directors personnel with Ubiquiti, and has even filed suit in
    this District before as a Plaintiff.  *See Ubiquiti Networks, Inc. & Ubiquiti Networks Int'l Ltd. v.*

28  *XCONCEPTS Corp., et al.*, No. 11-CV-5968, Dkt. No. 1 (N.D. Cal. Dec. 5, 2011).

SYNOPSYS' OPPOSITION TO UNIL'S MOTION TO
DISMISS
CASE NO. 3:17-CV-00561-WHO

1   expedited basis, in order to address any issues the Court deems necessary. *See Data Disc, Inc. v.*

2   *Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1284-85 n.1 (9th Cir. 1977) ("Discovery may

3   appropriately be granted where pertinent facts bearing on the question of jurisdiction are

4   controverted or where a more satisfactory showing of the facts is necessary."); *Klein v. Freedom*

5   *Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1160 (D. Nev. 2009) ("[The] Court should grant

6   discovery when the jurisdictional facts are contested or more facts are needed.").

7   **V.      OBJECTIONS TO DEFENDANT TSAI'S DECLARATION**

8          Tsai's declaration is defective because many of its statements lack foundation, are

9   speculative, and are based on hearsay.  A declaration must conform as much as possible to the

10  requirements for declarations laid out in Fed. R. Civ. P. 56, *see* Civil L.R. 7-5(b), which requires

11  that declarations must be made on personal knowledge, set out facts that would be admissible in

12  evidence, and show that the affiant or declarant is competent to testify on the matters stated. *Hexcel*

13  *Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012); *Bliesner v. Communication*

14  *Workers of America*, 464 F.3d 910, 915 (9th Cir. 2006).

15         A fundamental problem with the Tsai declaration is that Tsai does not lay a foundation to

16  definitely speak for UNIL.  Tsai Declaration at ¶ 1 ("I am not and have never been an employee of

17  [UNIL] . . . ."); *see also Flintkote Co. v. Gen. Accident Assurance Co. of Canada*, 410 F. Supp. 2d

18  875, 884-85 (N.D. Cal. 2006) (portion of declaration inadmissible where declarant attempted to

19  describe events that occurred before he began working for party); *Pringle v. Family Dollar Stores*

20  *of Georgia, Inc.*, No. CV 112-044, 2014 WL 4926386, at *9-10 (S.D. Ga. Sept. 30, 2014) (striking

21  declaration where declarant was not employed by party during the relevant time period).  There are

22  also many individual statements in the declaration where foundation is clearly lacking, Tsai is

23  relying on hearsay emails, or Tsai is speculating about facts he does not actually know or remember.

24  The following chart summarizes the many individual defects in Tsai's declaration:

25

| Para. | Inadmissible Portion | Objection(s) |
|-------|----------------------|--------------|
| 4 | So far as I recall, the links that I received did not require me to assent to any terms of use or anything in addition to the evaluation license that I had already signed. | **Speculation**: Tsai does not remember whether he assented to the terms of use, indicated by the hedging phrase "So far as I recall." |

26

27

28

| Para. | Inadmissible Portion | Objection(s) |
|---|---|---|
| 6 | Mr. Bergman referred me to Tony Huang from Synopsys Taiwan Co., Ltd. ("Synopsys Taiwan") in Taiwan . . . . | **Lack of Foundation**: Tsai is not qualified to speak to which Synopsys entity Mr. Huang works for, or where Mr. Huang resides. |
| 7 | Based on that review, I can confirm that no UNIL employee that I am aware of communicated directly by email with Mr. Bergman or any other Synopsys employees located in California during this timeframe. | **Lack of Foundation**: Tsai is not qualified to speak to UNIL's communications with Synopsys or the location of any Synopsys employees. |
| 8 | I am aware that UNIL employees communicated with Synopsys Taiwan employees *located in Taiwan* in this timeframe . . . Specifically, in late March 2014, I understand that a UNIL employee sent a Host ID to Mr. Huang of Synopsys Taiwan for the DC Ultra software evaluation. But to the best of my knowledge, UNIL employees did not communicate directly with any Synopsys employees *located in California* in this timeframe. | **Lack of Foundation**: Tsai is not qualified to speak to UNIL's communications with Synopsys or the location of any Synopsys employees. **Hearsay**: Tsai is relying on emails, which are out-of-court statements, for the truth of the matter asserted. **Speculation**: Tsai hedges the final statement in the paragraph with the phrase "to the best of my knowledge." |
| 9 | The Synopsys Taiwan employees who attended that meeting, Mr. Huang and Victor Chen, were both located in Taiwan and, to the best of my knowledge, worked out of Synopsys Taiwan offices.  No Synopsys California employees joined the April 8, 2014 meeting remotely from California . . . . | **Lack of Foundation**: Tsai is not qualified to speak to which Synopsys entity Messrs. Huang and Chen work for, or where Synopsys employees are located. |
| 11 | I do not recall any point in time when I used Synopsys's file download websites that I received a prompt or other request asking me to agree to Synopsys's terms of use. | **Speculation**: Tsai does not remember whether he assented to the terms of use, as indicated by the hedging phrase "I do not recall." |
| 12 | On May 19, 2014, a UNIL employee exchanged emails with a Synopsys Taiwan employee, Peter Tseng, and a Synopsys California employee, Richard Su—*both of whom were located in Taiwan at that time*—about a technical issue with a Synopsys software program. | **Lack of Foundation**: Tsai is not qualified to speak to UNIL's communications with Synopsys or the location of any Synopsys employees. **Relevance**: The physical location of Synopsys employees at the time of the subject communications is irrelevant. |
| 12 | According to the email, Mr. Tseng and Mr. Su walked over to UNIL's Taiwan office on May 19, 2014, to assist the UNIL employee with that issue. | **Hearsay**: Tsai is relying on emails, which are out-of-court statements, for the truth of the matter asserted. |
| 12 | To my knowledge, no UNIL employee knowingly interacted with any Synopsys customer support personnel located in California on or around May 19, 2014. | **Lack of Foundation**: Tsai is not qualified to speak to UNIL's communications with Synopsys or the location of any Synopsys employees. |

The Tsai declaration is so riddled with baseless, objectionable statements that the entire declaration must be disregarded as speculative, lacking foundation, and relying on hearsay.  UNIL therefore offers no competent evidence to contradict ***any*** of the allegations in the FAC.

1

## **CONCLUSION**

2
    For the foregoing reasons, the Court should deny UNIL's motion to dismiss.

3

Dated: April 25, 2017

4
                                    DENISE M. MINGRONE
                                      ROBERT L. URIARTE
                                      Orrick, Herrington & Sutcliffe LLP

5

6

7
                         By: _____ */s/ Denise Mingrone*
                                 DENISE M. MINGRONE

8
                                   Attorneys for Plaintiff
                                   SYNOPSYS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28