1   DENISE M. MINGRONE (STATE BAR NO. 135224)
    dmingrone@orrick.com
2   ROBERT L. URIARTE (STATE BAR NO. 258274)
    ruriarte@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA  94025-1015
    Telephone:     +1 650 614 7400
5   Facsimile:     +1 650 614 7401

6   Attorneys for Plaintiff and Counterdefendant,
    SYNOPSYS, INC.
7

8                       UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12  SYNOPSYS, INC.,                          Case No. 3:17-cv-00561-WHO

13                   Plaintiff,              **SECOND AMENDED COMPLAINT
                                             FOR**
14          v.                               **(1) VIOLATION OF DIGITAL
                                             MILLENNIUM COPYRIGHT
15  UBIQUITI NETWORKS, INC., UBIQUITI        ACT 17 U.S.C. § 1201(a)(1);**
    NETWORKS INTERNATIONAL  LIMITED,         **(2) VIOLATION OF DIGITAL
16  CHING-HAN TSAI, and DOES 1-20,           MILLENNIUM COPYRIGHT
    inclusive,                               ACT 17 U.S.C. § 1201(a)(2);**
17                                           **(3) VIOLATION OF DIGITAL
                     Defendants.             MILLENNIUM COPYRIGHT
18                                           ACT 17 U.S.C. § 1201(b)**
                                             **(4) VIOLATION OF 18 U.S.C. § 2318;**
19                                           **(5) FRAUD;**
                                             **(6) CIVIL RICO, 18 U.S.C.  § 1964;**
20                                           **(7) NEGLIGENT
                                             MISREPRESENTATION;**
21
                                             **DEMAND FOR JURY TRIAL**
22

23  UBIQUITI NETWORKS, INC.

24                   Counterclaimant,

25          v.

26  SYNOPSYS, INC.,

27                   Counterdefendant.

28

Plaintiff Synopsys, Inc. ("Synopsys") hereby brings this Complaint against Defendants Ubiquiti Networks, Inc. ("Ubiquiti"), Ubiquiti Networks International, Ltd. ("UNIL"), and Ching-Han Tsai ("Tsai") for carrying out a coordinated software piracy scheme involving at least Synopsys' Debussy, Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi applications, in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.* (the "DMCA"), 18 U.S.C. § 2318 (relating to counterfeit and illicit documentation and labels), 18 U.S.C. § 1029 (relating to counterfeit access devices); 18 U.S.C § 1962 (relating to criminal enterprises); 17 U.S.C. § 506 & 18 U.S.C. § 2319 (relating to criminal copyright infringement); 18 U.S.C § 1343 (relating to wire fraud); and common law torts of deceit.

Synopsys seeks injunctive relief, statutory and/or actual damages, exemplary damages, attorneys' fees and costs, an accounting, and any such other relief as the Court may deem proper.

## **PARTIES**

1.      Plaintiff Synopsys is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Mountain View, California.

2.      Defendant Ubiquiti is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 2580 Orchard Parkway, San Jose, California 95131.

3.      According to Ubiquiti's February 9, 2017 10-Q filing with the U.S. Securities and Exchange Commission, Ubiquiti and its wholly owned subsidiaries develop high performance networking technology for service providers and enterprises.

4.      According to Ubiquiti's February 9, 2017 10-Q, a significant portion of Ubiquiti's revenue is generated in the United States.

5.      According to Ubiquiti's February 9, 2017 10-Q, certain of Ubiquiti's operating expenses are denominated in the currencies of the countries in which its operations are located, including particularly the Taiwan Dollar.  Significant parts of Ubiquiti's research and development operations are conducted outside the U.S., and Ubiquiti manages these geographically dispersed teams in order to meet its objectives for new product introduction,

SYNOPSYS, INC.'S SECOND AMENDED COMPLAINT
CASE NO. 17-CV-00561-WHO

1    product quality, and product support.

2         6.    UNIL is an entity incorporated under the laws of Hong Kong with a registered

3    office address of 18/F Edinburgh Tower The Landmark 15 Queen's Road Central, Hong Kong.

4    UNIL is a subsidiary of Ubiquiti and participates in Ubiquiti's activities relating to the

5    development and distribution of networking technology.  UNIL has a branch in Taiwan with a

6    principal office at Suite 107, Floor 12, Song Ren Road, Xin Yi District, Taipei.

7         7.    According to publicly available business information regarding UNIL, Robert J.

8    Pera is a Director and the CEO of UNIL, and UNIL's business includes computer systems design

9    services and exports.  According to Ubiquiti's February 9, 2017 10-Q, Robert J. Pera is also

10   Ubiquiti's Chief Executive Officer, Chairman of the Board, founder, and Chief Operating

11   Decision Maker.  According to Ubiquiti's February 9, 2017 10-Q, Ubiquiti reports financial

12   information on an aggregate and consolidated basis to Mr. Pera.

13        8.    According to publicly available business information regarding UNIL, persons

14   employed by UNIL's Taipei branch work in the field of semiconductor design, including the

15   design of "IC's" or "integrated circuits" and "ASIC" or "application-specific integrated circuits."

16        9.    Ubiquiti's SEC filings, publicly available information about UNIL and its

17   employees, and representations made by Tsai and others to Synopsys indicate that, under

18   Ubiquiti's management and direction, UNIL regularly conducts semiconductor design activities

19   for Ubiquiti and designs products to be imported and sold in the United States, including in

20   California.  In addition, on information and belief, UNIL's company website is a subdomain of

21   the "ubnt.com" web domain owned and controlled by Ubiquiti from California.

22        10.   Defendant Tsai is an individual employed by Ubiquiti as a Project Lead.

23        11.   Tsai is a resident of California.

24        12.   Publicly available information published by Tsai indicates that he is a

25   semiconductor professional with extensive experience in the design of integrated circuits, and that

26   from October 2013 to present, Tsai has worked as a Project Lead for Ubiquiti in Taipei.

27        13.   On information and belief, Tsai regularly works out of Ubiquiti facilities in

28   California, including its headquarters in the Northern District of California.

14.     Synopsys does not presently know the true names and capacities of the defendants sued herein as Does 1 through 20, inclusive.  Synopsys will seek leave of court to amend this Complaint to allege said defendants' true names and capacities as soon as Synopsys ascertains them.

## JURISDICTION AND VENUE

15.     This action arises under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq*., 18 U.S.C. § 2318, 18 U.S.C § 1962, and California common law.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     This Court has personal jurisdiction over Ubiquiti because its principal place of business is located in the Northern District of California.

17.     This Court has personal jurisdiction over UNIL because UNIL expressly assented to personal jurisdiction in the Northern District of California for any disputes arising from UNIL's use of Synopsys' file download websites by affirmatively assenting to Synopsys' websites' terms of use in order to gain access to copyright-protected software and documentation hosted on Synopsys' file download website.  *Inter alia*, one or more UNIL employees acting on UNIL's behalf accessed Synopsys' SolvNet website on multiple dates subsequent to November 25, 2014, at which point Synopsys' terms of use provided in pertinent part: "These Terms govern your use of SolvNet and Content, in addition to the terms of the License Agreement…These Terms will be governed by and construed in accordance with the laws of the State of California, without regard to or application of conflict of laws rules or principles. You agree to submit to the exclusive jurisdiction of the courts located within the county of Santa Clara, California, to resolve any legal matter arising from these Terms."  In order to access Synopsys' SolvNet website on or after November 25, 2014, it was necessary for a user to affirmatively assent to the terms of use by clicking a radio button that stated "YES, I AGREE TO THE ABOVE TERMS."

18.     This Court also has personal jurisdiction over UNIL because UNIL committed a substantial part of the wrongful acts giving rise to this suit within California and the Northern District of California.  *Inter alia*, UNIL knowingly and with the intent to make and distribute unauthorized copies downloaded software and documentation from Synopsys servers located in

California and the Northern District, carried out business negotiations regarding the software at issue with Synopsys employees located in California, and Tsai, while physically present in California and acting on behalf of UNIL, misrepresented and omitted material facts to Synopsys in order to induce Synopsys to provide UNIL with access to Synopsys' copyright-protected software and documentation.

19.    This Court also has personal jurisdiction over UNIL because of its regular business activities within and directed toward the State of California.  Ubiquiti's SEC filings indicate that UNIL's semiconductor design activities are directed and funded from Ubiquiti's headquarters in the Northern District of California, and UNIL has an intimate and ongoing business relationship with Ubiquiti, Ubiquiti and UNIL CEO and board member Robert J. Pera, and other Ubiquiti employees located in California, including Tsai, who regularly manage and direct UNIL's activities from within California and the Northern District of California.  Ubiquiti personnel including Tsai have authority to negotiate, review, and approve licenses for semiconductor design software on behalf of UNIL, and UNIL requires such technology to perform its ordinary business activities.  In addition, UNIL designs products for importation to and sale within the State of California, including within the Northern District of California.  UNIL has purposely availed itself of the laws of California by carrying out an ongoing business relationship with Ubiquiti in California, by purposely directing its normal business activities to California, and by filing a lawsuit as a plaintiff in at least one case in the Northern District of California.

20.    This Court has personal jurisdiction over Tsai because he resides in California, owns real property in California, and regularly conducts business in the State of California and Northern District of California.

21.    Venue in this district is appropriate under 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the dispute occurred within this district.

## FACTUAL ALLEGATIONS

**General Background**

22.    As modern electronic devices become more and more compact and powerful, they use increasingly sophisticated computer processor chips.  For example, computer chips found in

modern networking equipment can contain millions of transistors.  When designing a computer processing chip, the stakes are enormous.  Chip designers need software that will ensure that their complex designs will work flawlessly.  Accordingly, chip designers require extremely robust and powerful computer software to design and test those chips.  Many of the world's biggest and most important chip design companies turn to Synopsys for that software.

23.    Since it was founded in 1986, Synopsys has been a leading provider of Electronic Design Automation ("EDA") solutions for the semiconductor industry.  EDA generally refers to using computers to design, verify, and simulate the performance of electronic circuits.  For more than 25 years, Synopsys' solutions have helped semiconductor manufacturers and electronics companies design, test, and manufacture microchips and electronic systems for a wide range of products.  Headquartered in Mountain View, California, Synopsys is the fifteenth largest software company in the world and currently employs over 10,000 employees worldwide.  Synopsys has developed a comprehensive, integrated portfolio of prototyping, IP, implementation, verification, manufacturing, optical, field-programmable gate array, and software quality and security solutions.

24.    Synopsys' EDA software applications, including its Debussy, Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi applications, are works subject to copyright protection under Title 17 of the United States Code.

25.    Synopsys does not sell ownership rights or copyright or other intellectual property rights to its EDA software and associated services.  Instead, Synopsys' customers purchase licenses.  These licenses grant Synopsys customers limited rights to install Synopsys' EDA software and to access and use specific Synopsys software programs and documentation subject to control by Synopsys' License Key system.

26.    Synopsys' License Key system is a built-in security system that controls access to its licensed software by requiring a user to access a key code provided by Synopsys in order to execute the licensed software.  This key code controls the quantity and term of the licensed software in accordance with the license terms.

27.     Neither Tsai, Ubiquiti, nor UNIL ever obtained a valid license from Synopsys to access and use the EDA software at issue herein.  Instead, Tsai, Ubiquiti, and UNIL fraudulently induced Synopsys to grant them limited access to a subset of the Synopsys software for a finite evaluation period.

28.     Since at least February 2014, Tsai, Ubiquiti, and UNIL have been secretly using counterfeit keys obtained and/or created with tools obtained through hacker websites to circumvent the Synopsys License Key system and access and use Synopsys' EDA software, including at least its Debussy, Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi applications, without a valid license.  Tsai, Ubiquiti, and UNIL knew or had reason to know that their access and use of Synopsys' software was unauthorized and in violation of the DMCA and other U.S. laws designed to protect Synopsys' valuable intellectual property.  The fact that they were not being required to pay Synopsys a license fee for access and use of the software alone should have put Tsai, Ubiquiti, and UNIL on notice that their access and use of Synopsys' software was unauthorized.  Furthermore, use of counterfeit license keys continued even after Synopsys notified Ubiquiti of its unauthorized use of Synopsys' software.

29.     On information and belief, prior to October 2013, Tsai and others at Ubiquiti and UNIL conspired to, and did, form an associated in fact enterprise ("Piracy Enterprise") with a common purpose of pirating Synopsys' software in order to lower Ubiquiti and UNIL's semiconductor development costs and reap ill-gotten profits.  Tsai, Ubiquiti, and UNIL each took wrongful acts in furtherance of their unlawful agreement by financing the Piracy Enterprise, attempting to gain and gaining unauthorized access to Synopsys' software and documentation, making and distributing unauthorized copies of Synopsys' software and documentation, and using counterfeit and illicit license keys and counterfeit access devices to make unauthorized access to Synopsys' copyright-protected software, among other wrongful acts in furtherance of the Piracy Enterprise.  Tsai, Ubiquiti, and UNIL continuously and effectively carried out the purpose of the Piracy Enterprise from at least October 2013 to June 2016, causing harm to Synopsys in the form of at least, but not limited to, misappropriation of valuable intellectual property, lost licensing

1    revenue, and costs associated with remediating their conduct.

2        30.    Ubiquiti and UNIL share certain information technology infrastructure including

3    shared company communications networks, file repositories, email servers, IP addresses, and

4    external and internal websites, including the web domain "www.ubnt.com," which is registered,

5    hosted, and maintained in the United States, and its subdomain "tw.corp.ubnt.com," both of

6    which are associated with the misconduct alleged herein.  Tsai, Ubiquiti, and UNIL made use of

7    this shared IT infrastructure in conducting the Piracy Enterprise.

8        31.    Tsai, Ubiquiti, and UNIL have each used Internet communications transmitted by

9    means of wire in interstate and foreign commerce in the course of conducting the Piracy

10   Enterprise.

11       32.    The Piracy Enterprise and its agents, while connected to the Internet via domains,

12   subdomains, and shared IT infrastructure controlled by Ubiquiti and UNIL, have used counterfeit

13   keys to circumvent the Synopsys License Key access-control system at least 39,000 times using

14   multiple computers and devices associated with Ubiquiti, UNIL, and others.  On information and

15   belief, Defendant Tsai has personally used counterfeit license keys to circumvent the Synopsys

16   License Key access-control system at least 66 times.

17       33.    In addition to using counterfeit license keys, the Piracy Enterprise has created and

18   distributed amongst its members (i) unauthorized and counterfeit copies of Synopsys' software

19   and documentation, (ii) technology and components thereof designed for the specific purpose of

20   circumventing technological measures that effectively control access to Synopsys' works, (iii)

21   counterfeit access devices; (iv) counterfeit license keys, and (v) illicit license keys.  On

22   information and belief, the Piracy Enterprise has employed Ubiquiti and UNIL's shared IT

23   infrastructure in carrying out its illegal distribution of such materials and course of conduct.

24   **Ubiquiti and Tsai Gain Access to Synopsys' Intellectual Property**

25       34.    In 2013, Ubiquiti had a need of electronic design automation software to assist in

26   the design and testing of chips it was beginning to develop, and began discussions with Synopsys

27   regarding its software products.

28       35.    On September 11, 2013, Tsai, acting on behalf of the Piracy Enterprise,

communicated with Synopsys employees in Mountain View, California via email and represented that Ubiquiti was interested in licensing "at a minimum" Synopsys VCS and Verdi EDA software applications.  Tsai also represented that Ubiquiti was interested in licensing a separate suite of Synopsys semiconductor designs.  On or about September 12, Tsai met in person with Synopsys employees in San Jose and stated that Ubiquiti was also interested in licensing Synopsys' Design Compiler application.  On or about this same date, Tsai represented to Synopsys that Ubiquiti planned to build up a semiconductor design team at Ubiquiti's U.S. headquarters, and that Synopsys was its number one choice.  Tsai's statements on September 11 and 12 were designed to, and did, create the impression that Ubiquiti was interested in creating a significant business relationship with Synopsys that would lead to substantial revenue.  As evidenced by the conduct discussed below, Tsai's statements on September 11 and September 12, 2013 were false when made.

36.     On September 30, 2013, acting on behalf of the Piracy Enterprise, Tsai emailed Synopsys in Mountain View and represented that Ubiquiti was interested in taking a total of 21 licenses for Synopsys VCS, Verdi, Design Compiler, and Formality EDA applications during the period from November 2013 to June 2014.  Tsai represented that Ubiquiti was interested in obtaining licenses for VCS and Verdi applications by November 2013, additional licenses for these two products and Design Compiler in February 2014, and licenses for Formality by June 2014.  As evidenced by the conduct discussed below, Tsai's statements on September 30, 2013 were false when made.

37.     On October 1, 2013, acting on behalf of the Piracy Enterprise, Tsai emailed Synopsys in Mountain View and represented that Ubiquiti had elected to take a Local Area Network ("LAN") form of Synopsys' licenses because the licenses would be used by a small U.S. team.  Tsai stated "I don't think it's necessary for us to have the flexibility of checking out licenses across [different physical] sites over [a Wide Area Network]."  As evidenced by the conduct discussed below, this statement was false when made, as Tsai and Ubiquiti contemplated using Synopsys' software at numerous geographically distributed locations ranging from the Northern District of California to Taiwan.

38.     On October 14, 2013, acting on behalf of the Piracy Enterprise, Tsai emailed Synopsys in Mountain View and represented that Tsai intended for Ubiquiti to consummate its first EDA tool purchase from Synopsys before October 31, 2013.  Later that day in a subsequent email, Tsai told Synopsys via communications directed to Mountain View that Ubiquiti's preference would be to pay Synopsys from an "offshore account" in Hong Kong.  As evidenced by the conduct below, this representation was false when made.

39.     Also on October 14, 2013, acting on behalf of the Piracy Enterprise, Tsai emailed Synopsys in Mountain View and requested an evaluation license for Synopsys' VCS application. Tsai expressly represented that he would be "the one doing the eval" on his own personal laptop. Tsai further represented that he knew how to use VCS.  Tsai's statements were false when made: in fact, Tsai intended all along for the evaluation to be done by other persons in Taiwan on computers that did not belong to Tsai.

40.     On October 15, 2013, Tsai traveled to Taipei where, acting on behalf of the Piracy Enterprise, he continued to represent that Ubiquiti was considering licensing Synopsys' EDA software while omitting material facts known to Tsai that were necessary to render his representations regarding Ubiquiti's intent non-misleading throughout.  In reliance on Tsai's representations and omissions, Synopsys entered into a Master Non-Disclosure Agreement ("MNDA") with Ubiquiti, the purpose of which was to facilitate the parties' discussion of a potential business relationship.  Ubiquiti and Synopsys executed the MNDA on October 15, 2013 and November 25, 2013, respectively.

41.     From October 14, 2013 to November 25, 2013 Tsai, acting on behalf of the Piracy Enterprise, continued to represent that Ubiquiti was interested in licensing Synopsys' EDA tools. Tsai ultimately negotiated an agreement under which Ubiquiti would, according to Tsai, evaluate Synopsys' VCS application at a specific Ubiquiti location in San Jose, California for a period not to exceed ninety days.  During these negotiations, Tsai omitted that the Piracy Enterprise would in fact use pirated copies of Synopsys' VCS application at unauthorized locations on unauthorized computers.

42.     Tsai's representations to Synopsys in September, October, and November

regarding Ubiquiti's desire to explore licensing Synopsys' products and willingness to conform to Synopsys' licensing terms were false when made. Shortly after fraudulently inducing Synopsys to grant Ubiquiti an evaluation license for Synopsys' VCS application—before the term of the evaluation license had even expired—persons acting on behalf of the Piracy Enterprise began using counterfeit license keys to access unauthorized copies of VCS from unauthorized locations. On information and belief, as soon as Tsai obtained access to Synopsys' file download and customer support websites, the Piracy Enterprise began making and distributing unauthorized copies of Synopsys' software and documentation, accessing Synopsys' software using both illicit license key files and counterfeit facsimiles of Synopsys' license key files, and providing to one another software and other technology components designed to circumvent Synopsys' technical measures that control access to Synopsys' copyright-protected works.

43.    In reliance on Tsai's representations and omissions, on November 26, 2013, Synopsys executed a 90-day evaluation license to permit Ubiquiti to evaluate Synopsys' VCS application. Synopsys sent to Tsai a delivery email containing links to download VCS and a license key for VCS. The license provided that it was a nontransferable limited evaluation license to use Synopsys' VCS application and the accompanying license key on two computers concurrently in San Jose. The evaluation license strictly proscribed limited evaluation rights and expressly prohibited any use of the software for designing Ubiquiti's products. The evaluation license also prohibited Ubiquiti from making unauthorized copies of Synopsys' software, decompiling or reverse engineering Synopsys' software, tampering with or attempting to circumvent Synopsys' license key system, or distributing Synopsys' software to third parties, among other restrictions. The evaluation license also contained a confidentiality clause prohibiting Ubiquiti from unauthorized dissemination or use of Synopsys' confidential information, defined to include *inter alia* Synopsys' software. The evaluation license contained a clause expressly stating that the evaluation license superseded all prior agreements between the parties regarding the subject matter of the evaluation license. The evaluation agreement provided that licensees consented to personal jurisdiction in federal and state courts of Santa Clara County, California.

44.     In order to facilitate the evaluation license, and in reliance on Tsai's representations and omissions, Synopsys provided Tsai with temporary login credentials permitting Ubiquiti to access Synopsys' customer support and file download websites for purposes of facilitating Ubiquiti's evaluation of VCS.  The Synopsys customer support and file download websites accessed by the Piracy Enterprise are all located on domains owned, registered, hosted, and maintained in the United States and the Northern District of California, with the exception of one host server located in Ireland that the Piracy Enterprise accessed via a remote host located at Synopsys' Mountain View headquarters.

45.     From November 27, 2013 to December 28, 2013, Tsai, acting on behalf of the Piracy Enterprise, accessed Synopsys' file download website and downloaded multiple files, including Synopsys' VCS application, Synopsys' SCL license management application, installer programs for each application, and related documentation.  The software downloaded by Tsai was hosted by Synopsys on, and downloaded from, servers located in the United States, including servers located within the State of California.

46.     On December 2, 2013, Tsai, acting on behalf of the Piracy Enterprise, emailed Synopsys in Mountain View and stated that he was having trouble running Synopsys' license management software and temporary key file, purportedly on a virtual machine running on a computer located at Ubiquiti's San Jose headquarters.  Synopsys customer support personnel responded to Tsai's inquiry and provided information on how to configure the license key file.  Also on December 2, 2013, Tsai, acting on behalf of the Piracy Enterprise, emailed a Synopsys employee in Mountain View and requested for Synopsys to temporarily switch the Host ID listed in Ubiquiti's temporary key file to a new computer because, according to Tsai, the prior Host ID information he had provided was for an old personal laptop.

47.     On information and belief, Tsai's December 2, 2013 representations were false when made.  In fact, the purpose of Tsai's communication was to gain the information and means required by the Piracy Enterprise to carry out its purpose of running Synopsys' software on unauthorized computers in unauthorized locations.  Tsai omitted these facts from his representations to Synopsys.

48.     On information and belief, in late 2013 and early 2014, Tsai and others acting on behalf of the Piracy Enterprise transferred via Ubiquiti and UNIL's shared IT infrastructure some or all of the files downloaded from Synopsys to one or more computers controlled by UNIL.

**UNIL and Tsai Gain Further Access to Synopsys' Intellectual Property**

49.     During the first and second weeks of March 2014, Tsai, while physically located in the Northern District of California at Ubiquiti's headquarters and acting on behalf of the Piracy Enterprise, communicated with Synopsys via email about UNIL's purported desire to evaluate certain Synopsys software.  Also included in these email discussions were other UNIL employees who work in the field of semiconductor design.  Tsai emailed a quote he obtained under false pretenses from Synopsys in the fall of 2013 as the starting point for negotiations about obtaining a set of temporary evaluation license keys for UNIL.  Tsai indicated that UNIL was close to obtaining software from a Synopsys competitor and wanted to evaluate Synopsys' competing tools before making a final decision.  On information and belief, Tsai and other UNIL employees knew at the time of these email communications, but omitted to tell Synopsys, that UNIL had no intention of licensing Synopsys' software, but rather intended to make and distribute unauthorized copies of Synopsys' software and documentation and to use counterfeit license keys to circumvent Synopsys' license key system.

50.     During the first and second weeks of April 2014, Tsai, acting on behalf of the Piracy Enterprise, traveled to Taiwan and helped coordinate a meeting between UNIL and Synopsys to discuss UNIL's purported desire to evaluate and license Synopsys' software.  At least Tsai and other UNIL employees attended a meeting with Synopsys on or about April 8, 2014, during which Tsai and others, acting on behalf of the Piracy Enterprise, represented to Synopsys through affirmative misrepresentations and omissions that access to temporary evaluation license keys for Synopsys' software could sway UNIL to license Synopsys' EDA tools.  Tsai represented that time was of the essence due to the state of negotiations between UNIL and Synopsys' competitor and UNIL's time frame for completing design of the product for which the subject EDA tools were needed.

51.     On information and belief, Tsai's representations to Synopsys in March and April

1   2014 regarding UNIL's purported consideration of licensing Synopsys' EDA products were false

2   when made.  At the time of such representations, UNIL and Ubiquiti employees were already

3   making, distributing, and using unauthorized copies of Synopsys' software and documentation,

4   circumvention technology, counterfeit license keys, and counterfeit access devices.  Tsai omitted

5   these material facts during his conversations with Synopsys.

6          52.    In reliance on Tsai's representations, on April 14, 15, and May 9, 2014, Synopsys

7   provided to UNIL temporary license keys for Synopsys' Formality, DC Ultra, HDL Compiler

8   Verilog, and DesignWare Library applications.  Also on May 9, 2014, Synopsys provided UNIL

9   with a temporary key for its Power Compiler application.  All of the temporary keys Synopsys

10  provided to UNIL allowed for only one or two concurrently running executions, and all keys were

11  designated to be hosted by license servers running only on specific computers with Host IDs

12  enumerated in the temporary license key files that accompanied Synopsys' software.  In addition,

13  the temporary keys expired within two to four weeks after issuance.

14         53.    On April 16, 2014, UNIL, acting on behalf of the Piracy Enterprise, downloaded

15  Synopsys' license control software, its Formality and Design Compiler applications, and related

16  documentation and installer files from Synopsys' electronic file transfer website.  UNIL

17  downloaded additional files on May 19, 2014.  The files UNIL downloaded on April 16, 2014

18  were hosted on, and downloaded from, servers located in the United States, including servers

19  located within the Northern District of California.  With respect to the files downloaded on May

20  19, the files were downloaded via a remote host located at Synopsys' Mountain View

21  headquarters.

22         54.    On April 16 and April 17, 2014, despite being in possession of temporary license

23  keys for Design Compiler, UNIL employees acting on behalf of the Piracy Enterprise began using

24  counterfeit license keys to access Design Compiler software downloaded by UNIL.

25         55.    On May 19, 2014, a UNIL employee acting on behalf of the Piracy Enterprise

26  contacted Synopsys' customer support via email for assistance in using tools that, unbeknownst to

27  Synopsys, were secretly being copied and used without authorization by the Piracy Enterprise.

28  The person who made this request on behalf of UNIL represented to Synopsys that time was of

the essence, and that finding a quick solution to the subject issue could cause UNIL to license Synopsys' tool instead of licensing a competitor's tool. On information and belief, these statements were false when made, and the UNIL employee omitted material facts from their representation, including the fact of UNIL's true intent and its ongoing piracy conduct. In reliance on UNIL's representations and omissions, Synopsys customer support personnel in Mountain View communicated with UNIL and Ubiquiti regarding the issue and assisted in resolving the service request, which involved identifying and sharing with persons acting on behalf of the Piracy Enterprise a work-around solution to their problem and required an appreciable amount of effort and Synopsys resources. But for UNIL and Tsai's false representations and omissions regarding UNIL's purported desire to license Synopsys products, Synopsys would not have provided UNIL or Ubiquiti with the requested assistance or work-around information.

56.     Subsequent to May 19, 2014, Tsai, UNIL, Ubiquiti, and other persons acting on behalf of the Piracy Enterprise repeatedly accessed Synopsys' customer support and file download websites. On information and belief, as soon as Synopsys issued temporary evaluation license keys to UNIL in April 2014, UNIL, Tsai, Ubiquiti, and others acting on behalf of the Piracy Enterprise began making, distributing, and using copies of Synopsys' software and documentation without authorization, including software and documentation downloaded from Synopsys servers located in the United States and California, and using counterfeit license keys and illicit license keys to access Synopsys' applications.

**Conduct of the Piracy Enterprise**

57.     The volume and nature of counterfeit keys used by the Piracy Enterprise, including components of the counterfeit keys identifying specific computers controlled by UNIL and Ubiquiti, respectively, indicate that one or more persons acting on behalf of the Piracy Enterprise used counterfeit key generation software to create counterfeit Synopsys license keys for use by Ubiquiti and UNIL.

58.     The nature of the counterfeit keys used by the Piracy Enterprise and use patterns for the infringed software applications indicate that members of the Piracy Enterprise distributed

1   amongst themselves counterfeit license keys and/or counterfeit key generation software in order

2   to permit employees of Ubiquiti and UNIL to access Synopsys' software without authorization.

3   On information and belief, counterfeit keys and counterfeit key generation software was

4   exchanged between members of the Piracy Enterprise using the Internet and Ubiquiti and UNIL's

5   shared IT infrastructure.

6       59.    Data associated with the Piracy Enterprise's use of Synopsys' software indicates

7   that the Piracy Enterprise set up networks of computers that permitted persons to remotely access

8   counterfeit keys, counterfeit key generation software, and unauthorized and counterfeit copies of

9   Synopsys' software from multiple workstations connected to the Internet and to shared IT

10  infrastructure via IP addresses, domains, and subdomains owned and/or controlled by Ubiquiti

11  and UNIL.

12      60.    Sometimes, the Piracy Enterprise configured computers to operate in "license

13  server" mode, in which case a host server containing counterfeit license key files and running

14  unauthorized copies of Synopsys' license management software could distribute counterfeit keys

15  over the Internet to multiple remote computers.

16      61.    Other times, the Piracy Enterprise employed a "serverless" configuration in which

17  case the Piracy Enterprise would store counterfeit license key files at specific file paths located on

18  Ubiquiti and UNIL networks for retrieval by any computer with access to the file path.

19      62.    Other times, the Piracy Enterprise configured computers so that Synopsys'

20  applications and counterfeit license keys were accessible from a virtual machine that, on

21  information and belief, could be accessed remotely and/or transported and used in and outside of

22  California.  Evidence indicates that the Piracy Enterprise used certain virtual machines in both

23  California and in Taiwan.

24      63.    Using at least the methods described above, the Piracy Enterprise distributed and

25  used counterfeit license keys, illicit license keys, counterfeit access devices, and circumvention

26  technology to access more than a dozen copyright protected works including Synopsys' Debussy,

27  Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify

28  Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi applications.

64.    The Piracy Enterprise's counterfeit license key use is associated with at least fifteen distinct usernames, some of which correspond to the names of Ubiquiti and UNIL employees such as Tsai and others.

65.    Synopsys first discovered that Ubiquiti was using counterfeit license keys to access Synopsys' software in March 2016, at which point Synopsys conducted an investigation into Ubiquiti's activities that culminated in a May 2016 notice to Ubiquiti demanding that it cease and desist unauthorized use of Synopsys' software.  The Piracy Enterprise accessed Synopsys' software using counterfeit keys subsequent to Synopsys' May 2016 cease and desist demand.

66.    On information and belief, Tsai, Ubiquiti, and UNIL each encouraged and assisted the other to commit the violations of law discussed herein by inducing each other to gain unauthorized access to Synopsys' software, to use and traffic counterfeit license keys, illicit license keys, circumvention technology, and counterfeit access devices, and by providing their services to assist each other in doing so.

## FIRST CLAIM FOR RELIEF

### (Against the Members of the Piracy Enterprise for Violation of the

### Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1))

67.    Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1 through 66 above and incorporates them by reference.

68.    Section 1201(a)(1) provides, in pertinent part, that no person shall circumvent a technological measure that effectively controls access to a work protected under title 17.

69.    Synopsys' EDA software, including its Debussy, Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi applications, is subject to protection under the copyright laws of the United States.

70.    Access to Synopsys' EDA software, including its Debussy, Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi applications, is controlled by technological measures: namely, the Synopsys License Key system.

71.     Rather than paying a license to Synopsys for access and use of the EDA software, the Piracy Enterprise used counterfeit license keys that Tsai, Ubiquiti, and UNIL knew to be counterfeit and in violation of Synopsys' valuable rights.

72.     By using counterfeit license keys, Tsai, Ubiquiti, and UNIL have circumvented the Synopsys License Key access-control system, and have unlawfully gained access thereby to at least its Debussy, Design Compiler, Formality, HSPICE, IC Compiler, Laker, Nlint, nWave, PrimeTime, Synplify Pro AV, Synplify Premier AV, TetraMAX, VCS, and Verdi copyright protected software applications.

73.     Tsai, Ubiquiti, UNIL, and other members of the Piracy Enterprise agreed to act in concert in order to gain access to Synopsys' software and documentation and to circumvent technological measures that effectively control access to Synopsys' works.  Subsequent to this agreement, one or more members of the Piracy Enterprise committed wrongful acts in furtherance of the agreement.

74.     The conduct described above has caused harm to Synopsys in an amount to be computed at trial, but that amount is in the millions of dollars and constitutes a violation of 17 U.S.C. § 1201.  Synopsys is entitled to remedies including statutory damages, actual damages, and any profits attributable to Defendants' violations.

75.     The conduct described above was willful and with knowledge of wrongdoing; an award of maximum statutory damages is therefore necessary to dissuade Defendants and others from the use of counterfeit license keys.

76.     Accordingly, pursuant to 17 U.S.C. § 1203, Synopsys is entitled to and hereby demands statutory damages in the maximum amount of $2,500 for each of the violations of the statute.

77.     Synopsys is further entitled to an award of attorneys' fees and costs as provided under 17 U.S.C. § 1203.

**SECOND CLAIM FOR RELIEF**

**(Against the Members of the Piracy Enterprise for Violations of the**

**Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2))**

78.    Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1 through 77 above and incorporates them by reference.

79.    Section 1201(a)(2) provides, in pertinent part, that no person shall manufacture, import, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under title 17.

80.    Tsai, Ubiquiti, and UNIL created, imported, provided, or trafficked in products, services, or components or parts thereof primarily designed and produced for the purpose of circumventing technological measures that effectively control access to Synopsys' works.

81.    Tsai, Ubiquiti, UNIL, and others members of the Piracy Enterprise agreed to act in concert in order to create, import, provide, or traffic in products, services, or components or parts thereof primarily designed and produced for the purpose of circumventing technological measures that effectively control access to Synopsys' works.  Subsequent to this agreement, one or more members of the Piracy Enterprise committed wrongful acts in furtherance of the agreement.

82.    The conduct described above has caused harm to Synopsys in an amount to be computed at trial, but that amount is in the millions of dollars and constitutes a violation of 17 U.S.C. § 1201.  Synopsys is entitled to remedies including statutory damages, actual damages, and any profits attributable to Defendants' violations.

83.    The conduct described above was willful and with knowledge of wrongdoing; an award of statutory damages is necessary to dissuade Defendants and others from the use of counterfeit license keys.

84.    Accordingly, pursuant to 17 U.S.C. § 1203, Synopsys is entitled to and hereby demands statutory damages in the maximum amount of $2,500 for each of the violations of the statute.

85.    Synopsys is further entitled to an award of attorneys' fees and costs as provided

SYNOPSYS, INC.'S SECOND AMENDED COMPLAINT
CASE NO. 17-CV-00561-WHO

1  under 17 U.S.C. § 1203.

2  **THIRD CLAIM FOR RELIEF**

3  **(Against the Members of the Piracy Enterprise for Violations of the**

4  **Digital Millennium Copyright Act, 17 U.S.C. § 1201(b))**

5  86.    Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1

6  through 85 above and incorporates them by reference.

7  87.    Section 1201(b) provides, in pertinent part, that no person shall manufacture,

8  import, provide, or otherwise traffic in any technology, product, service, device, component, or

9  part thereof that is primarily designed or produced for the purpose of circumventing a

10 technological measure that effectively protects a right of an owner of a work protected under  title

11 17.

12 88.    Tsai, Ubiquiti, and UNIL created, imported, provided, or trafficked in products,

13 services, or components or parts thereof primarily designed and produced for the purpose of

14 circumventing technological measures that effectively protect Synopsys' rights in its works.

15 89.    Tsai, Ubiquiti, UNIL, and other members of the Piracy Enterprise agreed to act in

16 concert in order to create, import, provide, or traffic in products, services, or components and

17 parts thereof primarily designed and produced for the purpose of circumventing technological

18 measures that effectively protect Synopsys' rights.  Subsequent to this agreement, one or more

19 members of the Piracy Enterprise committed wrongful acts in furtherance of the agreement.

20 90.    The conduct described above has caused harm to Synopsys in an amount to be

21 computed at trial, but that amount is in the millions of dollars and constitutes a violation of 17

22 U.S.C. § 1201.  Synopsys is entitled to remedies including statutory damages, actual damages,

23 and any profits attributable to Defendants' violations. The conduct described above was willful

24 and with knowledge of wrongdoing; an award of statutory damages is necessary to dissuade

25 Defendants and others from the use of counterfeit license keys.

26 91.    Accordingly, pursuant to 17 U.S.C. § 1203, Synopsys is entitled to and hereby

27 demands statutory damages in the maximum amount of $2,500 for each of the violations of the

28 statute.

92.     Synopsys is further entitled to an award of attorneys' fees and costs as provided under 17 U.S.C. § 1203.

### FOURTH CLAIM FOR RELIEF

### (Against the Members of the Piracy Enterprise for Violations of 18 U.S.C. § 2318)

93.     Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1 through 92 above and incorporates them by reference.

94.     Section 18 U.S.C § 2318 provides in pertinent part that it is a federal crime for persons to knowingly traffic in counterfeit or illicit labels accompanying a copy of a computer program.  Any copyright owner who is injured, or is threatened with injury, by a violation of subsection section 2318 may bring a civil action in an appropriate United States district court.

95.     Synopsys delivers authorized copies of its copyright protected software to licensees over the Internet via a secured file transfer protocol in binary form.  In order to access Synopsys binaries, licensees must validate their copies of Synopsys' software with license keys that accompany the customer's specific authorized copies of Synopsys' software.  Synopsys license keys are designed to ensure that users do not designate a higher number of licensed users or licensed copies than authorized and to prevent infringement.

**Synopsys' License Keys Are Software Identifying Labels**

96.     Synopsys' license key files are identifying labels accompanying and designed to accompany copies of Synopsys' computer programs.  The counterfeit keys used by Defendants mimicked the human readable text elements and format of Synopsys' genuine keys, including texts suggesting that Synopsys is the issuer of the keys.  Synopsys license key files are comprised of human readable alphanumeric text elements that identify the name, version, and features of the Synopsys software licensed by the specific license key recipient.  Synopsys license keys also identify Synopsys as the owner of the software and issuer of the license key.  Synopsys license keys also identify the name and address of the licensee of the software that the license key accompanies.  Synopsys license keys also identify a customer Site ID and host server designated by the licensee to run Synopsys' software.  Synopsys license keys also direct licensees to follow the license file verification procedure set forth at http://www.synopsys.com/licensing when

installing or updating the licensee's license file and advise licensees that their license key must be verified with Synopsys' verification utility.  Synopsys license verification utility confirms that license keys are valid to authorize execution of the software licensed to the licensee.  Synopsys license key files further identify the date and time on which the license key file was created and the start and end date of the included license keys.  The identifying information contained in Synopsys license keys (in addition to messages contained in license key transmittal emails and/or the pages of Synopsys download websites) indicates to the recipient that the license key is being delivered in connection with a specific software product configured to run features licensed by a specific customer.

97.     When a user launches a Synopsys EDA application, Synopsys SCL software begins to execute and locates the directory where the licensee has saved her license key file or determines how to access the Synopsys license server.  After retrieving the license key from either the license file or from the server, the SCL software displays to the user the server host, site ID, and license term dates set forth in the license key.  After SCL identifies the correct license key, the EDA application begins to execute.  The EDA application user interface displays to the user the name of the EDA application (i.e., "Design Compiler"), software version (i.e., Version 1.2.3), and operating system that the application is written for (i.e., 64-bit Linux).  The application user interface further displays to the user trademark information for the application that is being run.  The application user interface then displays a copyright notice that provides, for example, "Copyright (c) 1988-2017 Synopsys, Inc. This software and the associated documentation may only be used in accordance with the terms and conditions of a written license agreement with Synopsys, Inc.  All other use, reproduction, or distribution of this software is strictly prohibited."  Where applicable, the application user interface then displays to the user the various distinct features of the application that have been specifically licensed by the particular licensee.  Finally, after validating each specifically licensed feature against the license key, the application user interface displays to the user a message stating that the license key checkout has succeeded.  The user may then use the application to perform EDA functions.

98.     Where a user lacks a valid license key, Synopsys SCL software detects the lack of

SYNOPSYS, INC.'S SECOND AMENDED COMPLAINT
CASE NO. 17-CV-00561-WHO

a valid key and will not complete execution.  Similarly, the EDA application itself cannot execute because no license key is served to it.  The EDA application user interface displays a message to the user indicating that the wrong license file is being used and instructing the user to contact Synopsys.

99.     As noted, one of the identifying aspects of Synopsys license keys is identification of the specific features that a licensee has licensed.  Synopsys' EDA applications contain a wide array of rich features, some of which may not be necessary for a customer's specific design project.  For example, a customer designing a simple electronic circuit may not require all of the latest, most advanced features of a given Synopsys EDA application.  Thus, rather than paying for a license to unneeded features, customers may license a subset of the total feature set for a given Synopsys EDA application.  Synopsys license keys identify the subset of licensed features, and an engineer who wishes to identify which features are available to her can look to the license key file for that information.  For each copy of an authorized Synopsys EDA application binary, the accompanying Synopsys license keys reflects the unique feature set licensed by a particular licensee, which dictates the scope of how the particular copy of the licensed binary will execute. Unlicensed features not validated by the customer's license key will not run.  In this way, Synopsys license keys identify and define the licensee's unique configuration of the Synopsys software they have licensed.

**Synopsys' License Keys Verify that a Software Copy is Not Counterfeit or Infringing**

100.     Synopsys license key files, including temporary evaluation license key files, are genuine licensing and labeling components used by Synopsys to verify that a copy of a computer program is not counterfeit or infringing of any copyright, and to prevent parties from providing Synopsys' software to a higher number of licensed users than authorized.

101.     Because Synopsys only provides genuine, authorized copies of its software to licensees, and because license keys always accompany Synopsys' delivery of its software, Synopsys license keys are used by Synopsys to verify that a copy of a computer program is not counterfeit or infringing.  When a user runs an unauthorized copy of Synopsys' software using a counterfeit license key, Synopsys can determine whether it or an unauthorized third party was the

source of the copy of the software executed with the counterfeit license key. For example, in this case, Ubiquiti and UNIL used counterfeit license keys to run applications that they did not download from Synopsys' file transfer websites. Synopsys' license key system helped Synopsys identify the copies of these applications used by Ubiquiti and UNIL as unauthorized counterfeit copies provided by unknown third parties.

102.    Synopsys license keys also prevent licensees from providing Synopsys' software concurrently to a higher number of licensed users than authorized under the terms of the applicable license. Once a license key has been checked out to a user, that checkout is counted against the total number of concurrent instances of the application that the licensee is authorized to run under the terms of their license. For example, if a user's license permits three concurrent uses of Design Compiler, only two additional users would be permitted to run Design Compiler after a first user executes Design Compiler. If a fourth user attempts to execute Design Compiler while three other users already have license keys checked out, Synopsys' license key system detects the fact that the maximum number of concurrent users set forth in the license key file has already been checked out, and the fourth user's attempt to run the application will fail.

103.    On information and belief, Ubiquiti knowingly trafficked in illicit labels by providing to UNIL unauthorized copies of Synopsys' software and temporary license keys issued for Ubiquiti's Mountain View location to UNIL. The copies of Synopsys EDA applications that UNIL executed using the temporary license keys issued to Ubiquiti were unauthorized copies.

104.    On information and belief, UNIL knowingly trafficked in illicit labels by providing unauthorized copies of Synopsys' software and temporary license keys issued for UNIL's Taiwan location to Ubiquiti. The copies of Synopsys EDA applications that Ubiquiti executed using these temporary license keys issued to UNIL were unauthorized copies.

105.    Tsai, Ubiquiti, and UNIL knowingly trafficked in counterfeit license key files that appeared to be genuine, but were not. The counterfeit license keys trafficked by Defendants mimicked the human readable text, structure, and format of Synopsys genuine license keys and would appear to an innocent reader of the key file to be a genuine Synopsys license key.

106.    Tsai, Ubiquiti, and UNIL intentionally used counterfeit and illicit labels in

1    connection with trafficking in goods or services.

2        107.    Tsai, Ubiquiti, and UNIL knowingly and intentionally trafficked in counterfeit

3    license keys likely to cause confusion, to cause mistake, or to deceive persons not privy to the

4    Piracy Enterprise.  For example, on information and belief, based on representations made by

5    counsel and Ubiquiti to this Court, at least one employee of Ubiquiti and/or UNIL was unaware

6    that the software copies and license keys he used to perform EDA services for Ubiquiti and/or

7    UNIL in California were counterfeit.  According to a May 1, 2017 declaration submitted to this

8    Court (Dkt. 50-1), California-based Ubiquiti employee Sheng-Feng Wang was not aware that he

9    had received any unauthorized license keys or copies of Synopsys license keys in California.

10   Sheng-Feng Wang's declaration indicates the counterfeit license keys and software copies used

11   by the Piracy Enterprise were capable of being, and on information and belief, were in fact,

12   passed off to unsuspecting end users as genuine license keys.

13       108.    In carrying out their violations of 18 U.S.C § 2318, Tsai, Ubiquiti, and UNIL used

14   and intended to use facilities of interstate and foreign commerce.

15       109.    Counterfeit and illicit labels trafficked and used by Tsai, Ubiquiti, and UNIL

16   accompanied, were enclosed with, or affixed to, or were designed to accompany, be affixed to, or

17   enclosed with, copyrighted copies of computer programs.

18       110.    Tsai, Ubiquiti, UNIL, and other members of the Piracy Enterprise agreed to act in

19   concert in order to traffic or use counterfeit license key files and illicit license key files.

20   Subsequent to this agreement, one or more members of the Piracy Enterprise committed wrongful

21   acts in furtherance of the agreement.

22       111.    The conduct described above has caused harm to Synopsys in an amount to be

23   computed at trial.  Synopsys is entitled to actual damages and any profits attributable to

24   Defendants' violations.

25       112.    The conduct described above was willful and with knowledge of wrongdoing; an

26   award of statutory damages is necessary to dissuade Defendants and others from the use of

27   counterfeit license keys.

28       113.    Accordingly, pursuant to 18 U.S.C. § 2318, Synopsys is entitled to and hereby

SYNOPSYS, INC.'S SECOND AMENDED COMPLAINT
CASE NO. 17-CV-00561-WHO

1   demands statutory damages in the maximum amount of $25,000 for each of the violations of the

2   statute.

3                          **FIFTH CLAIM FOR RELIEF**

4                  **(Against the Members of the Piracy Enterprise for Fraud)**

5          114.    Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1

6   through 113 above and incorporates them by reference.

7          115.    Tsai, acting on behalf of the Piracy Enterprise, knowingly made false

8   representations of material fact to Synopsys during the time period between October and

9   December 2013 in order to induce Synopsys to grant Tsai access to Synopsys' file download and

10  customer support websites, and to grant Ubiquiti an evaluation license for VCS.  Tsai also

11  omitted material facts necessary to render his representations non-misleading.  Specifically,

12  acting on behalf of the Piracy Enterprise:

13          i.      Tsai falsely represented that Ubiquiti was interested in evaluating, negotiating, and

14                  licensing Synopsys' software in good faith;

15          ii.     Tsai falsely represented that Ubiquiti intended to evaluate VCS in San Jose,

16                  California;

17          iii.    Tsai falsely represented that he needed assistance with setting up Synopsys'

18                  software and temporary license keys for legitimate use in San Jose;

19          iv.     Tsai omitted that Ubiquiti and UNIL would make and use unauthorized copies of

20                  Synopsys' software and documentation;

21          v.      Tsai omitted that he would provide his login credentials and/or Synopsys materials

22                  accessed through such credentials to unauthorized persons including UNIL

23                  employees in Taiwan;

24          vi.     Tsai omitted that Ubiquiti and UNIL would use circumvention technology,

25                  counterfeit license keys, and illicit license keys to access Synopsys' software

26                  without authorization.

27          116.    Tsai and others at UNIL, acting on behalf of the Piracy Enterprise, knowingly

28  made false representations of material fact to Synopsys during April and May 2014 in order to

induce Synopsys to grant UNIL temporary evaluation license keys and access to Synopsys' file download and customer support websites.  Tsai also omitted material facts necessary to render his representations non-misleading.  Specifically, acting on behalf of the Piracy Enterprise:

      i.    Tsai falsely represented that UNIL was interested in evaluating, negotiating, and licensing Synopsys' software in good faith;

      ii.    Tsai falsely represented that time was of the essence as UNIL was close to signing a deal with a Synopsys competitor;

      iii.    Tsai or another UNIL employee falsely represented to Synopsys customer support on May 19, 2014 that if Synopsys could develop a work around solution for a problem UNIL was having with Synopsys' tools, the work around could convince UNIL to license Synopsys' tools rather than a competitor's tools;

      iv.    Tsai omitted that UNIL would make and use unauthorized copies of Synopsys' software and documentation;

      v.    Tsai omitted that UNIL had already been using and would continue to use circumvention technology, counterfeit license keys, and illicit license keys to access Synopsys' software without authorization;

117.　As to each of the above representations and omissions, Tsai, Ubiquiti, UNIL, and other members of the Piracy Enterprise intended for Synopsys to rely on the false representations and omissions.

118.　Synopsys reasonably relied on Tsai's and the Piracy Enterprise's false representations and omissions.  Synopsys had no reason to know of the Piracy Enterprise's true intent.

119.　Synopsys relied on Tsai's and the Piracy Enterprise's false representations in granting Tsai access to Synopsys' file download and customer support websites, executing an evaluation license for Ubiquiti, and issuing temporary evaluation license keys to Ubiquiti and UNIL.

120.　The Piracy Enterprise agreed to act in concert in order to gain access to Synopsys websites, software, documentation, and services using material misrepresentations and omissions

communicated to Synopsys and to use circumvention technology and counterfeit and illicit

licenses to access Synopsys' works.  Subsequent to this agreement, one or more members of the

Piracy Enterprise committed wrongful acts in furtherance of the agreement.

121.    Synopsys' reliance on Tsai's and the Piracy Enterprise's representations caused

Synopsys harm in an amount to be proven at trial.

122.    The conduct described above was willful and with knowledge of wrongdoing; an

award of punitive damages is necessary to dissuade Defendants and others.

### SIXTH CLAIM FOR RELIEF

### (Against All Defendants for Civil RICO, 18 U.S.C. § 1964(c) & (d))

123.    Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1

through 122 above and incorporates them by reference.

124.    Section 1962(c) provides that is unlawful for any person employed by or

associated with any enterprise engaged in interstate or foreign commerce to conduct such

enterprise's affairs through a pattern of racketeering activity.

125.    Section 1962(d) provides that is unlawful for any person to conspire to violate

section 1962.

126.    Section 1964(c) provides that a person injured in their business or property by a

violation of section 1962 may sue to recover threefold damages and the cost of suit, including

reasonable attorney's fees.

**The Enterprises**

127.    Ubiquiti is an enterprise organized under the laws of Delaware that affects

interstate commerce.

128.    UNIL is an enterprise organized under the laws of Hong Kong that affects

interstate commerce.

129.    The Piracy Enterprise is an ongoing association in fact that affects interstate

commerce whose members functioned as a continuing unit for the common purpose of achieving

the objectives of the Piracy Enterprise, including enriching the members and associates of the

Piracy Enterprise through copyright infringement, trafficking and using counterfeit and illicit

labels, and trafficking and using counterfeit access devices. Members of the Piracy Enterprise include Tsai, Ubiquiti, and UNIL.

**Conduct of the Enterprises**

130. Tsai and others at Ubiquiti and UNIL are associated in fact and have conducted Ubiquiti and UNIL's affairs through a coordinated and continuous pattern of illegal activity for the common purpose of pirating Synopsys' software in order to lower Ubiquiti, and UNIL's semiconductor development costs and reap ill-gotten profits.

131. Ubiquiti and UNIL each provided funding, infrastructure, employee resources, and logistical support needed to conduct the Piracy Enterprise. Ubiquiti controlled and directed Tsai, while UNIL had control over its own employee members of the scheme, who were managed by and reported to Tsai. Tsai was responsible for negotiating with third party EDA software providers to gain for UNIL and Ubiquiti access to EDA tools necessary to carry out their scheme.

132. Tsai, Ubiquiti, and UNIL have conducted and participated in the affairs of the Piracy Enterprise through a pattern of racketeering activity that affects interstate and foreign commerce. The Piracy Enterprise and its members have committed numerous predicate acts as set forth below.

133. On information and belief, in or about October 2013, Tsai, Ubiquiti, and UNIL, conspired to operate Ubiquiti, UNIL, and the Piracy Enterprise through a pattern of racketeering activity in furtherance of the common purpose of the Piracy Enterprise. Tsai, Ubiquiti, and UNIL each took wrongful acts in furtherance of their unlawful agreement by financing and/or managing the Piracy Enterprise, attempting to gain and gaining access to Synopsys' software and documentation, making and distributing unauthorized copies of Synopsys' software and documentation, and using counterfeit and illicit license keys and counterfeit access devices to access Synopsys copyright protected software, among other wrongful acts in furtherance of the Piracy Enterprise. Tsai, Ubiquiti, and UNIL continuously and effectively carried out the purpose of the Piracy Enterprise from at least October 2013 to June 2016, causing harm to Synopsys in the form of at least but not limited to misappropriation of valuable intellectual property, lost licensing revenue, and costs associated with remediating their conduct.

**Pattern of Racketeering**

134.    At all times relevant, Tsai, Ubiquiti, UNIL, and other members of the Piracy Enterprise knew that they did not have a valid license, permission, authorization, or other authority from Synopsys to use its copyright-protected software and documentation.

135.    Tsai, Ubiquiti, UNIL and other members of the Piracy Enterprise violated 17 U.S.C. § 506 on multiple occasions by knowingly and willfully infringing for the purpose of financial gain copyright-protected works owned by Synopsys.

136.    Tsai, Ubiquiti, UNIL and other members of the Piracy Enterprise violated 18 U.S.C § 1343 by using telephones, the Internet, and email communication in furtherance of a fraudulent scheme to gain access to Synopsys' intellectual property by deceiving Synopsys about Ubiquiti and UNIL's purported intent to license Synopsys' software.  On at least October 14 and December 2, 2013, Tsai misrepresented and omitted material facts in email communications with Synopsys that were intended to induce Synopsys to provide Ubiquiti and UNIL with access to valuable intellectual property belonging to Synopsys.

137.    Tsai, Ubiquiti, UNIL and other members of the Piracy Enterprise violated 18 U.S.C § 2318 on multiple occasions by knowingly trafficking in and using counterfeit labels.

138.    On information and belief, Tsai, Ubiquiti, UNIL and other members of the Piracy Enterprise have violated 18 U.S.C § 2318 on multiple occasions by knowingly trafficking in and using illicit labels.

139.    Tsai, Ubiquiti, UNIL and other members of the Piracy Enterprise have violated 18 U.S.C. § 1029 on multiple occasions by knowingly and with the intent to defraud: (i) using and trafficking in counterfeit access devices to obtain access to valuable software, the value of the use of which aggregates more than $1,000 per one-year period; (ii) possessing fifteen or more devices which are counterfeit or unauthorized access devices; and (iii) producing, trafficking, and having custody, possession, and control of counterfeit access device making equipment.  By way of example and not limitation, the counterfeit license keys used by the Piracy Enterprise are counterfeit access devices.  In addition, members of the Piracy Enterprise configured computers and virtual machines into counterfeit access devices in order to obfuscate and alter Host IDs, IP

addresses, MAC addresses, and other identifying information so that the Piracy Enterprise could misrepresent the location and identity of devices containing Synopsys' software and gain unauthorized access to Synopsys' valuable intellectual property. The Piracy Enterprise trafficked in such access devices and used them to deprive Synopsys of millions of dollars in licensing fees.

140. In order to receive any software from Synopsys, a customer must first open up a customer account with Synopsys by registering for Synopsys' SolvNet website and entering into a license agreement. After establishing an account, customers may then submit purchase orders for the software they wish to license under their account for a given license term. This contractual relationship makes possible the provision of software and support services based on payment or expectation of payment at a later point in time to Synopsys. Absent compliance with the payment obligations of their account, customers are not authorized to use Synopsys' software. One type of Synopsys customer account is a fixed-term technology subscription license ("TSL") account in which a customer may license specific software for a specific term. Another type of Synopsys customer account is a flexible spending account ("FSA") with an assigned a dollar value against which the customer may draw down to apply to Variable Time-Based Technology Subscription Licenses ("VTSL"). For these types of customer accounts, for each request for a VTSL, the FSA balance is reduced by the applicable VTSL fee.

141. When a third party uses a counterfeit license key to run Synopsys software, they gain access to goods and services that they would otherwise not have access to without paying monies into a Synopsys customer account. Ubiquiti, for example, paid no monies into any FSA or other type of Synopsys customer account, yet accessed millions of dollars' worth of software and services by using counterfeit access devices such as those described above. In essence, Defendants' counterfeit keys gave them access to an unlimited FSA to use against an all-encompassing technology pool. Alternatively, framed another way, Defendants' counterfeit license keys permit access to fictitious customer accounts with inordinately long TSLs so that they could access software without paying for it for many years.

142. On information and belief, Defendants have obtained unauthorized copies of Synopsys software from unknown third parties in the past and continue to have the know-how

SYNOPSYS, INC.'S SECOND AMENDED COMPLAINT
CASE NO. 17-CV-00561-WHO

1   and capability to obtain more unauthorized Synopsys software from such sources.

2       143.    On information and belief, prior to the events described in this lawsuit, Defendants

3   used counterfeit license keys to access EDA tools from another software provider.

4       144.    On information and belief, Ubiquiti and UNIL continue to employ persons with

5   the know-how and ability to create counterfeit license keys.

6       145.    The conduct described above has caused harm to Synopsys' business and property

7   in an amount to be computed at trial.

8       146.    The conduct described above was willful and with knowledge of wrongdoing.

9       147.    Synopsys is entitled to and hereby demands treble damages, attorney's fees, and

10  costs of suit.

11                          **SEVENTH CLAIM FOR RELIEF**

12          **(Against Members of the Piracy Enterprise for Negligent Misrepresentation)**

13      148.    Synopsys hereby restates and re-alleges the allegations set forth in paragraphs 1

14  through 147 above and incorporates them by reference.

15      149.    The Piracy Enterprise agreed to act in concert in order to gain access to Synopsys

16  websites, software, documentation, and services using material misrepresentations and omissions

17  communicated to Synopsys and to use circumvention technology and counterfeit and illicit

18  licenses to access Synopsys' works.  Subsequent to this agreement, one or more members of the

19  Piracy Enterprise committed wrongful acts in furtherance of the agreement.

20      150.    Tsai, acting on behalf of the Piracy Enterprise, made material representations of

21  fact to Synopsys that were untrue and omitted facts necessary to render his statements non-

22  misleading.

23      151.    Tsai had no reasonable grounds for believing his false representations were true.

24      152.    Tsai intended for Synopsys to rely on his misrepresentations and omissions.

25      153.    Synopsys reasonably relied on Tsai's representations.

26      154.    Reliance on Tsai's false representations was a substantial factor in harm caused to

27  Synopsys by Defendants.

28

SYNOPSYS, INC.'S SECOND AMENDED COMPLAINT
CASE NO. 17-CV-00561-WHO

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Synopsys prays for judgment against Defendants as follows:

3      A.      Entry of judgment in favor of Synopsys against Defendants;

4      B.      An order awarding Synopsys statutory and/or actual damages and disgorgement of

5 profits for each instance on which Defendants circumvented measures controlling access to

6 Synopsys' software pursuant to 17 U.S.C. § 1203;

7      C.      An order awarding Synopsys statutory and/or actual damages and disgorgement of

8 profits for each instance on which Defendants provided circumvention technology pursuant to 17

9 U.S.C. § 1203;

10     D.      An order awarding Synopsys statutory and/or actual damages and disgorgement of

11 profits for each instance on which Defendants trafficked in counterfeit or illicit labels under 18

12 U.S.C. § 2318;

13     E.      An order awarding Synopsys treble damages and attorney's fees under 18 U.S.C.

14 § 1964;

15     F.      An order awarding Synopsys actual damages and punitive damages for harm

16 proximately caused by Defendants' fraud and/or negligent representation;

17     G.      Prejudgment and post-judgment interest;

18     H.      An order awarding Synopsys its costs and attorneys' fees pursuant to 17 U.S.C.

19 § 1203;

20     I.      An order for an accounting of all gains, profits, cost savings and advantages

21 realized by Defendants from their acts;

22     J.      An order preliminarily and permanently enjoining Defendants, their officers,

23 agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in

24 interest, and those persons in active concert or participation with them, from the statutory

25 violations alleged herein; and

26

27

28

1      K.      All such further and additional relief, in law or equity, to which Synopsys may be

2   entitled or which the Court deems just and proper.

3

4   Dated: September 5, 2017                    DENISE M. MINGRONE
                                                ROBERT L. URIARTE
5                                               Orrick, Herrington & Sutcliffe LLP

6

7                                               By: _____
                                                        DENISE M. MINGRONE
8                                                      Attorneys for Plaintiff
                                                         SYNOPSYS, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR A JURY TRIAL

2

Synopsys demands a jury trial for all issues so triable.

3

4

Dated: September 5, 2017

DENISE M. MINGRONE
ROBERT L. URIARTE
Orrick, Herrington & Sutcliffe LLP

5

6

By: _____

7

DENISE M. MINGRONE
Attorneys for Plaintiff
SYNOPSYS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28