DENISE M. MINGRONE (STATE BAR NO. 135224)
dmingrone@orrick.com
ROBERT L. URIARTE (STATE BAR NO. 258274)
ruriarte@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

CLAUDIA FROST (*Pro Hac Vice Pending*)
cfrost@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, TX 77002-3106
Telephone: +1 713 658 6460
Facsimile: +1 713 658 6401

Attorneys for Plaintiff/Counterdefendant
SYNOPSYS, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UBIQUITI NETWORKS, INC., UBIQUITI NETWORKS INTERNATIONAL LIMITED, CHING-HAN TSAI, and DOES 1-20, inclusive,<br><br>　　　　Defendants. | Case No. 3:17-cv-00561-WHO-LB<br><br>**SYNOPSYS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF RE EXTRATERRITORIALITY OF 17 U.S.C. § 1201(a)(1)**<br><br>Date: January 18, 2018<br>Time: 9:30 a.m.<br>Dept. Courtroom C, 15th Floor<br>Judge: Hon. Laurel Beeler |
| UBIQUITI NETWORKS, INC. AND UBIQUITI NETWORKS INTERNATIONAL LIMITED,<br><br>　　　　Counterclaimants,<br><br>　　v.<br><br>SYNOPSYS, INC.,<br><br>　　　　Counterdefendant. | |

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF
3:17-CV-00561-WHO

| | TABLE OF CONTENTS | |
|---|---|---|
| Clause | | Page |


1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ....................................................................... 1

III. LEGAL STANDARD ......................................................................................................... 3

IV. ARGUMENT....................................................................................................................... 3

   A. Computers in Taiwan Are Relevant to Domestic DMCA § 1201(a)(1) Claims ................. 4

      1. The "Focus" of § 1201(a)(1) is Circumvention of Access Controls, Which Ubiquiti Admits Doing From Within the U.S. ................................................................................................. 6

      2. Traditional Copyright Jurisprudence Regarding Cross-Border Infringement Does Not Support Defendants' Position ................................................................................................. 7

V. CONCLUSION ................................................................................................................. 10

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF
3:17-CV-00561-WHO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allarcom Pay TV, Ltd. v. General Instrument Corp.*,
   69 F.3d 381 (9th Cir. 1995) ...................................................................................................7,8

*Automattic Inc. v. Steiner*,
   82 F. Supp. 3d 1011 (N.D. Cal. 2015) ..................................................................................5,6,9

*Columbia Pictures Indus. v. Fung*,
   2009 U.S. Dist. LEXIS 122661 (C.D. Cal. 2009) ......................................................................9

*Columbia Pictures Indus. v. Gary Fung*,
   710 F.3d 1020 (9th Cir. 2013) .................................................................................................10

*Doe v. Geller*,
   533 F. Supp. 2d 996 (N.D. Cal. 2008) ...........................................................................5, 6, 8, 9

*Dytch v. Yoon*,
   2011 WL 839421 (N.D. Cal. 2011) ............................................................................................4

*Flava Works, Inc. v. Gunter*,
   2011 U.S. Dist. LEXIS 98451 (N.D. Ill. 2011) ..........................................................................9

*Goes Int'l, AB v. Dodur Ltd.*,
   2016 U.S. Dist. LEXIS 13748 (N.D. Cal. Feb. 4, 2016) .........................................................3, 8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013) ...................................................................................................................9

*Liberty Media Holdings, LLC v. Vinigay.com*,
   2011 U.S. Dist. LEXIS 153615 (D. Arizona 2011) ...................................................................9

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   2010 U.S. Dist. LEXIS 85266 (N.D. Cal. 2010) ........................................................................9

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   658 F.3d 936 (9th Cir. 2011) ...................................................................................................10

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ..........................................................................................6, 7, 8, 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..............................................................................................9, 10

*Perfect 10, Inc. v. Yandex N.V.*,
   962 F. Supp. 2d 1146 (N.D. Cal. 2013) ...................................................................................10

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF
3:17-CV-00561-WHO

*RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016) ................................................................................................4, 5, 6

*Shropshire v. Canning*,
  809 F. Supp. 2d 1139 (N.D. Cal. 2011) ..........................................................................8, 9

*Subafilms, Ltd. v. Mgm-Pathe Commc'ns. Co.*,
  24 F.3d 1088 (9th Cir. 1994) ............................................................................................5, 8

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  2017 U.S. Dist. LEXIS 130070 (N.D. Cal. Aug. 15, 2017) ............................................4, 10

*Teespring, Inc. v. Puetz*,
  2017 U.S. Dist. LEXIS 35733 (N.D. Cal. 2017) ..................................................................9

*Universal City Studios v. Corley*,
  273 F.3d 429 (2nd Cir. 2001) ............................................................................................10

**Statutes**

17 U.S.C. § 602 ..........................................................................................................................9

17 U.S.C. § 1201(a)(2) & 1201(b) ............................................................................................1

17 U.S.C. § 1201(a)(3)(A) ........................................................................................................7

17 U.S.C. § 1201(a)(3)(B) ........................................................................................................7

17 U.S.C. § 1202 ........................................................................................................................5

18 U.S.C. § 1029 ....................................................................................................................1, 4

18 U.S.C. § 2318 ....................................................................................................................1, 4

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................................................................................4

Fed. R. Civ. P. 26(b)(1) ............................................................................................................3

Fed. R. Evid. 104… ..................................................................................................................3

S. Rep. No. 105-190 (1998) ......................................................................................................5

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF

## I. INTRODUCTION

Synopsys seeks to forensically inspect the computers Defendants used to pirate Synopsys' software. Defendants' sole argument against the requested inspection is that computers in Taiwan are not relevant to Synopsys' DMCA § 1201(a)(1) claim because the Copyright Act generally does not apply abroad. Dkt. 105, Defendants' Supplemental Brief ("Supp. Br.") at 4:27-5:12. Defendants' extraterritoriality argument is wrong, but more importantly, it is a red herring for two reasons. First, Defendants concede that at least two Ubiquiti employees <u>gained access within the United States</u> to Synopsys' software hosted on Defendants' devices in Taiwan. Application of the DMCA to these U.S.-based acts is a <u>domestic</u> application of the statute. Because it is undisputed that Defendants' devices in Taiwan facilitated domestic DMCA violations, discovery of the subject devices is relevant even if the DMCA does not apply to "wholly extraterritorial" conduct. Likewise, computers belonging to Defendants' Taiwan-based employees that could have been transported to (or remotely accessed from) the U.S. are subject to discovery notwithstanding Defendants' extraterritoriality argument.

Second, Defendants ignore Synopsys' five additional claims—independent of its DMCA § 1201(a)(1) claim—that justify the requested forensic discovery. Synopsys asserts claims for trafficking in circumvention technology (17 U.S.C. § 1201(a)(2) & 1201(b)), trafficking in counterfeit software labels (18 U.S.C. § 2318), trafficking in counterfeit access devices (18 U.S.C. § 1029), and fraud, all of which involve Defendants' Taiwan computers. Defendants have not made any extraterritoriality arguments regarding these claims, nor can they.

## II. RELEVANT FACTUAL BACKGROUND

Synopsys' claims all arise from Defendants' trafficking and use of counterfeit license keys to pirate Synopsys' software. Synopsys seeks forensic discovery of three categories of devices: (1) devices that Defendants used to host Synopsys' software and license keys for remote access; (2) devices that Defendants' employees used to access Synopsys software; and (3) devices belonging to Defendant Tsai.[1] Defendants' statement that Synopsys seeks "hundreds and

---

[1] Tsai's devices were not at issue when the parties submitted their initial joint letter brief, because the parties had already agreed to inspection of the devices on a date in late December 2017. Dkt. 99 at 4, n.2. But Defendants reneged on their agreement at the eleventh hour, citing the Court's

hundreds of Defendants' computers" (Supp. Br. at 3, n.1) is false, as Synopsys only seeks inspection of the specific devices used to access Synopsys' software.[2]

Synopsys' Second Amended Complaint ("SAC") alleges that Defendants "set up networks of computers that permitted persons to remotely access counterfeit keys…and unauthorized and counterfeit copies of Synopsys' software from multiple workstations connected to the Internet and to shared IT infrastructure via IP addresses, domains, and subdomains owned and/or controlled by Ubiquiti and UNIL." SAC ¶ 59. Defendants' supplemental brief and supporting declarations establish that these allegations are true: "the entire team" of Ubiquiti and UNIL employees working on Ubiquiti's semiconductor design project had "access to two shared username accounts on UNIL's computer system," and the computers Defendants set up to host Synopsys' software and license keys were "remotely accessed by ASIC design team members using their individual laptops and computers." Supp. Br. at 4:2-3; 4:10-14. Critically, Defendants concede that Ubiquiti employees engaged in the conduct described in SAC ¶ 59 *from within the U.S.* Tsai Decl., Dkt. 105-5 ¶¶ 15-17; Wang Decl., Dkt. 105-18 ¶6.

The SAC further alleges that Defendants "configured computers so that Synopsys' applications and counterfeit license keys were accessible from a virtual machine" that could be "transported and used in and outside of California." SAC ¶ 62. This allegation also finds support in Defendants' recent submissions. Although Defendants previously told the Court under penalty of perjury that UNIL conducted no business activities whatsoever in California or the United States,[3] Defendants now admit that UNIL employees with access to Synopsys' software did indeed travel to California and other U.S. locations during the relevant time period. Conveniently, these employees "do not recall" whether they used Synopsys' software while they

---

December 22, 2017 order as authority for dictating to Synopsys an unreasonable protocol designed to hamstring Synopsys' experts and force waiver of work product protection.

[2] Synopsys will not address seriatim Defendants' immaterial misrepresentations about the meet and confer history underlying this discovery dispute, but notes that it has been attempting to negotiate a compromise on forensics for many months. Defendants have been dilatory at every step and have now reneged on the one compromise that the parties were able to agree on.

[3] Dkt. 25-1; *see also* Dkt. 25 at 1 ("it is [] not true that UNIL conducts or has conducted business within this state") June 14, 2017 Hr'g Tr. 6:7-15 (counsel vouching that "UNIL has nothing happening in the United States.").

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL EXTRATERRITORIALITY BRIEF

were in the U.S. on company business. Dkt. 105-15 ¶ 5 (discussing U.S. trip to visit "silicon IP vendor"); Dkt. 105-5 ¶ 16 (discussing visit to "silicon IP vendor's headquarters near San Jose"); Dkt. 105-10 ¶ 5; Dkt. 105-13 ¶ 5. Combined with Synopsys' call-home data showing circumvention carried out from computers with U.S. IP addresses, U.S. travel by Defendants' employees amply justifies discovery of the subject devices. Forensic discovery is especially important given Defendants' alteration of evidence after Synopsys confronted them about their rampant piracy. Dkt. 85-1 ¶17 (discussing Tsai's reconfiguration of IT systems).

### III. LEGAL STANDARD

The Court's analysis in *Goes Int'l, AB v. Dodur Ltd.*, 2016 U.S. Dist. LEXIS 13748, at *4-7 (N.D. Cal. Feb. 4, 2016) applies with full force here:

> It is important to recall exactly what is before the court. This is a discovery motion. It is not a dispositive motion on the merits of the plaintiff's claim. The plaintiff is not limited to admissible evidence; it need not prove its claim. The plaintiff must show only that, given its claim, the requested discovery is relevant and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). "Information . . . need not be admissible in evidence to be discoverable." *Id*. In deciding whether the plaintiff has made that showing, the court can consider even inadmissible evidence. *Cf.* Fed. R. Evid. 104…
>
> The court cannot reach a substantive decision — especially one of such potentially broad consequence— without fuller factual development using admissible evidence, and legal argument specifically directed to, and elaborated on the basis of, that fuller proof…
>
> Rule 26(b)(1) of the Federal Rules of Civil Procedure describes the basic scope of discovery — i.e., what information parties can rightly demand from one another:
>
>> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit….

(citing Fed. R. Civ. P. 26).

### IV. ARGUMENT

Defendants' brief adds nothing of substance to the extraterritoriality argument that this Court and Judge Orrick have already rejected. Dkt. 104 at 4. Defendants' brief fails to discuss the only two cases that contain reasoned analysis of the DMCA's extraterritoriality,

3

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF

mischaracterizes the state of the law regarding cross-border copyright infringement, and does not even attempt to apply the two-step extraterritoriality analysis required by *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100-01 (2016).

Moreover, although Synopsys noted in its section of the parties' joint letter that Defendants' section 1201(a)(1) extraterritoriality argument is a complete red herring because other claims justify forensic discovery of computers in Taiwan, Defendants' brief makes no attempt to address any of these claims.[4] The requested forensic discovery is indisputably relevant to Synopsys' (i) fraud claim, which arose in the U.S.; (ii) DMCA trafficking claims, which assert manufacture and importation of circumvention technology, *see Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 2017 U.S. Dist. LEXIS 130070, at *23-24 (N.D. Cal. Aug. 15, 2017) (discussing trafficking claims); (iii) counterfeit label trafficking claim under 18 U.S.C. § 2318, a statute that applies if "a facility of interstate *or foreign* commerce is used or intended to be used in the commission of the offense" (emphasis added); and (iv) counterfeit access device claim under 18 U.S.C. § 1029, a statute that expressly applies to persons "outside the jurisdiction of the United States." These claims all involve Defendants' activity, conducted between the U.S. and Taiwan, to carry out the alleged violations and all justify Synopsys' demand for inspection.

### A. Computers in Taiwan Are Relevant to Domestic DMCA § 1201(a)(1) Claims

The Supreme Court has established a two-step framework for analyzing whether a case involves impermissible extraterritorial application of U.S. law:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially...If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad…

*RJR Nabisco,* 136 S. Ct. at 2101. The DMCA's text, legislative history, and purpose are sufficient to rebut the presumption against extraterritoriality under step one of the *RJR Nabisco*

---

[4] Because parties cannot raise a new issue for the first time in their reply briefs, Defendants have waived any arguments regarding the relevance of the subject computers to Synopsys' other claims. *See, e.g., Dytch v. Yoon,* 2011 WL 839421, at *3 (N.D. Cal. 2011) (collecting cases). Likewise, Defendants have waived their conclusory undue burden objection, which is not supported by any factual showing despite Defendants' deluge of declarations.

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL EXTRATERRITORIALITY BRIEF

analysis.[5] But step-one analysis is immaterial to this discovery dispute, because the second step of the *RJR Nabisco* analysis is dispositive.

Courts have yet to apply *RJR Nabisco's* two step analysis to the DMCA. Synopsys is aware of only two cases that contain reasoned analysis of the DMCA's extraterritoriality, and they are both from the Northern District of California. *See Doe v. Geller*, 533 F. Supp. 2d 996, 1004 (N.D. Cal. 2008) ("*Geller*"); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1017 (N.D. Cal. 2015) ("*Steiner*").[6] Although these cases both predate *RJR Nabisco*, their reasoning is consistent with *RJR Nabisco's* step-two "focus" inquiry and supports Synopsys' position here.

First, in *Geller*, Judge Walker considered a takedown notice sent from a party abroad to YouTube's California offices concerning a video posted by a YouTube user in Pennsylvania. The plaintiff argued that copyright "authorization" case law such as *Subafilms* (note 7, *supra*) should control the analysis, but Judge Walker held "that body of case law is inapposite" because it is rooted vicarious liability and the derivative relationship between direct and indirect copyright infringement. *Geller*, 533 F. Supp. 2d at 1004. After noting that "copyright law is especially unsettled when it comes to cross-border communications" Judge Walker concluded that "copyright law does not provide a satisfactory answer whether United States courts have jurisdiction over cross-border communications in § 512(f) suits." *Id.* at 1003-04.

Second, in *Steiner*, Judge Spero analyzed a claim by a blogger in London who posted an article on a website hosted by a company in California. A foreign defendant sent a DMCA takedown notice to the California company falsely claiming that that the blogger's post infringed its copyrights. The California company and the blogger both sued the defendant under DMCA §

---

[5] This is so *inter alia* because the DMCA creates rights distinct from traditional copyright rights, prohibits importation of circumvention technology, and is based on a legislative history replete with references to a need for global protection of U.S. copyrighted works in the digital marketplace. *See* S. Rep. No. 105-190, at *1-2 (1998). Moreover, as this case makes clear, the DMCA's anti-circumvention provision would be a dead letter if pirates could escape liability by simply setting up remote hosts offshore.

[6] Defendants chose not to inform the Court of these two published Northern District cases, both of which reject Defendants' argument that the DMCA only applies to conduct that takes place "wholly" within the United States. Defendants rely instead on an unpublished district court case that contains exactly one sentence regarding extraterritoriality of 17 U.S.C. § 1202, which is not at issue.

512(f), which prohibits takedown notices that contain misrepresentations. Judge Spero concluded that notwithstanding the presumption against extraterritoriality, the plaintiffs' claims were cognizable because "key elements of the cause of action were performed in California." *Steiner*, 82 F. Supp. 3d at 1027-28.

Although *Geller* and *Steiner* concerned § 512, their analytical framework and harmonious rejection of Defendants' position are instructive on the question of whether Synopsys' claims entail a proper domestic application of § 1201(a)(1) to circumventions initiated and completed within the U.S., "even if other conduct occurred abroad." *RJR Nabisco,* 136 S. Ct. at 2101.

### 1. The "Focus" of § 1201(a)(1) is Circumvention of Access Controls, Which Ubiquiti Admits Doing From Within the U.S.

Section 1201(a)(1)(A) prohibits "circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act]." When Congress passed § 1201(a)(1), it created a new substantive right: "the right to prevent circumvention of access controls." *MDY Indus., LLC v. Blizzard Entm't, Inc.,* 629 F.3d 928, 945 (9th Cir. 2010). This "access control" right is distinct from the exclusive rights under §106 of the Copyright Act. "Historically speaking, preventing 'access' to a protected work in itself has not been a right of a copyright owner arising from the Copyright Act." *MDY Indus.*, 629 F.3d at 944. But with the passage of the DMCA, copyright owners obtained a new right focused on preventing unauthorized access to digital works. To frame this right in Defendants' own terms, the "final completed act" that § 1201(a)(1) prohibits is circumvention of an access control measure, which "culminates" when a user gains unauthorized access to a protected digital work. *See* 17 U.S.C. § 1201(a)(3)(B) (circumvention technology violates the DMCA if it permits a person to "gain access to the work"); 17 U.S.C. § 1201(a)(3)(A) (broadly defining the phrase "circumvent a technological measure" to include "avoiding" and "bypassing" access controls in order to access a work); *MDY Indus.*, 629 F.3d at 945 (right created by section 1201(a) is violated when circumvention technology "enables someone to watch or listen to a work without authorization").

Stated simply, Defendants violated the DMCA domestically when Ubiquiti employees who were physically present in the U.S. accessed Synopsys' copyright protected works by

avoiding, bypassing, and impairing Synopsys' license key system.  Forensic inspection of Defendants' host computers in Taiwan may provide further evidence regarding how Defendants accomplished these U.S. violations of law, assuming complete spoliation has not occurred.

Forensic inspection of Defendants' non-host computers is also relevant discovery concerning potential DMCA violations carried out on virtual machines that may have been transported to or accessed from the U.S.  Synopsys disputes Defendants' current story that they only installed Synopsys' software on a single host in Taiwan, because (i) Synopsys has produced call-home data showing Defendants' executing Synopsys' software from U.S. IP addresses, and (ii) Defendant Tsai previously stated under oath that he initially set up his personal laptop as the host machine for Synopsys' software. Dkt. 35-1 ¶4.  Synopsys believes that Defendants installed multiple copies of Synopsys' software on multiple computers, some of which were transported to and from the U.S.  The parties' factual dispute on this issue highlights the need for forensic discovery that will enable Synopsys to test the self-serving attorney-speak from UNIL employees who state that they "do not recall" using Synopsys' software during their travels to the U.S.

### 2. Traditional Copyright Jurisprudence Regarding Cross-Border Infringement Does Not Support Defendants' Position

The lynchpin of Defendants' extraterritoriality objection is the incorrect assertion that "[u]nder *Allarcom*, there is no liability where an act is initiated in the U.S. but completed in another country." Supp. Br. at 9:6-8 (citing *Allarcom Pay TV, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995).[7]  Defendants argue that "[b]ecause only acts of circumvention that occur *wholly* in the U.S. give rise to liability under the DMCA, Defendants need not turn over devices located in Taiwan." Dkt. 99 at 5 (emphasis in original).  But as several courts have

---

[7] Defendants also miscite *Subafilms* for this proposition (Supp. Br. at 6:11-12), but it says nothing of the sort. On the contrary, *Subafilms* cites with approval the following analysis from Professor Nimmer:

> If and to the extent a part of an "act" of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable under American copyright law.

*Subafilms, Ltd. v. Mgm-Pathe Commc'ns. Co.*, 24 F.3d 1088, 1094 n.9 (9th Cir. 1994).  The Ninth Circuit expressly distinguished *Subafilms* from cases, like this one, in which "liability is not based on contributory infringement." *Id.* at 1095.

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF

recognized, the issue is not that simple. *E.g., Goes*, 2016 U.S. Dist. LEXIS 13748, *7 (collecting cases). Assuming *arguendo* for purposes of this motion that traditional copyright jurisprudence provides the appropriate rubric for analysis of extraterritoriality of the DMCA,[8] Defendants' argument fails on its own terms.

Contrary to Defendants argument, "courts are split on whether the infringing act must occur wholly within the United States or if the infringing act only must not occur wholly outside of the United States." *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1145 (N.D. Cal. 2011) (collecting cases). Several courts have correctly declined to follow the dicta[9] from *Allarcom* that Defendants rely on, choosing instead to examine "the precise factual details of the case before it: where was the illegal copy made, where was it broadcast from, where broadcast to, and so on." *Goes*, 2016 U.S. Dist. LEXIS 13748, at *7 (collecting cases). Ascertaining the "precise factual details" regarding Defendants' use and trafficking of circumvention technology via a sophisticated network of domestic and foreign computers is the reason that Synopsys seeks forensic discovery. Neither *Allarcom* nor any other case supports Defendants' extreme position that Synopsys may not obtain discovery regarding foreign activities that facilitated infringement within the U.S. In fact, some copyright cases inherently require discovery of extraterritorial conduct in order to establish liability. *See Kirtsaeng v. John Wiley & Sons, Inc.,* 568 U.S. 519, 547 (2013) (discussing significance of extraterritorial copying under 17 U.S.C. § 602).

Defendants mischaracterize the "server test," which is of no help to them. First, the server test *is not* a test for "determining the site of the alleged violation," as Defendants argue. Supp. Br. at 6:23-26. Rather, the server test is a narrowly applicable test for determining whether a plaintiff has "made a prima facie case of violation of its display right" under 17 U.S.C. § 106 in

---

[8] *Contra Geller*, 533 F. Supp. 2d at 1004 (holding that traditional copyright law was of "little help" to assessing DMCA §512 extraterritoriality, since DMCA claims are not actually copyright claims); *see also MDY Indus.*, 629 F.3d at 952 (noting that Congress created a distinct anti-circumvention right under § 1201 that is distinct from the rights protected under 17 U.S.C. §106).

[9] *Allarcom* was a Federal Communications Act case that did not involve any copyright claims by the time the case reached the Ninth Circuit. The cited dicta regarding copyright is curious because the defendant who broadcast the accused satellite transmissions, Showtime Networks, also owned the copyrights to the transmissions and could not have infringed *its own* display rights.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF

cases involving digital image thumbnails and hyperlinks.[10] *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 2010 U.S. Dist. LEXIS 85266, *9 (N.D. Cal. 2010) (server test determines "whether digital image data stored on a computer may constitute a 'copy' under the Copyright Act.") (partially overruled on other grounds); *see also Flava Works, Inc. v. Gunter*, 2011 U.S. Dist. LEXIS 98451, at *10 (N.D. Ill. 2011) (*Perfect 10's* holding is "highly fact-specific"); *Teespring, Inc. v. Puetz*, 2017 U.S. Dist. LEXIS 35733, at *7 (N.D. Cal. 2017) (distinguishing *Perfect 10* from cases where material is hosted on defendant's own website); *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 U.S. Dist. LEXIS 153615, at *17 (D. Arizona 2011) (analyzing Internet extraterritoriality issue without reference to server test); *Geller*, 533 F. Supp. at 1004 (same); *Steiner*, 82 F. Supp. 3d at 1017 (same); *Shropshire*, 809 F. Supp. 2d at 1147 (same); *Columbia Pictures Indus. v. Fung*, 2009 U.S. Dist. LEXIS 122661, at *30 (C.D. Cal. 2009) (same) (partially overruled on other grounds).

Second, the server test concerns rights under 17 U.S.C. § 106 that are significantly different than the anti-circumvention right created by section 1201(a)(1). *See MDY Indus.*, 629 F.3d at 945 (discussing nature of new access control right); *compare Perfect 10,* 508 F.3d at 1159 (no copyright liability for hosting hyperlinks to infringing material because hyperlinks were not "copies" of the images) *with Universal City Studios v. Corley*, 273 F.3d 429, 457 (2nd Cir. 2001) (affirming DMCA injunction prohibiting hyperlinks to websites hosting circumvention technology, because hyperlinks "enable[d] anyone anywhere to gain unauthorized access to copyrighted movies on DVDs").

Third, Defendants' invocation of the server test is based on the logical fallacy that there can be only one "situs" of infringement carried out over the Internet. *Contra Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (noting that file sharing transaction involved two distinct copyright violations by two different parties). Defendants' premise is

---

[10] The Ninth Circuit defined the server test as follows: "a computer owner that stores an image as electronic information and serves that electronic information directly to the user (i.e., physically sending ones and zeroes over the [I]nternet to the user's browser, is displaying the electronic information in violation of a copyright holder's exclusive display right. Conversely, the owner of a computer that does not store and serve the electronic information to a user is not displaying that information, even if such owner in-line links to or frames the electronic information." *Id*. (citations omitted).

wrong as a matter of law, as this case aptly demonstrates. When Defendant Tsai remotely accessed Synopsys' software in the U.S. using counterfeit keys hosted on UNIL servers in Taiwan, multiple DMCA violations occurred in multiple locations: Tsai circumvented access controls within the U.S., while UNIL and Ubiquiti trafficked circumvention technology by providing from Taiwan, and importing to the U.S., circumvention technology that facilitated Tsai's access. *See Ubiquiti Networks, Inc.*, 2017 U.S. Dist. LEXIS 130070, at *23-24.

To the extent the server test has any relevance here, it actually supports Synopsys' position. Unlike the defendant's servers in *Perfect 10*, UNIL's servers *did* "store and serve the electronic information" at issue by "physically sending ones and zeroes over the Internet" to users *in the U.S.* 508 F.3d at 1159. And unlike *Yandex*, which did not involve any "actual downloads in the United States," here, it is undisputed that users in the U.S. connected to Defendants' servers in Taiwan in order to commit the DMCA violations alleged in the SAC. *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1153 (N.D. Cal. 2013). "There is no question that providing direct infringers with server space" can result in copyright infringement liability. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011).

*****

This case may well result in the first comprehensive judicial analysis of the extraterritorial reach of DMCA § 1201(a)(1), but that analysis should take place with the benefit of a full evidentiary record showing when, where, and how Defendants used and trafficked the circumvention technology at issue. This important issue of first impression should not be unnecessarily decided in the context of a discovery motion in which only one side has access to the relevant forensic evidence.

### V. CONCLUSION

For the reasons stated, Synopsys respectfully requests that the Court issue an order compelling Defendants to provide the requested forensic inspection and awarding Synopsys reasonable attorneys' fees incurred in bringing the instant motion to compel.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

Dated: January 8, 2018

DENISE M. MINGRONE
ROBERT L. URIARTE
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Denise M. Mingrone*
    DENISE M. MINGRONE

Attorneys for Plaintiff/Counterdefendant
SYNOPSYS, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

SYNOPSYS' RESPONSE RE: DEFS.' SUPPLEMENTAL
EXTRATERRITORIALITY BRIEF