UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>UBIQUITI NETWORKS, INC., et al.,<br><br>   Defendants. | Case No. 17-cv-00561-WHO (LB)<br><br>**ORDER ADJUDICATING DISCOVERY DISPUTES REGARDING SUBPOENA TO SMARTFLOW COMPLIANCE SOLUTIONS**<br><br>Re: ECF Nos. 158, 160 |

## INTRODUCTION

This litigation centers around allegations by the plaintiff Synopsys that the defendants (collectively, "Ubiquiti") used counterfeit license keys to "pirate" Synopsys software, i.e., to install and use Synopsys software on their computers without a valid license. Synopsys bases its allegations of piracy in large part on so-called "call-home data." Synopsys has alleged that its software "calls home" whenever it is used without a valid license key and transmits information about the computer running the software back to Synopsys. Synopsys has alleged that its call-home data here shows that Ubiquiti accessed Synopsys software more than 39,000 times without a valid license key.

Synopsys licensed its call-home software from a company called SmartFlow Compliance Solutions (Ireland), Ltd. ("SmartFlow Ireland"). Ubiquiti issued a subpoena to non-party QuatreWave LLC dba SmartFlow Compliance Solutions ("SCS"), a Los-Angeles-based company

ORDER – No. 17-cv-00561-WHO (LB)

that acts as a sales agent for SmartFlow Ireland. Ubiquiti and SCS have raised several disputes regarding that subpoena. Ubiquiti asks the court to order SCS to produce (1) all documents related to licensing of SmartFlow software to Synopsys, (2) all proposals to or from Synopsys relating to such software, (3) an executable copy of the SmartFlow software, (4) the documentation that SmartFlow provided to Synopsys with the software, and (5) the source code for the SmartFlow software.[1]

The court can adjudicate these disputes without a hearing. N.D. Cal. Civ. L.R. 7-1(b). For the reasons discussed below, the court denies Ubiquiti's motion to compel.

## ANALYSIS

As a preliminary matter, the court notes that while SCS raises objections to Ubiquiti's subpoena request by request, Ubiquiti responds to SCS's objections generally and collectively.[2] This makes it difficult to tell which of Ubiquiti's responses and arguments do and do not apply to which requests and objections. This also results in multiple instances where SCS raises a specific objection to a particular request and Ubiquiti provides only generalized responses that do not address the specific request and objection. The court parses the parties' written positions as best as it can and rules as follows:

### 1. All Documents Related to the Licensing of SmartFlow Software to Synopsys and All Proposals To or From Synopsys Relating to Such Software

Ubiquiti asks for documents related to any licensing of SmartFlow software to Synopsys or proposals thereto on the grounds that such documents "may reveal (i) how SmartFlow software works, (ii) how it was modified at Synopsys' request, (iii) how it was integrated into Synopsys' software, (iv) issues with the reliability of the data that it transmits to Synopsys, (v) how payments are structured (i.e., does SmartFlow get paid if use of the software results in a new license for

---

[1] Joint Letter Br. – ECF No. 158 at 2. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See id.* at 2–3.

ORDER – No. 17-cv-00561-WHO (LB)   2

Synopsys, if a lawsuit is filed, if damages are recovered, etc.), (vi) the timing of the negotiations between SmartFlow and Synopsys, and (vii) Synopsys' motivation in purchasing SmartFlow's software."[3]

As a preliminary matter, SCS represents that the parties conferred and that Ubiquiti agreed to accept production of final licensing agreements as SCS's response to these requests.[4] SCS states that Ubiquiti did not indicate (prior to the filing of this letter brief) that it intended to move to compel the production of other documents in connection with these requests.[5] Ubiquiti states that SCS has refused to produce anything besides final licensing agreements,[6] but it does not deny SCS's contention that this was what the parties had agreed to. The court therefore denies this request. If Ubiquiti can represent that this was not what the parties had agreed to, the court will reconsider this issue.

As an aside, the court questions Ubiquiti's proffered reasons why it needs non-final licensing documents. As to Ubiquiti's first and fourth reasons, it is unclear what documents about licensing would reveal about how SmartFlow software works or how reliable its data is. As to Ubiquiti's second and third reasons, SCS represents and has submitted a declaration from its CEO attesting that it did not modify the SmartFlow software or integrate it into Synopsys's software and that Synopsys did its own implementation,[7] a claim that Ubiquiti does not dispute. As to Ubiquiti's fifth reason, the final licensing agreements are the documents that would define how payments are structured; it is unclear what the relevance of non-final licensing documents would be. As to Ubiquiti's sixth and seventh reasons, it is unclear what the relevance of negotiation timing or of Synopsys's motivations would be (or why questions of Synopsys's motivations would not better be directed at Synopsys). In expressing these questions, the court does not mean to suggest that it

---

[3] *Id.*

[4] *Id.* at 4.

[5] *Id.*

[6] *Id.* at 2.

[7] *Id.* at 5; Miracco Decl. – ECF No. 161 at 3 (¶¶ 8–10).

would decide this issue in one particular way or the other; it provides them here to the extent that they are useful as a guide to the parties in any further discussions.

### 2. An Executable Copy of the SmartFlow Software

SCS has submitted a declaration from its CEO attesting that SmartFlow software is a software development kit ("SDK"), not software that can be executed on a standalone basis, and hence there is no executable copy of SmartFlow software.[8] Ubiquiti does not respond to this assertion or claim that there is such a thing as an executable copy of SmartFlow software. The court cannot order SCS to produce that which does not exist.

### 3. The Documentation That SmartFlow Provided to Synopsys With the Software

SCS appears to interpret this request as calling for the SmartFlow SDK and its documentation. SCS states that the SmartFlow SDK is a toolkit containing varied security functions, which must be selected and configured by clients like Synopsys into the clients' own software applications.[9] SCS argues that Ubiquiti has a limited need for the SmartFlow SDK because the SDK and its documentation would not reveal the specific configuration that Synopsys used.[10] SCS argues, "[t]o learn '(1) how and where the data is collected, and (2) why Synopsys has had concerns about duplicate entries in the data that is collected,' Ubiquiti needs to review Synopsys's code," as opposed to the SmartFlow SDK.[11] SCS asserts, and Ubiquiti does not deny, that Synopsys has made its code available to Ubiquiti for review.[12]

SCS argues that Ubiquiti's limited need for the SmartFlow SDK and its documentation, particularly in light of the fact that Ubiquiti has access to Synopsys's code, is outweighed by its

---

[8] Joint Letter Br. – ECF No. 158 at 5; Miracco Decl. – ECF No. 161 at 3 (¶ 9).
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

ORDER – No. 17-cv-00561-WHO (LB)   4

need to maintain its trade secrets. SCS argues, "granting Ubiquiti access to the SDK puts SCS's current clients at extreme security risk. The software would be immeasurably valuable to those who may wish to pirate high-tech software, and could aid in circumventing SmartFlow security provisions. This would expose SCS's customers to the risk of unobstructed and undetectable piracy."[13]

"A court may quash a subpoena that requires the disclosure of 'a trade secret or other confidential research, development, or commercial information.'" *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017) (quoting Fed. R. Civ. Proc. 45(d)(3)(B)(i)). "'Once the nonparty shows that the requested information is a trade secret or confidential commercial information, the burden shifts to the requesting party to show a substantial need for the testimony or material that cannot be otherwise met without undue hardship.'" *Id.* (quoting *Gonzales v. Google*, 234 F.R.D. 674, 684 (N.D. Cal. 2006)). "Moreover, the information requested from a non-party 'should be narrowly drawn to meet specific needs for information.'" *Id.* (quoting *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011)).

Ubiquiti has not shown a substantial need for the SmartFlow SDK or related documentation that cannot be otherwise met without undue hardship. Indeed, it appears that Ubiquiti may not understand what it is that it asking for, much less shown why it has a substantial need for what it is that it is asking for.[14] As Ubiquiti has not demonstrated a substantial need that cannot otherwise be met without undue hardship, the court denies its motion to compel.

---

[13] *Id.*; *see also* Miracco Decl. – ECF No. 161 at 3 (¶ 11) ("For SCS's customers, the SmartFlow Software represent the last layer of defense that they can use to protect their valuable intellectual property. Sharing the SDK itself and the information contained in the SDK (which includes strategies for detection) would put SCS's trade secrets at risk. Moreover, if this information was leaked to the public, it would ca[u]se irreparable damage to SmartFlow and its customers, as it could be used to circumvent the critical security to their valuable software applications.").

[14] For example, Ubiquiti never refers to an SDK in its portion of the letter and instead refers to an "executable copy" of the SmartFlow software, which apparently is not what the SmartFlow software is at all.

### 4. The Source Code for the SmartFlow Software

SCS represents and has submitted a declaration from its CEO attesting that it does not have either actual or constructive possession, custody, or control over SmartFlow source code.[15] SmartFlow Ireland is the owner of the source code, and SCS represents that, as a mere sales agent, it does not have access to the source code and has never seen it.[16] Ubiquiti does not respond to this assertion or claim that SCS has access to the source code.[17] The court cannot order SCS to produce documents that are not within its possession, custody, or control.

## CONCLUSION

For the foregoing reasons, Ubiquiti's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: March 30, 2018

_____
LAUREL BEELER
United States Magistrate Judge

---

[15] Joint Letter Br. – ECF No. 158 at 6; Miracco Decl. – ECF No. 161 at 4 (¶¶ 12–14).

[16] Joint Letter Br. – ECF No. 158 at 6.

[17] Ubiquiti claims that SCS admits that it possesses "most of the documents," *id.* at 3, but it does not explain which documents are included in this "most" or claim that the source code is among them.