UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>UBIQUITI NETWORKS, INC., et al.,<br><br>   Defendants. | Case No. 17-cv-00561-WHO (LB)<br><br>**ORDER ADJUDICATING DISCOVERY DISPUTE REGARDING SYNOPSYS'S REDACTIONS OF DOCUMENT PRODUCTIONS**<br><br>Re: ECF No. 171 |

**INTRODUCTION**

This litigation centers around allegations by the plaintiff Synopsys, Inc. that the defendants (collectively, "Ubiquiti") used counterfeit license keys to "pirate" Synopsys software, i.e., to install and use Synopsys software on their computers without a valid license. The parties have raised a discovery dispute regarding Synopsys's redactions of documents it has produced to Ubiquiti in discovery, including redactions of the identities of Synopsys's customers.[1] The court can adjudicate this dispute without a hearing, N.D. Cal. Civ. L.R. 7-1(b), and rules as follows.

---

[1] Joint Letter Br. – ECF No. 171. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 17-cv-00561-WHO (LB)

## STATEMENT

The parties agree that one method for calculating damages in a copyright case such as this one is to look to "hypothetical-license damages," i.e., "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the infringer of the plaintiff's work." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (internal brackets omitted) (quoting *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006)).[2] The parties agree that information about what other customers paid to license Synopsys's software is therefore relevant.

Synopsys states that it has produced documents that show, on a customer-by-customer basis, what its customers have paid to license its software.[3] Synopsys has redacted its customers' names and identities from these documents.[4] For some documents, Synopsys has provided numerical aliases for each customer.[5] For other documents, Synopsys has redacted customer names with the message "REDACTED – NON-PARTY INFORMATION," without any additional identifiers.[6] Ubiquiti argues that this makes it "impossible to determine which documents or portions of documents relate to the same entities. For example, it is impossible to map information about apparent audits and settlements to the applicable agreements or to understand which slides in a presentation regarding supposed infringers relate to summary information regarding estimated settlement values."[7]

Ubiquiti argues that Synopsys should produce documents that refer to its customers unredacted, so that it can see the customers' identities.[8] Synopsys argues that the "[p]urchase and licensing term details — not customer names — are what matter to a proper copyright market

---

[2] *See* Joint Letter Br. – ECF No. 171 at 3 (Ubiquiti section), 5 (Synopsys section).
[3] *Id.* at 5.
[4] *Id.* at 1, 5.
[5] *Id.* at 5.
[6] *See, e.g.*, Guo Supp. Decl. Ex. C – ECF No. 164-3 (under seal).
[7] Joint Letter Br. – ECF No. 171 at 3 (citations omitted).
[8] *Id.* at 1–3.

value analysis" and that its customers' identities are not relevant to Ubiquiti's defenses.[9] Synopsys also argues that its agreements with its customers require it to provide its customers with notice and a reasonable opportunity to contest disclosure, and that the burden of notifying thousands of customers and providing them with an opportunity to contest disclosure outweighs the benefits to Ubiquiti of having its customers' identities.[10]

Ubiquiti argues that in addition to customer information, Synopsys has also redacted internal documents and emails that do not relate to its customers but instead relate to third parties such as other alleged "software pirates," to whom Synopsys does not owe notice or confidentiality obligations.[11] Synopsys responds that those parties' identities are not relevant to Ubiquiti's defenses.[12]

Ubiquiti also claims that Synopsys's redaction process has corrupted the formatting and metadata of certain of its document productions.[13] Synopsys does not respond substantively on this point but states that the issue is not ripe for court intervention and that the parties should meet and confer on the issue.[14]

Synopsys represents that it has "offered to identify specific customers by numerical aliases if Defendants want to know which customer a particular redacted document is referring to."[15]

---

[9] *Id.* at 5–6.

[10] *Id.* Ubiquiti argues that Synopsys has entered into agreements with at least some customers that do not require Synopsys to provide notice before disclosing the customers' identities, citing four settlement agreements that Synopsys entered with certain parties. *Id.* at 2–3 (citing Guo Decl. Ex. D – ECF No. 148-4 (under seal); Guo Decl. Ex. E – ECF No. 148-5 (under seal); Guo Decl. Ex. F – ECF No. 148-6 (under seal); Guo Decl. Ex. G – ECF No. 148-7 (under seal)). Synopsys responds that even if some settlement agreements do not require it to provide notice, those settlement agreements are accompanied by license and purchase agreements, which do require Synopsys to provide notice. *Id.* at 5; Uriarte Decl. Ex. 1 – ECF No. 175-3 (under seal); Uriarte Decl. Ex 2. – ECF No. 175-4 (under seal).

[11] Joint Letter Br. – ECF No. 171 at 4.

[12] *Id.* at 4–5.

[13] *Id.* at 2.

[14] *Id.* at 4.

[15] *Id.* at 5.

**ANALYSIS**

For those customers to whom Synopsys owes a duty to provide notice and a reasonable opportunity to contest disclosure, the court declines at this juncture to order Synopsys to unredact and produce en masse all of the customer-identity information it has redacted. Ubiquiti has the financial terms of those customers' licensing arrangements, and the added benefit to Ubiquiti of obtaining those customers' identities is outweighed by the burden on Synopsys on having to provide notice to those customers (and the burden on the court, if those customers file motions to contest disclosure). Synopsys's alternative proposal of identifying customers by numerical aliases seems reasonable. Identifying customers by numerical aliases (that are consistent across documents) would alleviate the burden of Synopsys having to notify customers about disclosure, on the one hand, while allowing Ubiquiti to track what documents or portions of documents relate to the same customer, on the other. If Ubiquiti finds that it has a need for the identity of some specific customer or customers, it can raise that issue (first with Synopsys through the meet-and-confer process and then, if necessary, with the court), but the court declines to impose a global unredaction requirement now.

The issue of third parties who are not customers (e.g., other "major pirates" that Synopsys was investigating) presents a closer question. Synopsys does not have the same providing-notice issues with respect to disclosing those third parties' identities. On the other hand, Ubiquiti has not demonstrated why those third parties' identities are relevant to any claims or defenses in this case. The court declines at this juncture to order Synopsys to unredact and produce en masse all of those third parties' identities. At least as an initial matter, Synopsys may identify those third parties by numerical aliases.

The court sounds a note of caution. The court's adoption of Synopsys's numerical-alias proposal is contingent on Synopsys's providing this numerical-alias information promptly and without undue burden to Ubiquiti. It would not be fair to adopt this process and relieve Synopsys

of its burden of providing notice to its customers by imposing a greater burden on Ubiquiti.[16] The parties should meet and confer to discuss a process for numerical-alias identification whereby Synopsys will provide Ubiquiti with numerical aliases promptly and without undue burden on Ubiquiti. Should Synopsys prove unwilling or unable to do so, the court may reconsider whether ordering Synopsys to produce its customer and third-party information unredacted is appropriate.

Finally, with respect to the issue of Synopsys's redaction process allegedly corrupting the formatting and metadata of certain of its document productions, if there are legitimate issues to discuss, the parties should meet and confer to discuss them. But the meet-and-confer process must not serve as a delay or an excuse for Synopsys to not promptly correct (apparently) purely technical issues with its productions. The court is confident that Synopsys will promptly address any issues in its redaction process and reproduce, with intact formatting and metadata, any documents that were previously corrupted.

**IT IS SO ORDERED.**

Dated: April 5, 2018

LAUREL BEELER
United States Magistrate Judge

---

[16] For example, it appears that Synopsys might have proposed that Ubiquiti identify on a document-by-document basis which documents contain customer information that Ubiquiti wants identified, after which Synopsys would provide numerical aliases only for the references in those specific documents. Joint Letter Br. – ECF No. 171 at 5. Such a process would not be fair to Ubiquiti. That is of course not to say that Ubiquiti should sit back and do nothing while demanding that Synopsys do all the work to identify documents with relevant customer information either. As the court has said many times over the course of the parties' numerous discovery disputes, both sides have an obligation to negotiate in good faith and cooperate in discovery.