UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UBIQUITI NETWORKS, INC., et al., <br><br> Defendants. | Case No. 17-cv-00561-WHO (LB) <br><br> **ORDER ADJUDICATING DISCOVERY DISPUTE REGARDING SOURCE-CODE PRINTOUTS** <br><br> Re: ECF No. 198 |

## INTRODUCTION

This litigation centers around allegations by plaintiff Synopsys, Inc. that the defendants used counterfeit license keys to install and use Synopsys software on their computers without a valid license. Synopsys bases its allegations in large part on so-called "call-home data." Synopsys has alleged that its software "calls home" whenever it is used without a valid license key and transmits information about the computer running the software back to Synopsys. Synopsys has alleged that its call-home data here shows that the defendants accessed Synopsys software more than 39,000 times without a valid license key. Defendant Ubiquiti Networks, Inc. ("Ubiquiti") asserts that Synopsys's call-home data is vastly overinflating the number of alleged circumventions.

Synopsys has provided Ubiquiti with access to certain source code for its software, including source code for its license-management system, for electronic inspection at its counsel's office in

California. Synopsys and Ubiquiti raise a dispute about whether Synopsys should be required to produce printouts of its source code for Ubiquiti's expert witnesses.[1]

**PRELIMINARY MATTERS**

The court starts with a few preliminary matters. First, the parties' joint letter brief was filed as a "Letter" on ECF, not as a discovery letter brief. For internal administrative purposes, discovery letter briefs must be filed under the Civil Events category of "Motions and Related Filings > Motions – General > Discovery Letter Brief."[2] The court cautions that misfiling of discovery letter briefs may cause delays or complications in their resolution.

Second, Synopsys raises a complaint about the joint-letter-briefing process.[3] Synopsys writes that "[a]fter seeing Synopsys' section of this brief, Defendants completely re-wrote their section to raise new issues and also crafted new declarations advancing attorney argument under the guise of fact testimony."[4] There is nothing wrong with one side revising its section of a letter brief after seeing the other side's. To the contrary, as the court previously explained, that is one of the central purposes of the joint-letter-brief process: so that the parties can see each other's positions and arguments, can respond to them, can re-respond to the responses, etc., and thereby (1) try to find areas of compromise and work out their disputes amongst themselves and (2) narrow, sharpen, and focus the issues they cannot resolve before they present those issues to the court.[5] Of course, revisions to joint letter briefs must go both ways. If Ubiquiti "completely re-wr[ites]" its section of the letter brief in response to Synopsys's section, it must give Synopsys a chance to see its revisions and revise its section in re-response as well. And so on. Each successive draft should further sift out issues on which the parties can find compromise (and issues where one side has no

---

[1] Joint Letter Br. – ECF No. 198. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 104 at 6 n.6; Standing Order – ECF No. 104-1.

[3] *See* Joint Letter Br. – ECF No. 198 at 6 n.7.

[4] *Id.*

[5] *See* Order – ECF No. 181 at 1–2; Order – ECF No. 165 at 2–3.

response to the other side's arguments and thereby realizes that it should compromise), and the final joint letter brief should include only the core, central unresolved issues and all of the parties' arguments on those issues (including all the responses they have to the other side's arguments). That, at least, is the hope. Of course, it is possible to abuse the joint-letter-brief process (e.g., one side could unreasonably delay its responses, or, conversely, one side could give the other side an unreasonably short time to submit its responses). To that, the court reminds the parties once again that they have an obligation to negotiate in good faith and cooperate in discovery.[6]

With those preliminary matters dispensed with, the court now turns to the merits of the parties' dispute.

**ANALYSIS**

There does not appear to be any dispute regarding electronic access to Synopsys's source code: Synopsys states, and Ubiquiti does not dispute, that "[a]ll of the code at issue has already been produced" for electronic review at Synopsys's counsel's office.[7] The parties' dispute only concerns printouts of the source code.

The parties' Stipulated Protective Order provides that a party "may request paper copies of limited portions of information designated as HIGHLY CONFIDENTIAL – SOURCE CODE . . . that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper or electronic copies for the purposes of reviewing the HIGHLY CONFIDENTIAL – SOURCE CODE . . . other than electronically as set forth in paragraph (c) in the first instance."[8] In the event of a dispute regarding source-code

---

[6] *See, e.g.*, Order – ECF No. 181 at 2; Order – ECF No. 176 at 5 n.16; Order – ECF No. 165 at 3; Order – ECF No. 153 at 3; Order – ECF No. 136 at 5 & n.16.

[7] Joint Letter Br. – ECF No. 198 at 4 (emphasis removed).

[8] Stipulated Protective Order – ECF No. 94 at 16 (¶ 9(d)).

ORDER – No. 17-cv-00561-WHO (LB)　　　3

printouts, the party requesting the source code bears the burden of establishing that the source-code printouts are reasonably necessary.[9]

At least one court has held that even where an expert has conducted an initial electronic source-code review and states that source code is necessary for his or her expert report, it may be appropriate in some circumstances to require the expert to conduct a second electronic review so that he or she can further limit the scope of his or her requests, before a court orders production of source-code printouts. *Imageware Sys., Inc. v. Fulcrum Biometrics, LLC*, No. 13CV936-DMS(JMA), 2014 WL 12489939, at *1 (S.D. Cal. Nov. 26, 2014).

Here, Ubiquiti, as the requesting party, bears the burden of persuasion that source-code printouts are "reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial." The court finds it has not met its burden. With respect to expert reports, Ubiquiti's expert, Stuart Stubblebine, does not attest that source-code *printouts* (as opposed to reviewing the source code) are reasonably necessary for him to prepare his expert report. Dr. Stubblebine does not appear to have conducted an initial electronic review of the source code at issue in the first instance.[10] At the very least, it seems reasonable to require Dr. Stubblebine to conduct an initial inspection of the source code electronically before requesting printouts, in keeping with the Protective Order's admonishment that the parties "shall not request paper or electronic copies for the purposes of reviewing the HIGHLY CONFIDENTIAL – SOURCE CODE . . . other than electronically as set forth in paragraph (c) in the first instance."[11]

---

[9] *See id.* ("[T]he Receiving Party is the 'Designating Party' for purposes of dispute resolution"); *id.* at 9 (¶ 6.3) ("The burden of persuasion in any such challenge proceeding shall be on the Designating Party.").

[10] Another one of Ubiquiti's experts, Steve Waldbusser, has reviewed more of the source code at issue electronically, but he does not say anything about whether source-code printouts are reasonably necessary for any purpose, *see* Waldbusser Decl. – ECF No. 198-2, and Ubiquiti does not rely on him in making its printout request.

[11] Stipulated Protective Order – ECF No. 94 at 16 (¶ 9(d)).

*Cf. Imageware*, 2014 WL 12489939, at *1 (requiring expert who had conducted an initial electronic source-code review to conduct a second electronic review before requesting printouts).[12]

Ubiquiti argues that it is unreasonable to require Dr. Stubblebine to travel to Synopsys's counsel's office in California to electronically inspect Synopsys's source code.[13] But the parties stipulated that the location for source-code inspections would be their respective counsel's offices.[14] Having made that agreement, Ubiquiti must live with it. Ubiquiti does not cite any cases that support the proposition that the fact that its expert lives far from Synopsys's counsel's office renders source-code printouts "reasonably necessary" for purposes of the Protective Order.

The cases that Ubiquiti does cite are inapposite. *Linex Tech Inc. v. Hewlett Packard Co.*, No. C 13-1820909 (N.D. Cal. Apr. 30, 2013), *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-JST (KAW), 2014 WL 5079343 (N.D. Cal. Oct 9, 2014), *TVIIM, LLC v. McAfee, Inc.*, No. 13-cv-04545-VC (KAW), 2014 U.S. Dist. LEXIS 113104 (N.D. Cal. Aug. 14, 2014), and *Kelora Systems, LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 WL 6000759 (N.D. Cal. Aug. 29, 2011), concerned disputes about what sort of protective order a court should enter in the first instance (including, in some instances, disputes about whether the protective order should contain specific limits on the amount of source-code printouts a party could request). That is not the issue here. The parties are not negotiating a protective order. They have already stipulated to a protective order, which the court has entered. The court is now applying the parties' stipulated Protective Order pursuant to its terms.[15]

---

[12] With respect to court filings, pleadings, or other papers, Ubiquiti only states, ipse dixit, that source-code printouts are necessary for summary-judgment, *Daubert*, and in-limine motions, Joint Letter Br. – ECF No. 198 at 4, but it does not explain how or why, much less support those assertions. This is insufficient to carry its burden.

[13] *Id.*

[14] Protective Order – ECF No. 94 at 15 (¶ 9(c)).

[15] Ubiquiti also cites two other cases, but neither supports its arguments. *Microunity Systems Engineering, Inc. v. Apple Inc.*, No. 13-mc-80020 LHK (PSG), 2013 WL 2384261 (N.D. Cal. May 30, 2013) involved the application of a protective order entered by the Eastern District of Texas, which the Northern District of California applied in a third-party discovery dispute pursuant to its terms. *Id.* at *3. *Knaggs v. Yahoo! Inc.*, No. 15-mc-80281-MEJ, 2016 WL 39116350 (N.D. Cal. July 20, 2016), involved discovery in connection with a criminal case in the United Kingdom, where the parties had

*(cont'd)*

## CONCLUSION

For the foregoing reasons, the court declines to order Synopsys to produce printouts of the source code in question. This denial is without prejudice to a future request for source-code printouts, upon a proper showing that such printouts "are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial."

**IT IS SO ORDERED.**

Dated: May 21, 2018

_____
LAUREL BEELER
United States Magistrate Judge

---

no preexisting protective order and the court instructed them to meet and confer about confidentiality protections, including potentially seeking a protective order. *Id.* at *8.