1    JENNIFER LEE TAYLOR (SBN 161368)          WENDY J. RAY (SBN 226269)
     JTaylor@mofo.com                          WRay@mofo.com
2    STACEY M. SPRENKEL (SBN 241689)
     SSprenkel@mofo.com                        MORRISON & FOERSTER LLP
3    JOYCE LIOU (SBN 277720)                   707 Wilshire Boulevard
     JLiou@mofo.com                            Los Angeles, CA 90017-3543
4    AMANDA D. PHILLIPS (SBN 305614)           Telephone:   (213) 892-5200
     APhillips@mofo.com                        Facsimile:   (213) 892-5454
5
     MORRISON & FOERSTER LLP
6    425 Market Street
     San Francisco, California  94105-2482
7    Telephone:    (415) 268-7000
     Facsimile:    (415) 268-7522
8
     *Attorneys for Defendants/Counterdefendants*
9    UBIQUITI NETWORKS INC. and UBIQUITI
     NETWORKS INTERNATIONAL LIMITED
10

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15   SYNOPSYS, INC.,                           Case No. 3:17-cv-00561-WHO

16                    Plaintiff,               **UBIQUITI NETWORKS, INC. AND
                                               UBIQUITI NETWORKS
17          v.                                 INTERNATIONAL LIMITED'S
                                               MOTION TO EXCLUDE THE
18   UBIQUITI NETWORKS, INC., UBIQUITI         EXPERT TESTIMONY OF JAMES
     NETWORKS INTERNATIONAL LIMITED,           E. MALACKOWSKI AND
19   CHING-HAN TSAI, and DOES 1-20,            WILLIAM HASLER**
     inclusive
20                                             Date: November 21, 2018
                                               Time: 10 a.m.
21                    Defendants.              Place: Courtroom 2, 17th Floor
                                               Judge: Hon. William H. Orrick
22

23   UBIQUITI NETWORKS, INC. and UBIQUITI
     NETWORKS INTERNATIONAL LIMITED,

24
                      Counterclaimants,        REDACTED VERSION OF
25                                             DOCUMENT SOUGHT TO BE
            v.                                 SEALED
26
     SYNOPSYS, INC.,
27
                      Counterdefendant.
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 1

James Malackowski ....................................................................................................... 1

    A.    Actual Damages Methodology ...................................................................... 2
    B.    Statutory Damages Methodology .................................................................. 2

William Hasler ............................................................................................................... 3

    A.    Compliance with the Code ............................................................................ 3
    B.    Ubiquiti's Investigation ................................................................................. 5

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................................. 6

I.      MALACKOWSKI'S TESTIMONY IS UNRELIABLE AND UNDULY
       SPECULATIVE ................................................................................................ 6

    A.    Malackowski's 'Actual Damages' Calculation Makes Critical Errors ................... 6

        1.    Malackowski's actual damages calculation is 'unconstrained by reality' .. 7

        2.    Malackowski's impermissibly ignores uncontested and material facts ...... 8

        3.    Malackowski's methodology is lacking because he takes into account the
            identity of the hypothetical buyer ................................................................ 9

        4.    Malackowski's calculation improperly relies on information not known to
            the parties at the time of alleged first act of circumvention ...................... 10

    B.    Malackowski Has No Basis for Calculating the Statutory Damages Contained in
       His Report. ................................................................................................... 11

        1.    Malackowski is not relying on his own non-existent technical expertise . 11

        2.    Malackowski did not rely on any other expert witnesses in this case ....... 12

        3.    The call-home data in no way speaks for itself ......................................... 12

        4.    Malackowski may not perform a straight-line extrapolation of unreliable
            data to calculate damages ........................................................................... 14

II.      HASLER'S TESTIMONY IS IRRELEVANT, PREJUDICIAL, AND INVADES TO
       PROVINCE OF THE JURY ........................................................................... 15

        1.    The opinions are irrelevant and more prejudicial than probative ............. 15

        2.    Hasler seeks to invade the province of the jury ....................................... 16

CASE NO. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
  sf-3950071

i

**TABLE OF CONTENTS**
**(continued)**

Page

3. Opinions regarding supposed breaches of fiduciary duties should be excluded ................................................................................................ 19

4. Hasler's opinions lack a sufficiently reliable foundation......................... 20

III.    CONCLUSION ............................................................................................. 21

CASE No. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
   sf-3950071

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Askanase v. Fatjo,*
   130 F.3d 657 (5th Cir. 1997)...................................................................................16

*Bell v. Taylor,*
   827 F.3d 699 (7th Cir. 2016)..................................................................................1, 7

*Biotechnology Value Fund, L.P. v. Celera Corp.,*
   No. C 13-03248 WHA, 2015 WL 138168 (N.D. Cal. Jan. 9, 2015)................................ *passim*

*Dash v. Mayweather,*
   731 F.3d 303 (4th Cir. 2013)..................................................................................8, 9

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ......................................................................................... *passim*

*Design Data Corp. v. Unigate Enter., Inc.,*
   847 F.3d 1169 (9th Cir. 2017)..................................................................................13

*Fail-Safe, L.L.C. v. A.O. Smith Corp.,*
   744 F. Supp. 2d 870 (E.D. Wis. 2010)...........................................................................8

*Fujifilm Corp. v. Motorola Mobility LLC,*
   No. 12-CV-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015)................................16

*Hangarter v. Provident Life & Accident Ins. Co.,*
   373 F.3d 998 (9th Cir. 2004)..................................................................................19

*Interplan Architects, Inc. v. C.L. Thomas, Inc.,*
   No. 4:08-CV-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) .........................................7

*Jarvis v. K2 Inc.,*
   486 F.3d 526 (9th Cir. 2007)....................................................................................7

*Jinro Am. Inc. v. Secure Investments, Inc.,*
   266 F.3d 993 (9th Cir. 2001)..................................................................................15

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ............................................................................................5

*LaserDynamics, Inc. v. Quanta Comput. USA, Inc.,*
   694 F.3d 51 (Fed. Cir. 2012)..................................................................................10

*Lassalle v. McNeilus Truck & Mfg., Inc.,*
   No. 16-CV-00766-WHO, 2017 WL 3115141 (N.D. Cal. July 21, 2017) ..............................20

CASE NO. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
   sf-3950071

iii

*LeClercq v. Lockformer Co.*,
No. 00 C 7164, 2005 WL 1162979 (N.D. Ill. Apr. 28, 2005)....................................................8

*Leland Medical Centers, Inc. v. Weiss*,
2007 WL 2900599 (E.D. Tex. Sept. 28 2007) ........................................................................9

*LGS Architects, Inc. v. Concordia Homes*,
434 F.3d 1150 (9th Cir. 2006), *overruled on other grounds by eBay Inc. v.*
*MercExchange, L.L.C.*, 547 U.S. 388 (2006)........................................................................10

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996).....................................................................................................6

*Mattel, Inc. v. MGA Entm't, Inc.*,
No. CV 04-9049 DOC, 2011 WL 836418 (C.D. Cal. Mar. 4, 2011)......................................9

*M Seven Sys. Ltd. V. Leap Wireless Int'l, Inc.*,
No. 12-cv-1427 CAB (RBB), 2014 WL 12026065 (S.D. Cal. June 4, 2014) .........................13

*Oracle Corp. v. SAP AG*,
765 F.3d 1081 (9th Cir. 2014)...................................................................................1, 6, 7, 10

*Perez v. Seafood Peddler of San Rafael, Inc.*,
No. 12-CV-00116-WHO, 2014 WL 2810144 (N.D. Cal. June 20, 2014) .............................15

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004)...................................................................................................8

*Rearden LLC v. Walt Disney Co.*,
293 F. Supp. 3d 963 (N.D. Cal. 2018) ...................................................................................13

*RSI Corp. v. Int'l Bus. Machines Corp.*,
No. C-08-03414 RMW, 2013 WL 1087468 (N.D. Cal. Mar. 13, 2013)................................19

*S.E.C. v. Daifotis*,
No. C 11- 00137 WHA, 2012 WL 2051193 (N.D. Cal. June 7, 2012)....................................17

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989)................................................................................................10

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
24 F.3d 1088 (9th Cir. 1994)..................................................................................................13

*Therasense, Inc. v. Becton, Dickinson & Co.*,
No. C 04-02123-WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008) .................................16

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000).................................................................................................11

CASE NO. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
sf-3950071

iv

*United States v. Lukashov*,
    694 F.3d 1107 (9th Cir. 2012) ................................................................................15

**Statutes**

17 U.S.C.
    § 1201(a)(1)(A) ...................................................................................................11, 13
    § 1203(c)(3) ................................................................................................................2

**Other Authorities**

Fed. R. Evid. 403 ........................................................................................................15

Fed. R. Evid. 702 ...............................................................................................5, 6, 11

1

## NOTICE OF MOTION AND MOTION

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3   PLEASE TAKE NOTICE that on Wednesday, November 21, 2018, at 10:00 a.m., or as

4   soon as the matter may be heard by the Honorable William H. Orrick in Courtroom 2 of the

5   United States District Court for the Northern District of California, 450 Golden Gate Avenue,

6   San Francisco, CA 94102, Defendants and Counterclaimants Ubiquiti Networks, Inc. and

7   Ubiquiti Networks International Limited ("UBNT") will and hereby do move this Court for an

8   Order excluding the expert testimony of William Hasler and James E. Malackowski.

9   This motion is based on this Notice of Motion and Motion; the Declaration of Wendy Ray

10  in Support of the Motion and the material attached thereto; the record in this matter; and such

11  other written or oral argument as may be presented before this motion is taken under submission

12  by the Court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
sf-3950071

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

The testimony of two Synopsys experts, James Malackowski and William Hasler, should be excluded because they are unreliable, not supported by the facts and, as to Hasler, irrelevant. Their testimony would mislead the jury and should be excluded under Federal Rule of Evidence 702 and *Daubert*.

Malackowski's damages testimony is unreliable as a matter of law.  First, Malackowski seeks to calculate "actual damages" by ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████  ████████████  *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014).  But Malackowski's methodology ignores critical and uncontroverted evidence of ███████████ ████████████████████████████████████████ Instead, Malackowski ██████████████ ██████████████████████████████████████████████ This is improper as a matter of law.  *See Bell v. Taylor*, 827 F.3d 699, 709-710 (7th Cir. 2016).  Second, Malackowski calculates statutory damages using ████████████████████████████████████ ██████████  For these reasons, his testimony should be excluded.

The testimony of Hasler, Synopsys' expert on corporate governance, fares no better. Hasler does little more than make unsubstantiated—and irrelevant—legal claims that Ubiquiti somehow violated its fiduciary duties before giving his own spin on "facts" that have been spoon-fed to him by Synopsys' counsel.  Hasler recently had similar testimony excluded by a court in the Northern District of California.  *See Biotechnology Value Fund, L.P. v. Celera Corp.*, No. C 13-03248 WHA, 2015 WL 138168, at *2 (N.D. Cal. Jan. 9, 2015).  This Court should do the same.

## FACTUAL BACKGROUND

### James Malackowski

Synopsys seeks actual and statutory damages for UBNT's[1] supposed unauthorized use of

---

[1] "UBNT" refers collectively to Defendants Ubiquiti Networks, Inc. and Ubiquiti Networks International Limited.

Case No. 3:17-cv-00561-WHO
Ubiquiti Defendants' Motion to Exclude the Expert Testimony of Hasler and Malackowski
  sf-3950071

1
1

1  Synopsys' software.  Synopsys relies on the expert opinion of Malackowski to support these

2  claims.  Malackowski offers both a calculation of "actual damages" based on ████████

3  ███████████████  and an alternative calculation of statutory damages based ███████

4  ███████████████

###   A.   Actual Damages Methodology

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ███████████████  (Declaration of Wendy J. Ray In Support of Ubiquiti Networks, Inc. and Ubiquiti

9  Networks International Limited's Motion to Exclude Expert Testimony ("Ray Decl.") Ex. A at

10  47, 49, 53, 55-56, 58.)[2]  But his methodology does not account for two important factors.  First,

11  ████████████████████████████████████████████████████████

12  ████████████████  (Ex. B at 136:13-137:10.)  Second, ███████████████

13  ████████████████████████████████████████████████  (*Id.*

14  at 132:22-133:1.)

###   B.   Statutory Damages Methodology

16  For statutory damages, Malackowski ████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████  (*See, e.g.,*

19  Ray Decl. Ex. A at 4-6.)  Critically, however, ████████████████████

20  ████████████████████████  as required under the statute.  17 U.S.C.

21  § 1203(c)(3).  ████████████████████████████

22  ████████████████████████  (Ray Decl. Ex. A at 18.)  But no Synopsys

23  expert offers an opinion that ████████████████████████

24  ████████████████  And the only person with whom Malackowski discussed ████████

25  ████████████████  Norm Kelly, lacks the requisite knowledge to support Malackowski's

26  _____

27  [2]  ████████████████████████████████████████████████████

28  ████████████████████████████████████

Case No. 3:17-cv-00561-WHO
Ubiquiti Defendants' Motion to Exclude the Expert Testimony of Hasler and Malackowski
sf-3950071

2

assumptions.  (*See* Ray Decl. Ex. F at 183:14-185:6 (confessing that "won't pretend to be the expert" on call-home data specification).)

Further, Malackowski erroneously ███████████████████████████████████ ██████████████████████████████████████████████████████ (*See* Ray Decl. Ex. A at 40-41.) ███████████████████████████████████████████████ ████████████████████████ (Ray Decl. Ex. B at 145:15-147:7.)

### William Hasler

Synopsys proffers Hasler as an expert to opine on two areas of corporate governance.

### A.      Compliance with the Code

Hasler first opines on whether

> Ubiquiti diligently enforce[d] its own corporate code of conduct and business ethics (the "Code") in connection with the matters at issue in this case, measured … against the appropriate corporate governance and risk management practices for enforcement of corporate codes of business conduct and ethics and similar governance guidelines.

(Ray Decl. Ex. C ¶ 10.)

Although Hasler claims that he is measuring Ubiquiti's actions "against the appropriate corporate governance and risk management practices for enforcement of corporate codes of business conduct and ethics and similar governance guidelines" (*id.*), he subsequently testified that he is in fact measuring Ubiquiti's actions *against the Code itself.*  In other words, he is opining *only* as to whether Ubiquiti "implement[ed]" its Code and "diligently execute[d] it." (Ray Decl. Ex. D at 34:24-35:15.)

That testimony, however, is at complete odds with his expert report:

- I was asked to determine, among other things, whether Ubiquiti made a diligent effort to enforce its own corporate ethics policy.  My opinion, *viewed from the perspective of appropriate public company governance and risk management practices*, is that it did not.  (Ray Decl. Ex. C ¶ 12 (emphasis added).)

- I viewed Ubiquiti's actions in accordance with my experience with respect to *standard corporate governance practices that a reasonable company would employ.  (Id.* ¶ 13.)

- *I understand the duty of care to mean (in practice)* that directors must be informed about material facts of the company's business, transactions, and risks, including such events as information on illegal activity at the company and related investigations.…  A director or executive is required to exercise the same degree

Case No. 3:17-cv-00561-WHO
Ubiquiti Defendants' Motion to Exclude the Expert Testimony of Hasler and Malackowski
sf-3950071

3

of care in the company's business as would be expected of a party to an arm's-length transaction.[3]  (*Id.* ¶ 31 (emphasis added).)

- *Duty of care is of special importance in this case*: it would dictate that Ubiquiti's Board should have been informed about the ITCA Notification (and if management did not timely inform the Board, the Board should have considered an appropriate investigatory process and disciplinary action against management when it found out about the litigation).  The Board should have also supervised the investigation of the allegations in the ITCA Notification, and any following disciplinary action and remedial programs.  Timely investigation and remediation of any potentially illegal activity brought to management's attention is an important part of risk management practices by a company's board and officers, and risk management is an important part of the duty of care.  It can protect the corporation against regulatory, legal, and reputational actions and loss. (*Id.* ¶ 32 (emphasis added).)

It is even at odds with other testimony at the same deposition:

> The only aspect of the corporate governance standards and literature that's relevant to [my opinion] is primarily the duty of care.  That's why, even in this write-up, I quite quickly moved away from duty of loyalty and focused on duty of care.

(Ray Decl. Ex. D at 52:3-22.)

Despite these clear statements that Hasler was "focus[ing] on duty of care" and that it "is of special importance to this case," Hasler contradicted himself by testifying that the discussion of fiduciary duties in his report was included only as "background" (*Id.* at 35:4-6; 44:17-45:7), and that

> Certainly if they knowingly established that code as a standard for behavior and violated it, that would be a question for someone on whether they met their duty of care.  It's *not* the opinion I'm rendering.

(*Id.* at 82:20-24 (emphasis added); *see also* 64:17-65:15 ("not a lawyer" and not "making any sort of a legal opinion").)  Later, Hasler submitted an extensive errata to his deposition testimony that contained a number of significant substantive changes.  (*See* Ray Decl. Ex. E.)  In one of his changes he stated that his report's reference to the duty of care was a "drafting error" and upon

---

[3] As Hasler conceded at his deposition, this is not even the correct standard because a director owes a *fiduciary* duty to a corporation.  (Ray Decl. Ex D at 87:17-18.)  Rather than admit that he did not review his expert report before he signed it, however, Hasler dissembled: "The way I understand this sentence is that a director certainly has a fiduciary duty.  And sort of a minimum expectation would be what is the end of this sentence.  Certainly not less than what a party in an arm's length transaction would do." (*Id.* at 89:18-23.)  And when asked where this incorrect statement of law in his expert report on a director's duty of care came from, Hasler responded: "May have the page numbers incorrect.  I'm not sure."  (*Id.* at 86:21-22.)

CASE NO. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
sf-3950071

4

1    "further reflection, I would strike it from my report." (*Id.* at 2.)

2         Regardless of whether Hasler is comparing Ubiquiti's conduct to the Code itself *or* to

3    "appropriate corporate governance and risk management practices" is immaterial, however, because

4    neither comparison is relevant nor an appropriate role for an expert.

5              **B.    Ubiquiti's Investigation**

6         Hasler also opines on whether

> Ubiquiti leadership put appropriate effort (consistent with proper governance
> practices) to discover the truth in its investigation of Synopsys' and IT
> Compliance Association's (ITCA) allegations of software piracy, … [measured]
> … against appropriate corporate governance and risk management practices to
> address receipt of a notification of illegal activity at a company.

10   (Ray Decl. Ex. C, ¶ 10.)

11        In this case however, he does not simply analyze whether Ubiquiti followed its Code,

12   "because the investigatory process is not spelled out in the code." (Ray Decl. Ex. D at 125:12-

13   14.) Instead, he describes a multi-step investigatory process that he considers to be appropriate

14   for what he refers to as "an important corporate event" (Ray Decl. Ex. C, ¶ 71), and, not

15   surprisingly, concludes that Ubiquiti did not comply with the specific steps he identifies by

16   "relying on the record that was provided" to him by Synopsys' counsel and considering the

17   investigation "in terms of the governance standards and form[ing] an opinion as to whether it

18   was an adequate process." (Ray Decl. Ex. D at 147:1-11.)

19        Again, the standard to which Hasler is comparing Ubiquiti's conduct may be confusing,

20   but the standard he uses is immaterial because any such comparison is neither relevant nor an

21   appropriate role for an expert.

22                    **LEGAL STANDARD**

23        "[S]cientific, technical, or other specialized [expert] knowledge" may be admissible where

24   the expert testimony "will help the trier of fact to understand the evidence or to determine a fact

25   in issue . . . ." Fed. R. Evid. 702. However, expert testimony is admissible only if it is:

26   (1) "based on sufficient facts or data," (2) "the product of reliable principles and methods," and

27   (3) the expert has "reliably applied the principles and methods to the facts of the case."

28   *Biotechnology*, 2015 WL 138168, at *1. It is the trial court's duty to serve as a "gatekeeper" for

expert opinion, and, as such, it must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). This gatekeeping duty applies to all expert testimony, not just "scientific" testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

## ARGUMENT

## I.   MALACKOWSKI'S TESTIMONY IS UNRELIABLE AND UNDULY SPECULATIVE

Synopsys cannot demonstrate the admissibility of Malackowski's opinion because it is not "the product of reliable principles and methods" and does not rest "on a reliable foundation." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 597; *see also Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility.").

### A.   Malackowski's 'Actual Damages' Calculation Makes Critical Errors

Malackowski's actual damages opinion is based on ███████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████ *Oracle*, 765 F.3d at 1087. The calculation cannot be "based on 'undue speculation.'" *Id.* at 1088. It must rest on "sufficient *objective evidence of the market value* of the hypothetical license." *Id.* at 1093 (emphasis added). The proper inquiry involves "an objective, not a subjective, analysis." *Id.* at 1088. The question is not "what the owner would like to have charged if unconstrained by reality, but what a willing owner actually would have charged after negotiation with the buyer." *Id.*

To determine the "actual damages" Synopsys allegedly suffered in this case, Malackowski ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ (*See* Ray Decl. Ex. A at 6-9.) This is improper for at least four reasons: ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

1 █████████████████████████████████████████████████████

2 █████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ██████████████████████

**1.      Malackowski's actual damages calculation is 'unconstrained by reality'**

8 ███████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ████████████████████████   *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (quoting *On Davis v.*

11 *The Gap, Inc.*, 246 F.3d 152, 166 (2nd Cir. 2001)).   ████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████   (Ray Decl. Ex. B at 111:11-15.)   ██████████

15 ████████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████████

17 ████████████   (*Id.* at 112:2-114:17.)   ████████████████████████████████████

18 ██████████████████████████████████████   (*See id.* at 116:6-25.)

19 ███████████████████████████████████████████

20 ██████████████████████████████████████   The plaintiff in *Bell* attempted to

21 prove actual damages from the unlicensed use of his photograph by submitting an affidavit stating

22 that he charged $200 for use of his photos and a webpage showing that the advertised price for

23 using the photograph was $200.  *Bell*, 827 F.3d at 709.  The court, however, held that this was

24 insufficient as a matter of law because the plaintiff produced no evidence that "he has ever

25 actually had a buyer willing to pay $200 for his photo" and that the evidence showed only the

26 plaintiff's "subjective belief as to the fair market value."  *Id.*

27           The Ninth Circuit has made clear that Malackowski cannot ███████████████████

28 █████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Oracle*, 765 F.3d at 1088.  In *Jarvis*, the Ninth Circuit was clear that the actual damages

calculation must be "objective" and avoid "references to what [the seller] thought he should have

earned or wished he had charged."  *Jarvis*, 486 F.3d at 534; *see also Interplan Architects, Inc. v.

C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4366990, at *11 n.11 (S.D. Tex. Oct. 27, 2010)

(holding that actual damages are not measured by "what Plaintiff would have *charged* Defendant

for a license" but by "what the plaintiff would have *received*") (emphasis in original).  Because

Malackowski bases his analysis only on ████████████████████████████

████████████████████████

### 2.    Malackowski impermissibly ignores uncontested and material facts

Even if Malackowski were able to █████████████████████████████████

███—something he was unable to do in his deposition—his methodology would still be

improper because it explicitly ignores uncontested, material facts that courts have held should be

used in the ████████████████████  First, Malackowski ignores █████████████████

███████████████████████████████ (Ray Decl.

Ex. B at 136:13-137:10.)  This is despite the fact that courts have held that price quotes made to

the defendant can form the basis for an actual damages calculation.  *See Polar Bear Prods., Inc.

v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) (affirming actual damages award based on

expert analysis that considered the price "Polar Bear actually quoted to Timex").  Second,

Malackowski ignores ███████████████████████████████████████████

█████████████████████████████████████████████████ (Ray

Decl. Ex. B at 132:22-133:1), although ██████████████████████ is precisely the sort of

information that courts have held ████████████████████████  *See Dash v.

Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013) ("evidence of a copyright holder's own prior sale

or licensing of copyrighted work can support the existence of actual damages").

A court may exclude expert testimony as unreliable if it "ignores obvious and uncontested

material facts."  *LeClercq v. Lockformer Co.*, No. 00 C 7164, 2005 WL 1162979, at *4 (N.D. Ill.

CASE NO. 3:17-cv-00561-WHO
UBIQUITI DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF HASLER AND MALACKOWSKI
sf-3950071

8

1   Apr. 28, 2005).  Doing so "amounts to cherry-picking," and "such selective use of facts fails to

2   satisfy the scientific method and *Daubert*."  *Id.* (internal quotation marks omitted); *see also Fail-*

3   *Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 889-90 (E.D. Wis. 2010).  Malackowski's

4   opinion, however, is premised on ignoring these "obvious and uncontested material facts" and

5   should be excluded on that basis.

6           **3.      Malackowski's methodology is lacking because he takes into account**
                       **the identity of the hypothetical buyer**

7

8           The only reason Malackowski provides for ignoring ██████████████████████████

9   ████████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████  (Ray Decl. Ex. B at

13  129:7-130:11.)  This is improper.

14          The question is ***not*** what Synopsys ███████████████████████████████████

15  ████████████  but what the "objective market value of the copyrighted work" without taking into

16  account "what the specific copyright plaintiff and defendant would have agreed to in a

17  hypothetical bilateral negotiation."  *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC

18  (RNBx), 2011 WL 836418, at *4 (C.D. Cal. Mar. 4, 2011); *see also Dash*, 731 F.3d at 313 (fair

19  market value "'is not what the owner would have charged,' nor what the infringer might have

20  been willing to pay") (quoting *On Davis*, 246 F.3d at 166); *Leland Medical Centers, Inc. v. Weiss*,

21  2007 WL 2900599, at *7 (E.D. Tex. Sept. 28 2007) (holding that it is irrelevant "what [the seller]

22  would have charged, just as it is not relevant what [the infringer] would have paid").  "Rather, the

23  *objective inquiry* focuses on the fair market value of the work as 'negotiat[ed] between a willing

24  buyer and a willing seller' contemplating the use the infringer made."  *Dash*, 731 F.3d at 313

25  (emphasis added).

26          Here, Malackowski asserts that Ubiquiti would not have ████████████████████████

27  ████████████████████████████████████—because of a vague explanation that Synopsys

28  would not have expected ████████████████████████████████████████████████████

1   (Ray Decl. Ex. B at 129:7-130:11.)  But analyzing a █████████████████████████████

2   ██████████████████ is improper and instead the proper analysis is what a hypothetical buyer

3   and seller of the license would have agreed to.  *Mattel*, 2011 WL 836418, at *4.

4          **4.      Malackowski's calculation improperly relies on information not
                     known to the parties at the time of alleged first act of circumvention**
5

6          Even assuming arguendo that Malackowski's methodology was not defective because he

7   ████████████████████████████████████████████████ the methodology would be

8   improper for the additional reason that it relies on information that was not known to the parties at

9   the time the hypothetical negotiation was supposed to take place.  One of the only reasons

10  provided in Malackowski's expert report for using the █████████████████████████████

11  █████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████ (Ray

13  Decl. Ex. A at 52.)  Furthermore, Malackowski was asked during his deposition ████████

14  █████████████████████████████████████████████████████

15  ████████████████████ (Ray Decl. Ex. B at 124:21-125:5.)  He answered: ████████

16  ██████████████████████████ (*Id.*)

17         As a matter of law, the hypothetical negotiation must take place at the date of first

18  infringement.  *Oracle*, 765 F.3d at 1087.  As the Federal Circuit explained in the patent context,

19  "the correct determination of the hypothetical negotiation date is essential for properly assessing

20  damages."  *LaserDynamics, Inc. v. Quanta Comput. USA, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).

21  The correct date "must relate to the time infringement occurred, and not be an after-the-fact

22  assessment."  *Id.*; *see also Oracle*, 765 F.3d at 1090 ("[W]e look to the expectations of the parties

23  at the time of the hypothetical negotiation in determining the hypothetical-license value.").  In the

24  copyright licensing context, infringement begins at the time the licensee exceeds the scope of the

25  license.  *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1156 (9th Cir. 2006),

26  *overruled on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *S.O.S.,*

27  *Inc. v. Payday, Inc.*, 886 F.2d 1081, 1089 (9th Cir. 1989).

28         Here, Malackowski does not give a ██████████████████████████████████

1  ███████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████ (Ray

3  Decl. Ex. A at 52.)  This is an inappropriate basis for ████████████ and Malackowski's

4  opinion should be excluded on this basis.

**B.   Malackowski Has No Basis for Calculating the Statutory Damages Contained in His Report.**

7  Malackowski is not a technical expert in this case, but his statutory damages calculation

8  depends on the answer to a technical question: ██████████████████████████████

9  ████████████████████████████████████████████████████ *See* 17 U.S.C.

10  § 1201(a)(1)(A).  Malackowski's answer ███████████████ (Ray Decl. Ex. A at 40, Fig.

11  13.)  But he has no basis to use that number and his opinions based on it should be excluded.

12  *Daubert*, 509 U.S. at 597 (1993) (the trial judge has the "task of ensuring that an expert's

13  testimony . . . rests on a reliable foundation").

**1.   Malackowski is not relying on his own non-existent technical expertise**

16  Malackowski is an expert on ██████████████████████████████████

17  ███████████████████████████████████████████████████████████████

18  (Ray Decl. Ex. A at 2.)  He has no expertise in ████████████████████████

19  ████████████ (*Id.*)  As such, he has no way of providing an expert opinion on ██████████

20  ████████████ *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (affirming

21  exclusion of expert witness testimony when expert did not have "the requisite 'knowledge, skill,

22  experience, training, or education' required by Rule 702").  To his credit, Malackowski admits

23  this.  During his deposition, Malackowski was asked whether he had an opinion on ████████

24  ███████████████████████████████████████████████████████████

25  █████████████ (Ray Decl. Ex. B at 170:2-7.)  He went on to say ████████████████

26  █████████████████████████████████████ (*Id.*; *see also id.* at 164:5-

27  165:15.)

28

Case No. 3:17-cv-00561-WHO
Ubiquiti Defendants' Motion to Exclude the Expert Testimony of Hasler and Malackowski
sf-3950071

11

1        **2.      Malackowski did not rely on any other expert witnesses in this case**

2        While Malackowski cannot rely on █████████████████████████████████

3    █████████████████████████████████ He testified ███████████████████████

4    █████████████████████ (*Id.* at 63:8-12.)  He also testified ████████████████

5    ██████████████████████████████ (*See id.* at 14:15- 22; 63:13-20.)  And

6    Synopsys' technical expert Dr. Stephen Edwards confirmed that ███████████████

7    ████████████ (*See* Ray Decl. Ex. G at 196:2-5.)  Despite that fact, Malackowski states in his

8    report that █████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████

10   ██████████████ (Ray Decl. Ex. A at 18.)

11       The only person Malackowski seems to have discussed ████████████████████

12   ██████ (Ray Decl. Ex. B at 154:25-155:8.)  But Kelly lacks the requisite knowledge to support

13   that the call-home data represents a circumvention.  (*See* Ray Decl. Ex. F at 183:14-185:6)  Kelly

14   is director of the license compliance program at Synopsys.  (*See id.* at 48:14-16.)  Kelly is not on

15   the software engineering team that implements the Synopsys License Key system (*see id.* at 73:5-

16   17; Ray Decl. Ex. H at 29:4-25), and he testified, "I won't pretend to be the expert" on call-home

17   data specification (Ray Decl. Ex. F at 183:17-18.).

18       **3.      The call-home data in no way speaks for itself**

19       To the extent Synopsys argues that ████████████████████████████████

20   ██████████████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████

22   ████████████████████████ (*See*, *e.g.*, Ray Decl. Ex. A at 17 n.68; *see* Dkt. No. 240, 241-

23   5; Ray Decl. Ex. B at 164:5-165:2.)

24       Malackowski's lack of knowledge about ██████████████████████████████

25   ██████████████████████ For example, he failed to notice that █████████████████

26   ██████████████████████████████████████████████████████████████ (*See*

27   Dkt. No. 253-20, 255-13 ¶¶ 194-201.)  Synopsys' technical expert Dr. Edwards, █████████

28   ████████████████████████████████████████████████████████████████████



1

2       (*See* Ray Decl. Ex. G at

3 128:18-2; *see also id.* at 134:16-135:4,  136:22-137:5; *see* Dkt. No. 253-16

4 .)  Indeed, Dr. Edwards admitted that

5      (*See* Ray Decl. Ex.

6 G at 116:20-117:2).

7       Dr. Edwards also confirmed that

8

9    (*See id.* at 82:9-15; *see also* Ray Decl. Ex. F at 193:13-194:1; *see* Dkt. No. 253-16

10

11

12

13      *See* 17 U.S.C. § 1201(a)(1)(A).

14

15

16      In fact,

17

18      (*See* Ray Decl. Ex.

19 G at 35:9-18; *see also id.* at 43:5-11 (explaining that

20

21      Synopsys does not own the copyright to     as a matter of law.  *See Design*

22 *Data Corp. v. Unigate Enter., Inc.*, 847 F.3d 1169, 1173 (9th Cir. 2017) (holding that user of

23 software who provides "lion's share" of creativity owns output of software); *Rearden LLC v. Walt*

24 *Disney Co.,* 293 F. Supp. 3d 963, 970 (N.D. Cal. 2018) (same).  Thus, Malackowski's

25 methodology      is unreliable.

26       Malackowski also fails to

27

28     *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-cv-1427 CAB (RBB), 2014

Case No. 3:17-cv-00561-WHO
Ubiquiti Defendants' Motion to Exclude the Expert Testimony of Hasler and Malackowski
sf-3950071

13

1   WL 12026065, at *6 (S.D. Cal. June 4, 2014) ("If the modification occurred in South Korea or in

2   another foreign nation, then the DMCA would have no application, because 'United States'

3   copyright laws have no application to extraterritorial infringement.'") (citing *Subafilms, Ltd. v.*

4   *MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994)).

5          Just as the Ninth Circuit held that the presumption against extraterritoriality, necessary to

6   avoid "unintended clashes between our laws and those of other nations," applied to the Copyright

7   Act, this Court should presume that the DMCA does not extend to wholly extraterritorial acts.

8   *See Subafilms*, 24 F.3d at 1097-98 (acting otherwise could "disrupt the international regime for

9   protecting intellectual property that Congress so recently described as essential"); *accord*

10  Synopsys' own witnesses confirm that ███████████████████████████████████████

11  ██████████████ (*See* Ray Decl. Ex. H at 272:19-23; Ray Decl. Ex. I at 485:9-21; *see also*

12  Ray Decl. Ex. H at 271:7-272:18; Ray Decl. Ex. I at 485:9-21; Ray Decl. Ex. J at 52:22-54:21;

13  Ray Decl. Ex. F at 329:12-15). ██████████████████████████████████

14  █████████████████████████

**4.      Malackowski may not perform a straight-line extrapolation of
unreliable data to calculate damages**

17         To calculate damages for ██████████████████████████████████████

18  ████████████████████████████████████████████████ (*See* Ray Decl. Ex. A

19  at 40-41.)  Not only is ██████████████████████████████████████████████

20  ███████████████████████████████ (*See id.*) ████████████████████████

21  ███████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████

23  ████████████████████████████████████████████ (*See* Ray

24  Decl. Ex. G at 303:20-25.)  Malackowski also ignores the fact that ████████████████████

25  ████████████████████████████████████████████████████████

26  (*See* Ray Decl. Ex. A at 40; Ray Decl. Ex. I at 400:11-401:21; Ray Decl. Ex. F at 235:11-236:10.)

27         Given Malackowski's lack of ████████████████████████████████████████

28  █████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████ and

3 must be excluded.  *Daubert*, 509 U.S. at 597 (1993) (the trial judge has the "task of ensuring that

4 an expert's testimony . . . rests on a reliable foundation").

## II.   HASLER'S TESTIMONY IS IRRELEVANT, PREJUDICIAL, AND INVADES TO PROVINCE OF THE JURY

Hasler's "opinions"—such as they are—should be excluded for at least four reasons.

They: (i) are wholly irrelevant and more prejudicial than probative; (ii) "invade[] the province of

the jury," *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012); (iii) are on legal

matters; and (iv) lack a foundation.

### 1.   The opinions are irrelevant and more prejudicial than probative

Hasler's opinions regarding alleged deficiencies in Ubiquiti's handling of Synopsys'

claims of software piracy have *no* relevance to the claims and defenses in this case.  This case

concerns allegations by Synopsys that a small group of UBNT employees in Taiwan fraudulently

acquired copies of Synopsys' software for evaluation purposes, and that they subsequently used

that software with a counterfeit license key.  (*See* Dkt. No. 211.)  Because those allegations have

*nothing* to do with how Ubiquiti trained its employees on its Code and enforced its Code, or how

much Ubiquiti's Board of Directors knew at any given time about the allegations, Hasler's

opinions are irrelevant and should be excluded.  *Perez v. Seafood Peddler of San Rafael, Inc.*, No.

12-CV-00116-WHO, 2014 WL 2810144, at *4 (N.D. Cal. June 20, 2014) (Orrick, J.) ("'Expert

testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'")

(quoting *Daubert*, 509 U.S. at 591).

Further, instead of offering expert testimony that will "assist the trier of fact to understand

the evidence or to determine a fact in issue," Synopsys is using Hasler for a smear campaign

against Ubiquiti with unsupported insinuations that Ubiquiti's executives and Directors may have

violated their fiduciary duties.  *Daubert*, 509 U.S. at 591.  Such testimony will unfairly prejudice

Ubiquiti because the jury may believe that Ubiquiti should be punished for conduct that took

place long after the alleged unlicensed use of Synopsys software that is the basis for this case.

1    Even if the testimony were relevant—which it is not—it is well settled that "[o]therwise

2    admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is

3    substantially outweighed by the danger of unfair prejudice." *Jinro Am. Inc. v. Secure*

4    *Investments, Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001).  That is the case here.  Hasler's opinions

5    should be excluded because they are both irrelevant and prejudicial.

6                    **2.      Hasler seeks to invade the province of the jury**

7            Expert testimony "should be excluded if it … invades the province of the jury."

8    *Lukashov*, 694 F.3d at 1116 (citation and internal quotation marks omitted).  "Where expert

9    testimony 'simply rehash[es] otherwise admissible evidence about which [the expert] has no

10   personal knowledge, such evidence—taken on its own—is inadmissible.'" *Fujifilm Corp. v.*

11   *Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20,

12   2015) (Orrick, J.) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469

13   (S.D.N.Y. 2005)); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("Whether the officers

14   and directors breached their fiduciary duties is an issue for the trier of fact to decide.  It is not for

15   [the expert] to tell the trier of fact what to decide.  Therefore, the trial court did not err in finding

16   [the expert]'s testimony inadmissible.").  "One of the worst abuses in civil litigation is the

17   attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who

18   then 'relies' on the information to express an opinion." *Therasense, Inc. v. Becton, Dickinson &*

19   *Co.*, No. C 04-02123-WHA, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008).

20           The regurgitation of spoon-fed facts is, in fact, all that Hasler does—and this is not the

21   first time.  In *Biotechnology*, nearly all of Hasler's expert opinion was excluded because he

22   sought to do the jury's job for them.  *Biotechnology*, 2015 WL 138168, at *2.  As Judge Alsup

23   found:

24                    The Hasler Report is littered with the expert's summaries of fact witness
                    testimony and opinions on whether there is sufficient evidence of certain
25                   occurrences.  The Hasler report also impermissibly opines on whether
                    defendants' alleged actions comported with the law.  The report begins
26                   most of its sections with paragraphs detailing the industry standard for
                    certain conduct.  This is what expert testimony should look like.  The
27                   Hasler report then goes too far in applying these standards of care to the
                    case at hand and enters the realm of the jury.

28

1    *Id.* at *3.

2    As Judge Alsup explained, "where the expert does little more than read depositions and

3    deposition exhibits and other such materials, and then proposes to render findings to the jury as to

4    what happened, we should draw the line and bar such testimony." *Id.* at *2. "The retained

5    witness, of course, has no personal knowledge of what really occurred and should never be

6    allowed to divine for the jury the truth of what actually occurred or what the mental state of an

7    actor was." *Id.* Allowing an "expert" to invade the province of the jury like this is problematic as

8    these "experts invariably try to tell the jury whose version is truthful." *Id.* "This is usually done

9    through artful use of the word 'understanding,' as in 'it is my understanding that there is no

10   evidence that' followed by a point on trial." *Id.* "[E]xperts should not be vouching for whose

11   fact version is more credible." *Id.*; *see also S.E.C. v. Daifotis*, No. C 11- 00137 WHA, 2012 WL

12   2051193, at *2 (N.D. Cal. June 7, 2012) (same).

13   Hasler in fact admitted at his deposition that his opinion is largely confined to stating what

14   "actually happened" based upon his review of documents and deposition testimony provided to

15   him by Synopsys' counsel. For example, Hasler testified as follows in connection with his

16   opinion on whether Ubiquiti complied the Code:

17       Q:    You were trying to figure out what *actually happened* in terms of
                       Ubiquiti's implementation and enforcement of its code of conduct?

18       A:    Yes.

19       Q:    And then you measured what actually happened against what the
20                     code of conduct said should happen; is that correct?

21       Q:    Right.

22   (Ray Decl. Ex. D at 79:13-23 (emphasis added).)

23   Hasler uses the same approach for both opinions that he offers. When asked if he was

24   "comparing what you believe actually happened at Ubiquiti against its code of conduct?" He

25   responded: "That's right." (*Id.* at 145:24-146:6.) When asked if he was "comparing what you

26   believe actually happened at Ubiquiti against governance practices relating to investigations,"

27   Hasler responded: "That's correct." (*Id.* at 146:7-14.) Hasler repeatedly testified that his opinion

28   was largely confined to what Ubiquiti actually did. "My opinion just focuses, as we've said

numerous times, on whether they implemented and executed their code." (*Id.* at 82:17-19.)  When

asked: "So you were comparing what would normally be expected from understanding the

standards to what *actually occurred* at Ubiquiti?," he answered "As I understood it."  (*Id.* at

144:3-11 (emphasis added).)

Not surprisingly, Hasler has *no* personal knowledge of any facts underlying his opinion:
Q: "So you don't have any personal knowledge of what happened at Ubiquiti; correct?  A:  No.
The analysis is based on the information I was given, again, depositions, forms, e-mails, et cetera.
That's all I was able to analyze."  (*Id.* at 111:14-19; *id.* at 147:1-11 ("I relied on the materials that
I had access to.  You earlier pointed out that I may or may not know what actually happened.  I'm
relying on the record that was provided to me."); *id.* at 186:18-25 ("To my knowledge, based on
the materials I was able to see, there's no indication that there was a designated ethics officer.");
*id.* at 187:10-12 ("Q: How do you know that? A: There's no evidence of it in any of the
material."); *id.* at 244:4-20 ("I'm saying that's what I concluded from the documents I read."); *id.*
at 258:7-13 ("I only was able to look at the documents that were available, and they're
disclosed.").)  In fact, Hasler explicitly testified that the *entirety* of *paragraphs 33 through 70 and
78 through 112* of his expert report were simply a summary of his interpretation of facts for
which he had no personal knowledge.  (*Id.* at 94:1-9; 95:1-111:19; 134:8-140:19.)

Long after his deposition was complete, apparently realizing that his admissions would
effectively bar his testimony, Hasler submitted an errata in which he changes his admissions to
denials.  (Ray Decl. Ex. E at 2-3.)  Hasler states in his errata that he "[m]isunderstood" the
question, and now states that he is discussing a "corporate governance standard or practice,"
rather than just summarizing his take on the facts.  (*Id.*)  What this new-found standard or practice
is, he does not say.  Nor could he.  The record in his deposition and his expert report is clear:
Hasler is merely interpreting facts and no post hoc explanation about a "misunderstanding"
changes that.

In fact, Synopsys used Hasler to do exactly what Judge Alsup previously cautioned
against: smuggling in facts through an expert "through artful use of the word 'understanding,' as
in 'it is my understanding that there is no evidence that' followed by a point on trial."

1    *Biotechnology*, 2015 WL 138168, at *2.  It is as if Judge Alsup read Hasler's deposition transcript

2    in this case.  (*See*, *e.g.*, Ray Decl. Ex. D at 25:25-26:5 ("And ***my understanding*** from that

3    testimony . . ."); *id.* at 62:11-16 ("I'm certainly aware that some state's laws are quite relevant.

4    California's, ***I understand*** from lawyers, are quite relevant."); *id.* at 227:18-19 ("***My***

5    ***understanding*** was it was -- it was not used by the same group."); *id.* at 228:12-14 ("***My***

6    ***understanding*** was it was another group"); *id.* at 228:17-22 ("***my understanding*** is that software

7    development was done at Ubiquiti by project teams"); *id.* at 242:2-4 ("***I understand*** that that was

8    his first step."); *id.* at 245:21-23 ("***my understanding*** is he wasn't his supervisor"); *id.* at 263:1-9

9    ("***my understanding*** was he was the direct supervisor"); *id.* at 280:20-281:1 ("***my understanding***

10   from what I was able to see was that the audit committee and the board were not informed of this

11   matter"); *id.* at 287:7-11 ("they weren't informed is ***my understanding***").

12          As if this regurgitation of facts based upon Synopsys' spoon-feeding of documents is not

13   enough, Hasler even makes *credibility* determinations.  When presented with "conflicting

14   testimony" between three Ubiquiti employees, Hasler decided which employee's testimony was

15   "more likely to be correct" and relies on it in forming his "opinion" as to what actually happened

16   at Ubiquiti.  (*See* Ray Decl. Ex. C at 22 n. 88; Ray Decl. Ex. D at 293:7-294:6.)  This is entirely

17   improper.  *See Biotechnology*, 2015 WL 138168, at *2 ("[E]xperts should not be vouching for

18   whose fact version is more credible.").

19          The "expert" analysis Hasler offers here is precisely the sort that was excluded in

20   *Biotechnology*.  This Court should do the same.

21          **3.      Opinions regarding supposed breaches of fiduciary duties should be**
                      **excluded**

22

23          Hasler repeatedly testified in response to questions about corporate fiduciary duties that he

24   was "not a lawyer" and was not "making any sort of a legal opinion."  (*See*, *e.g.*, Ray Decl. Ex. D

25   at 64:17-65:15.)  This lack of expertise, however, did not stop him from opining that the "[d]uty

26   of care is of special importance in this case: it would dictate that Ubiquiti's Board should have

27   been informed about the ITCA Notification."  (Ray Decl. Ex. C at ¶ 32.)  Despite his opinion in

28   his report as to what the duty of care requires, Hasler subsequently testified at his deposition that

1    he included this discussion of fiduciary duties only as "background."  (Ray Decl. Ex. D at 35:4-6;

2    44:17-45:7.)

3         To the extent that Hasler seeks to opine on fiduciary duties and whether Ubiquiti's

4    officers and Directors abided by them, those opinions should be excluded because "instructing the

5    jury as to the applicable law 'is the distinct and exclusive province' of the court."  *Hangarter v.*

6    *Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also RSI Corp. v.*

7    *Int'l Bus. Machines Corp.*, No. C-08-03414 RMW, 2013 WL 1087468, at *4 (N.D. Cal. Mar. 13,

8    2013) (striking expert's entire opinion because it was "mostly legal opinion and an unhelpful

9    restatement of the facts as he sees them").

10         **4.    Hasler's opinions lack a sufficiently reliable foundation**

11         Judge Alsup found in *Biotechnology* that the industry standards articulated by Hasler were

12    the *only* topic on which he could testify, but Hasler did *not* even provide industry standards here.

13    *Biotechnology*, 2015 WL 138168, at *2.  Other than discussions of legal duties that Hasler later

14    testified are "background," Hasler cites to a single 12-year old treatise for the proposition that it is

15    a "best practice" to hire an outside investigator.[4]  (*See* Ray Decl. Ex. K at SNPS0061206-07.)

16    Beyond this, Hasler provides no other industry standards with which the Court or the jury can

17    assess his opinions.  Rather, he makes a series of conclusions on what he would have

18    "expect[ed]" to have happened in this case, and how Ubiquiti failed to live up to this unarticulated

19    standard.  (*See, e.g.,* Ray Decl. Ex. C ¶¶ 16, 71-73, 75-76.)[5]

20         Indeed, when asked to point to where in his report he had articulated "governance

21    standards" or "normal governance processes," Hasler repeatedly declined to do so, explaining that

22    the topic was so enormous as to make that an impracticable task.  (Ray Decl. Ex. D at 31:12-22

23    _____

24    [4] Tellingly, Hasler's report omits that the "best practices" tip is offered in the context of
     an anticipated government investigation, not a complaint from a third party.  (Ray Decl. Ex. D at
25    273:1-275:18.)

26    [5] Other than his copious cites to the factual record, the single other citation that Hasler
     provides in support of any industry standard is an article on providing sexual harassment training
27    in compliance with California employment law—which he applies by analogy to his conclusion
     that in-person training for a code of ethics is something that a company should consider.  (Ray
28    Decl. Ex. C ¶ 32.)

1    ("Well, there are books and books and books and books written about them.  If you want to talk

2    about all of them, it would take quite a while."); *id.* at 34:13-17 ("The governance literature is

3    massive.  There's—every law professor writes about it.  There's—the ABA provides all sorts of

4    direction to nonlawyers about what it means.  There's textbooks written.  It's massive."); *id.* at

5    49:23-50:2 ("The entire body of literature, which I have read and become knowledgeable on, is

6    part of what I'm applying in forming an opinion.").)  Yet, despite his assertion that there was a

7    "massive" amount of literature to support his opinions, he does not provide any.

8           The unexplained basis for the opinions in Hasler's report, and his inability to provide them

9    even at his deposition, present a situation similar to what the Court confronted in *Lassalle v.*

10   *McNeilus Truck & Mfg., Inc.*, where the Court concluded that errors in the expert's report,

11   together with inconsistencies in his deposition testimony, together indicated "a lack of reliable

12   reasoning and methodologies."  No. 16-CV-00766-WHO, 2017 WL 3115141, at *5 (N.D. Cal.

13   July 21, 2017).  The situation is no different here where Hasler even managed to opine as to a

14   *wrong* standard of care owed by a director to a company: "A director or executive is required to

15   exercise the same degree of care in the company's business as would be expected of a party to an

16   arm's-length transaction."  (Ray Decl. Ex. C ¶ 31; Ray Decl. Ex. D at 89:18-23.)

17          Because there is no established and objective basis for Hasler's "governance standards,"

18   his testimony cannot assist the trier of fact and should be excluded.

19   **III.   CONCLUSION**

20          This Court should exclude the testimony of Malackowski and Hasler because their expert

21   opinions are unreliable, irrelevant, unduly speculative, and invade the province of the jury.

22

23

24

25

26

27

28

Dated:  October 11, 2018

JENNIFER LEE TAYLOR
WENDY J. RAY
STACEY M. SPRENKEL
JOYCE LIOU
AMANDA D. PHILLIPS
MORRISON & FOERSTER LLP

By:   */s/ Jennifer Lee Taylor*
JENNIFER LEE TAYLOR

Attorneys for Defendants
UBIQUITI NETWORKS, INC. AND
UBIQUITI NETWORKS
INTERNATIONAL LIMITED

Case No. 3:17-cv-00561-WHO
Ubiquiti Defendants' Motion to Exclude the Expert Testimony of Hasler and Malackowski
sf-3950071

22