JENNIFER LEE TAYLOR (SBN 161368)
JTaylor@mofo.com
STACEY M. SPRENKEL (SBN 241689)
SSprenkel@mofo.com
JOYCE LIOU (SBN 277720)
JLiou@mofo.com
AMANDA D. PHILLIPS (SBN 305614)
APhillips@mofo.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

*Attorneys for Defendants/Counterdefendants*
UBIQUITI NETWORKS INC. and UBIQUITI
NETWORKS INTERNATIONAL LIMITED

WENDY J. RAY (SBN 226269)
WRay@mofo.com

MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>UBIQUITI NETWORKS, INC., UBIQUITI NETWORKS INTERNATIONAL LIMITED, CHING-HAN TSAI, and DOES 1-20, inclusive<br><br>               Defendants. | Case No. 3:17-cv-00561-WHO (LB)<br><br>**DEFENDANTS UBIQUITI NETWORKS, INC. AND UBIQUITI NETWORKS INTERNATIONAL LIMITED'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 26, 2018<br>Time: 3:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Honorable William H. Orrick |
| UBIQUITI NETWORKS, INC.,<br><br>               Counterclaimant,<br><br>    v.<br><br>SYNOPSYS, INC.,<br><br>               Counterdefendant. | |

# TABLE OF CONTENTS

**Page**

I.   SYNOPSYS HAS NOT RAISED ANY MATERIAL FACTUAL DISPUTE AS TO ITS DMCA CLAIMS (CLAIMS 1-3) OR UBIQUITI'S DMCA COUNTERCLAIM ........................................................................................................ 1

    A.   Synopsys Proffers No Evidence that Its License Key System Blocks or Revokes Access Under § 1201(a) ................................................................ 1

    B.   Synopsys Proffers No Evidence that Its License Key System Limits Exercise of Copyright Rights Under § 1201(b) ......................................... 2

    C.   Summary Judgment Should Be Granted on §§ 1201(a)(2) and (b)(1) Trafficking Claims ................................................................................. 2

    D.   Summary Judgment Should Be Granted on the Declaratory Relief Claim ............ 3

    E.   Summary Judgment on the DMCA Claims Should Be Granted ...................... 4

        1.   The DMCA Does Not Apply to Acts that Occurred Entirely in Taiwan ......................................................................................... 4

        2.   There Is No Evidence of Which of the 39, 178 Call-Home Entries Involve Violations that Occurred in the United States .............................. 5

    F.   Synopsys Cannot Establish a DMCA Claim Based on Simv ...................... 8

II.   SYNOPSYS HAS NOT RAISED A MATERIAL FACTUAL DISPUTE WITH RESPECT TO ITS 18 U.S.C. § 2318 CLAIM (CLAIM 4) ...................................... 8

    A.   Synopsys Offers No Evidence that the License Keys Function as Labels ............ 8

    B.   Synopsys Offers No Evidence that the License Keys Are Illicit Labels ............... 9

    C.   Consumer Confusion Is Necessary for a § 2318 Violation .............................. 10

    D.   Synopsys Proffers No Evidence that Defendants Trafficked in Labels ............... 11

III.   SYNOPSYS HAS NOT RAISED A MATERIAL FACTUAL DISPUTE WITH RESPECT TO ITS 18 U.S.C. § 1962(C) CLAIM (CLAIM 6) ...................................... 11

    A.   Synopsys Proffers No Evidence of the Existence of a "Common Purpose" ......... 13

    B.   Synopsys Proffers No Evidence that Ubiquiti or UNIL Managed the Affairs of an Enterprise ............................................................................... 14

    C.   Synopsys Proffers No Evidence of Any RICO Predicate Acts ........................... 14

        1.   There Is No Evidence of Fraud with Access Devices .............................. 14

        2.   The Alleged Copyright Infringement Cannot Serve as a Predicate Act ................................................................................................. 15

IV.   SYNOPSYS HAS NOT RAISED A FACTUAL DISPUTE WITH RESPECT TO ITS 18 U.S.C. § 1962(D) RICO CONSPIRACY CLAIM .................................... 15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4   *Adobe Systems Inc. v. Feather,*
        895 F. Supp. 2d 297 (D. Conn. 2012) ....................................................................................2
5
    *Apple, Inc. v. Psystar Corp.,*
6       673 F. Supp. 2d 931 (N.D. Cal. 2009) ..................................................................................1

7   *Brady v. Dairy Fresh Prods. Co.,*
        974 F.2d 1149 (9th Cir. 1992)............................................................................................14
8
    *Cedric Kushner Promotions, Ltd. v. King,*
9       533 U.S. 158 (2001).....................................................................................................11, 12

10  *Chagby v. Target Corp.,*
        358 F. App'x 805 (9th Cir. 2009) .......................................................................................12
11
    *Cleopatra Records, Inc. v. Inspired Studios, Inc.,*
12      No. LA CV 15-00915 JAK, 2015 WL 12426147 (C.D. Cal. Oct. 8, 2015) .....................9, 10

13  *Dish Network, L.L.C. v. Rama,*
        No. 14-cv-04847-WHO, 2015 WL 217135 (N.D. Cal. Jan. 14, 2015)...................................8
14
    *Ellis v. J.P. Morgan Chase & Co.,*
15      No. 12-cv-3897-YGR, 2015 WL 78190 (N.D. Cal. Jan. 6, 2015) ........................................14

16  *Haddley v. Next Chapter Tech., Inc.,*
        No. 16-1960, 2018 WL 4623065 (D. Minn. Sept. 26, 2018)................................................2
17
    *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.,*
18      601 F. Supp. 2d 1201 (S.D. Cal. 2009)...............................................................................13

19  *Kenebrew v. Conn. Gen. Life Ins. Co.,*
        882 F. Supp. 749 (N.D. Ill. 1995) ........................................................................................7
20
    *L.A. News Serv. v. Reuters Television Int'l, Ltd.,*
21      149 F.3d 987 (9th Cir. 1998).................................................................................................6

22  *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,*
        431 F.3d 353 (9th Cir. 2005)..............................................................................................12
23
    *MDY Indus., LLC v. Blizzard Entm't, Inc.,*
24      629 F.3d 928 (9th Cir. 2010)................................................................................................6

25  *MH Pillars Ltd. v. Realini,*
        No. 15-cv-01383-PJH, 2018 WL 1184847 (N.D. Cal. Mar. 7, 2018)...................................12
26
    *Microsoft Corporation v. My Choice Software, LLC,*
27      No. SA CV 16-2187-DOC, 2017 WL 5643210 (C.D. Cal. Oct. 10, 2017) .............................9

28

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   926 F. Supp. 2d 1143 (C.D. Cal. 2013) ...................................................................12

*Nintendo of America Inc. v. Bung Enterprises, Ltd.*,
   No. 97-8511-GAF, 1999 WL 34975007 (C.D. Cal. Dec. 15, 1999).........................................1

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007)...............................................................................13, 14

*Oracle USA, Inc. v. SAP AG*,
   264 F.R.D. 541 (N.D. Cal. 2009) .........................................................................3

*Phoenix Techs., Ltd. v. VMware, Inc.*,
   No. 15-cv-01414-HSG, 2017 WL 1957042 (N.D. Cal. May 11, 2017)....................................3

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
   No. 5:11-cv-01860-ODW, 2012 WL 1669726 (C.D. Cal. May 14, 2012) ..............................14

*RJR Nabisco v. European Community*,
   136 S. Ct. 2090 (2016) .......................................................................................5

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
   No. 15-CV-01720-LHK, 2016 WL 949004 (N.D. Cal., Mar. 14, 2016) .................................3

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992)...........................................................................12

*Shropshire v. Canning*,
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) ...............................................................6

*Sony Computer Enter. America, Inc. v. Divineo, Inc.*,
   457 F. Supp. 2d 957 (N.D. Cal. 2006) ..................................................................2

*Stewart v. Wachowski*,
   No. CV 03-2873 MMM, 2005 WL 6184235 (C.D. Cal. June 14, 2005)...............................15

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
   24 F.3d 1088 (9th Cir. 1994)...........................................................................4, 5

*U.S. v. Akram*,
   165 F.3d 452 (6th Cir. 1999)...........................................................................10

*U.S. v. Bailey*,
   41 F.3d 413 (9th Cir. 1994)............................................................................15

*U.S. v. Bao*,
   189 F.3d 860 (9th Cir. 1999)...........................................................................10

*U.S. v. Blinder*,
   10 F.3d 1468 (9th Cir. 1993)...........................................................................13

*U.S. v. Feldman*,
   853 F.2d 648 (9th Cir. 1988)...........................................................................13

*U.S. v. Pepe*,
    895 F.3d 679 (9th Cir. 2018).................................................................................................7

*U.S. v. Teh*,
    535 F.3d 511 (6th Cir. 2008)...............................................................................................10

*U.S. v. Ubaldo*,
    859 F.3d 690 (9th Cir. 2017).................................................................................................4

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)...................................................................................1

*VBConversions LLC v. Gulf Coast Ventures, Inc.*,
    CV 12-8265 JGB (AGRx), 2016 U.S. Dist. LEXIS 105760
    (C.D. Cal. Aug. 10, 2016).....................................................................................................2

*Watts v. Allstate Indem. Co.*,
    No. CIV. S-08-1877 LKK/GGH, 2009 WL 1905047 (E.D. Cal. June 30, 2009)...................12

*WesternGeco LLC v. ION Geophysical Corp.*,
    138 S. Ct. 2129 (2018).........................................................................................................6

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001)...............................................................................................2

**Statutes**

17 U.S.C. § 106....................................................................................................................4

17 U.S.C. § 1201 .......................................................................................................... *passim*

18 U.S.C. § 1961....................................................................................................................5

18 U.S.C. § 1962.......................................................................................................11, 14, 15

18 U.S.C. § 1964....................................................................................................................5

18 U.S.C. § 2318............................................................................................................8, 9, 10

35 U.S.C. § 271....................................................................................................................7

35 U.S.C. § 284....................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 37(c)(1).....................................................................................................2, 3

1    Synopsys has not raised material factual disputes despite its voluminous filing.  These are

2    the undisputed facts and legal deficiencies:  (1) Synopsys' license key system does not control

3    access or protect copyright rights; (2) Defendants' acts do not constitute trafficking; (3) use of

4    software is not a circumvention; (4) the DMCA is not an extraterritorial statute; and (5) Synopsys

5    does not own copyright in Defendants' output; (6) Synopsys' license keys do not constitute

6    labels; and (7) the alleged RICO enterprise consists only of Ubiquiti's corporate family, which is

7    fatal to the RICO claim.  Accordingly, the Court should grant summary judgment.

8    **I.      SYNOPSYS HAS NOT RAISED ANY MATERIAL FACTUAL DISPUTE AS TO ITS DMCA CLAIMS (CLAIMS 1-3) OR UBIQUITI'S DMCA COUNTERCLAIM**

9          **A.      Synopsys Proffers No Evidence that Its License Key System Blocks or Revokes Access Under § 1201(a)**

10   Synopsys' thousands of pages of exhibits and long technical explanations do not create a

11   material factual dispute because the key facts are *not* in dispute.[1]  The Synopsys license key

12   system at issue ████████████████████████████████████████████████████████████████

13   ██████████████████████████████ (Mot. at 5-6.)  Synopsys had the option of having the

14   license key system revoke access ████████████████████████████████████████ (*Id.*)

15   That Synopsys now claims it chose ████████████████████████████████████████████████

16   ██████████ (Mot. at 6) ████████████████████████████ (Mot. at 6) is of no import.  What

17   matters is that the license key system at issue does *not* control access.  (Opp. at 6 ("█████████

18   ██████████████████████████████████████")).  If it did, Synopsys would not need to

19   ████████████████████████████ (*Id.*)

20   None of Synopsys' cases supports its position that a system that intentionally *allows*

21   access and then calls home constitutes an effective access control.[2]  In *Nintendo of America Inc.*

22   *v. Bung Enterprises, Ltd.*, No. 97-8511-GAF (VAPx), 1999 WL 34975007 (C.D. Cal. Dec. 15,

---

[1] Synopsys cites to no relevant evidence to dispute even the claimed disputed facts.  (ECF 293 at 6-7.) First, it cites testimony about *one* employee's work, which does not address *why* the license key system was designed as it was.  (*Id.*)  Second, it cites to its expert report, which contradicts *its own fact witness*, who testified that ██████████████████ (*See* Mot. at 10; ECF 253-10 at 142:19-143:10, 145:17-146:9.)  That report is not only conclusory and speculative, it also addresses a different issue ████████ ████████████████████████ (*See* Opp. at 8; ECF 295-1 (Ex. 5) at ¶ 20.)  It is not relevant.

In *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000), the system did control access, albeit weakly, and *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 942 (N.D. Cal. 2009), addressed the availability of the encryption key online, not efficacy of the technological measure.

1

1   1999), and *Sony Computer Enter. America, Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 959 (N.D.

2   Cal. 2006), systems that *prevented* access—unlike here—were held to be effective technological

3   measures.  And in *VBConversions LLC v. Gulf Coast Ventures, Inc.*, CV 12-8265 JGB (AGRx),

4   2016 U.S. Dist. LEXIS 105760 (C.D. Cal. Aug. 10, 2016), and *Adobe Systems Inc. v. Feather*,

5   895 F. Supp. 2d 297, 301 (D. Conn. 2012), facts were "deemed admitted" due to defendants'

6   default.  In *Haddley v. Next Chapter Tech., Inc.*, No. 16-1960 (DWF/LIB), 2018 WL 4623065

7   (D. Minn. Sept. 26, 2018), the court denied summary judgment because of disputed facts as to

8   circumvention of technological measures.  The court did not address efficacy.  Because it does

9   not *block* or *revoke* access, the Synopsys license key system is not an effective technological

10  measure under the DMCA.  17 U.S.C. §§ 1201(a), 1201(b).

        **B.**      **Synopsys Proffers No Evidence that Its License Key System Limits Exercise of Copyright Rights Under § 1201(b)**

12        Synopsys similarly cites no evidence that its license key system limits the exercise of any

13  *copyright* rights.  Instead, it asserts that it prevents copying—by preventing access.  (Opp. at 8.)

14  But this is not what § 1201(b) is intended to address.  (Mot. at 6 and cases cited.)  Accordingly,

15  summary judgment should be granted for Ubiquiti and UNIL on Synopsys' § 1201(b) claim.

        **C.**      **Summary Judgment Should Be Granted on §§ 1201(a)(2) and (b)(1) Trafficking Claims[3]**

17        Although Synopsys identified only one theory of trafficking—"providing" counterfeit

18  license keys among Defendants—in response to two interrogatories seeking *all* facts supporting

19  such claims (ECF 253-17 at 10, 13), it now refers to theories of "manufacturing" and

20  "importing."  It is clear that it *cannot* rely on such undisclosed theories to oppose Ubiquiti's

21  motion.[4]  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information  . . . as required

22  by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a

23  motion . . . unless the failure was substantially justified or is harmless."); *Yeti by Molly Ltd. v.*

24  *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (preclusion of evidence under

---

       [3] Synopsys' claim that the Order on Ubiquiti and UNIL's motion to dismiss is tantamount to a ruling on this motion (Opp. at 8-9) is misplaced as the Court explicitly noted that "Ubiquiti and UNIL may argue this issue again on summary judgment."  (ECF 70 at 14-15, n.5.)

       [4] Synopsys claims that it "reserved" rights in its interrogatory responses to present expert testimony on trafficking.  (Opp. at 9 n.2.)  There is no such "reservation."  (ECF 253-17.)

1  Rule 37(c)(1) is "automatic" unless an exception applies); *Phoenix Techs., Ltd. v. VMware,*

2  *Inc.*, No. 15-cv-01414-HSG, 2017 WL 1957042, at *8 (N.D. Cal. May 11, 2017) (precluding

3  evidence and argument due to failure to disclose theory in interrogatory responses); *Oracle*

4  *USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009) (excluding evidence stemming

5  from theories not asserted in discovery).

6      With respect to its "providing" theory, Synopsys fails to create a material factual dispute

7  as to the missing "to another" element, which it concedes is required for a trafficking claim.[5]

8  (Mot. at 7-8; 293 at 8.)  The indisputable evidence is that no technology was made available *to*

9  *another*.  UNIL is a wholly owned subsidiary of Ubiquiti, and UNIL's sole member is Ubiquiti

10  CEO, Robert Pera.  (ECF 253-2, 253-28.)  The "arms-length" testimony that Synopsys cites is

11  simply that the "███████████████████████████████████████████████████████

12  ████████████████████████████████████████" (ECF 295-2 (Ex. 75) at 51:1-6.)

13  Ubiquiti's corporate representative further explained that "██████████████████████

14  ████████████████████████████████████████████████████████████████████

15  ████████████████" (*Id.* at 52:2-14.)  Synopsys also cites to an R&D Agreement between

16  Ubiquiti and UNIL and testimony regarding the same (*id.* at Exs. 68 and 77), which do nothing

17  to dispute the fact the Ubiquiti and UNIL are not distinct corporate entities.  And as before,

18  "Synopsys cites no cases showing that the statute's definition of trafficking extends to a

19  conspiracy where the labels were exchanged *only* to aid another defendant's use of a

20  copyrighted product."  (ECF 70 at 17.)

21      **D.    Summary Judgment Should Be Granted on the Declaratory Relief Claim**

22      Rather than substantively respond on the declaratory relief claim, Synopsys asserts it

23  was abandoned—which is not true (ECF 290-4 at 15-20)—and that it is without merit.  But it

24  does no more than refer to other sections of its brief, which do not address the issue presented in

25  the declaratory relief claim—that ███████████████████████████████ is not

---

[5] The one trademark case cited by Synopsys is inapposite because "trafficking" in that case referred to an assignment of an intent-to-use trademark application without an associated business. *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 949004, at *14 (N.D. Cal., Mar. 14, 2016). Notably, Synopsys does not attempt to distinguish any of the §§ 1201(a)(2) and (b)(1) cases requiring the "to another" element that Ubiquiti cites.

a circumvention of a technological measure under the DMCA.  (Mot. at 10-11.)  Summary

judgment on the declaratory judgment claim should be granted as a matter of law.

### E.    Summary Judgment on the DMCA Claims Should Be Granted

#### 1.    The DMCA Does Not Apply to Acts that Occurred Entirely in Taiwan

Synopsys has failed to point to any evidence of Congress' clear intent to apply 17 U.S.C.

§ 1201(a)(1) extraterritorially.  Whether an "import" violation of 17 U.S.C. §§ 1201(a)(2) and

(b)(1) implicates conduct outside the U.S. is irrelevant to § 1201(a)(1), which prohibits the

circumvention of a technological measure, and to the issue of whether the DMCA applies to acts

that occur *entirely* beyond U.S. borders.  Synopsys cites *U.S. v. Ubaldo*, 859 F.3d 690, 700 (9th

Cir. 2017), to argue that extraterritoriality applies to an entire statute when Congress specifies an

extraterritorial application, but the Ninth Circuit rejected this construction for a similar "import"

prohibition under the Copyright Act: "Had Congress been inclined to overturn the preexisting

doctrine that infringing acts that take place wholly outside the United States are not actionable

under the Copyright Act, it knew how to do so" when it "chose in 1976 to expand one specific

'extraterritorial' application of the Act."  *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d

1088, 1096 (9th Cir. 1994).  The presumption against extraterritoriality, "far from being

overcome here," is actually "fortified by the language of [the] statute," which does not specify

other DMCA violations that involve conduct outside the United States.  *Id.*

Synopsys' central argument that *Subafilms* and other decisions based on the Copyright

Act are inapposite because the DMCA "is a distinct statute that implements different treaties"

ignores the latter's legislative history.  (Opp. at n.5.)  The DMCA was enacted as an amendment

*to the* Copyright Act (implemented earlier based on the Berne Convention), and provided an anti-

circumvention right in addition to the rights under 17 U.S.C. § 106.[6]  Synopsys cites narrow

---

[6] *See* S. Rep. No. 105-190, at 2 ("Title I will implement the new World Intellectual Property Organization (WIPO) Copyright Treaty and the WIPO Performances and Phonograms Treaty, thereby bringing *U.S. copyright law* squarely into the digital age and setting a marker for other nations who must also implement these treaties.") (emphasis added); *see also* Melville B. Nimmer and David Nimmer, 4 *Nimmer on Copyright* § 12A.03 (2018) ("The WIPO Copyright and Performances and Phonograms Treaties Implementation Act of 1998 adds Chapter 12 *to the* Copyright Act.  The primary component of that chapter—first not only in order and length, but in importance as well—is Section 1201.  In particular, it establishes a framework that prohibits the unauthorized circumvention of those measures.") (emphasis added); *accord* H. R. Rep. No. 105-551, at 10 ("A new 'Section 1201' *to the* Copyright Act is required by both WIPO Treaties to make it unlawful to engage in such activity.") (emphasis added).

1  legislative excerpts to argue that "its references to international piracy" reflect Congress' intent to

2  apply the DMCA "abroad," unlike the Copyright Act.  (Opp. at 11.)  But the Judiciary

3  Committee's Report states clearly that this protection of rights "abroad" is based only on a

4  principle of national treatment—which implicates the rule of territoriality, *Subfilms*, 24 F.3d at

5  1097—with other signatories of the WIPO treaties:

> The importance of the treaties to the protection of American copyrighted works
> abroad cannot be overestimated.  The treaties, as well as the Berne Convention, are
> based on the principle of national treatment; that is, that ***adhering countries are
> obliged to grant the same protection to foreign works that they grant to domestic
> works***.  Even more importantly, the Berne Convention and the treaties set minimum
> standards of protection.  Thus, *the promise of the treaties* is that, in an increasing
> global digital marketplace, U.S. copyright owners will be able to rely upon strong,
> nondiscriminatory copyright protection in *most of the countries* of the world.

10  S. Rep. No. 105-190, at 10 (1998) (emphasis added).  Given Congress' intent to rely on protection

11  abroad only through the principle of national treatment, a ruling that the DMCA applies to acts

12  that occurred entirely in Taiwan is a clearly impermissible extraterritorial application.  This is no

13  small matter because Taiwan is not a signatory to the WIPO treaties and does not benefit

14  reciprocally from such an extraterritorial application, which may risk conflict with Taiwan law.[7]

15      To the extent Synopsys relies on *RJR Nabisco v. European Community*, 136 S. Ct. 2090

16  (2016), for the proposition that a "domestic injury remains necessary to bring a civil action under

17  § 1203 for a violation of § 1201" (Opp. at 11-12), it misinterprets the decision completely.  First,

18  *RJR Nabisco* involved questions of extraterritoriality under RICO.  *See* 136 S. Ct. at 2093-96.  Its

19  holdings do not apply here as the DMCA is not a RICO predicate act.  *Cf.* 18 U.S.C. § 1961(1).

20  Second, its "domestic injury" holding related to the private right of action in 18 U.S.C. § 1964(c),

21  which the Supreme Court emphasized still has "the important limitation that foreign conduct must

22  violate 'a predicate statute that manifests an unmistakable congressional intent to apply

23  extraterritorially.'"  *RJR Nabisco*, 136 S. Ct. at 2095, 2102 (citation omitted).  *RJR Nabisco* does

24  not hold that a domestic injury is ever sufficient to bring any extraterritorial claim.

**2.      There Is No Evidence of Which of the 39, 178 Call-Home Entries
Involve Violations that Occurred in the United States**

27      Synopsys misconstrues the "focus" inquiry under *RJR Nabisco* in its efforts to identify

---

28      [7] *Cf.* http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=16,
http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=20 (listing signatories).

permissible domestic applications of the DMCA.  A statute's focus is "the conduct it seeks to regulate, as well as the parties and interests it seeks to protec[t]."  *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (quotes omitted).  The focus of 17 U.S.C. § 1201(a) is circumvention—nothing else.[8]  Synopsys's cited cases on the "predicate act" doctrine under the Copyright Act and Patent Act have no bearing on the relevant conduct *under the DMCA*.  Even they make clear that the "predicate act" must be a statutory *violation* that enables exploitation abroad.[9]  As discussed below, Synopsys has failed to present evidence of any U.S. "predicate" violation of § 1201(a) from the 39,178 "Taiwan egress" call-home entries.

>    ***Act of circumvention.***  Synopsys argues that as long as the circumventions involved "some domestic aspect," *e.g.* a U.S. user or computer, those circumventions are domestic.  (Opp. at 14.)  Synopsys offers evidence that Tsai first *copied* Synopsys software in the U.S. (*id.* at 15:28-16:3), and then Tsai, Wang, and other users of the "asiclib" account *used* Synopsys software while in the U.S. (*Id.* at 14:7-14:26)  But copying or use of software is not a violation of § 1201(a), *see supra* at Section I.D, and Synopsys has offered no evidence of a *circumvention* of its license key system—which it defines as "using [its] counterfeit license keys" (Opp. at 6-7)— by a U.S. user or computer.[10]  It cannot because the facts point to the use of counterfeit keys on servers *in Taiwan,* which, as Synopsys' expert verified, ████████████████████████ ████  (*See* ECF 253-27 at 188:10-189:13.)  Further, even if use of software constituted a

<hr/>

[8] *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952 (9th Cir. 2010) ("[A] fair reading of the statute (supported by legislative history) indicates that Congress created a distinct anti-circumvention right under § 1201(a) without an infringement nexus requirement."); United States Copyright Office, Section 1201 of Title 17: A Report of the Register of Copyrights, p. 43 (2017) ("[A] section 1201(a)(1) violation is complete *upon circumvention* of an access control, regardless of whether the circumventing party has committed or intends to commit an act that would infringe copyright.") (emphasis added).  17 U.S.C. § 1201(b) is not addressed here because Synopsys relies on the same facts for the relevant conduct.

[9] In *WesternGeco*, 138 S. Ct. 2129, the damages for foreign profits was a permissible domestic application of 35 U.S.C. § 284 because defendant committed the conduct that infringed patents from the United States.  And in *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998), the copyright infringement that enabled further violations first occurred entirely in the United States. *Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011), is irrelevant because it does not apply the predicate act doctrine to domestic acts.

[10] At most, Synopsys' evidence indicates that ████████████████████████████████ ██████████████████████████████  (*See* ECF 295-1 (Ex. 15) at 4:18-27, 23:25-28.) Synopsys' forensic expert even conceded that ████████████████████████ ████████████  (ECF 240 (Ex. D) (Roffman Report) at 33.)

1   circumvention, Synopsys has not presented evidence of (a) which, if any, of the specific 39,178

2   "circumventions with Taiwan egress data" involved use from the United States,[11] and (b) how

3   that use "enabled" violations abroad.  At the minimum, Synopsys has not presented a material

4   factual dispute that the **28,090** "Taiwan egress data" entries *that are not* attributed to the U.S.

5   employees Tsai and Wang or to the "asiclib" account—i.e., entries that list user names of *Taiwan*

6   employees—did not occur entirely outside the United States.  (*See* ECF 240, 241-5.)  The Court

7   should grant summary judgment that these acts are beyond the DMCA's reach.

8       ***Import and provision of services.***  Synopsys claims, with no legal support,[12] that the

9   DMCA is intended to address the import of services.  (Mot. at 12.)  Nonsense.  If one were

10  permitted to combine any verb within DMCA subsections with any noun, as Synopsys does, it

11  would create impossibilities such as "[n]o person shall . . . manufacture . . . any . . . service."

12  17 U.S.C. §§1201(a)(2) and (b)(1).  The Patent Act shows that Congress knows how to address

13  imports involving services performed outside of the U.S. when it wants; there, it created liability

14  for the import of "a *product* which is made by a process patented in the United States."  35 U.S.C.

15  § 271(g) (emphasis added); *see also Kenebrew v. Conn. Gen. Life Ins. Co.*, 882 F. Supp. 749, 754

16  (N.D. Ill. 1995) (finding that "import" is "identifiable with tangible, manufactured goods, not

17  with intangible items or services" such as insurance services).  As the Ninth Circuit has held, a

18  method of interpretation must be rejected if it produces absurd results when applied to other terms

19  within the same statute.  *See U.S. v. Pepe*, 895 F.3d 679, 687 (9th Cir. 2018).  That is the case

20  with the claim that Ubiquiti imported services and UNIL provided (i.e., exported) services.[13]

21      Even if §§ 1201(a)(2) and (b)(1) could be construed to include importing and providing

---

[11] Synopsys argues this is due to spoliation.  (Opp. at 15.)  But it ignores Ubiquiti's forensic expert's undisputed testimony that ██████████████████████████████████ ██████████████████████████████████████████ (ECF 279-3 at ¶¶ 6, 8, 9.)  Synopsys does not deny that it could have ██████████████████████ ██████████████████████████ (ECF 242-5 ¶ 16), or asked location-related questions during depositions—if it wanted to prove that the call-home entries reflect acts in the U.S.  Synopsys chose not to, and cannot meet its burden of proof.

[12] Synopsys's sole reliance on dictionary definitions (the current online version for "service" and a *32-year-old* one for "import") underscores what was required to cobble together this particular argument.

[13] Synopsys' other two cites are entirely irrelevant as the regulation defines specific services that cannot be provided vis-a-vis Syria and Iran—including services performed on behalf of or benefitting persons in Iran or Syria, and the treatise addresses "trade in services," not imports."

1   "services," Synopsys did not bring or disclose such claims in response to interrogatories on

2   §§1201(a)(2) and (b).  Its responses focused solely on possible import and provision of license

3   keys, *not* services.  (ECF 253-17 at 10, 13 ("Defendants created, imported, and/or provided to

4   third parties counterfeit license keys.").)  Accordingly, Synopsys cannot defeat Ubiquiti's motion

5   with new theories on importing and providing of *services*.  *See supra* at Section I.C.

6        ***Manufacture or trafficking.***  Synopsys also argues that a predicate domestic violation

7   exists because Tsai used key generator software to provide crack keys to others.  (Opp. at 15.)

8   But it cites no evidence (*id*. at 14:18-27, 23:25-28) that *Tsai* used such software.  Instead,

9   Synopsys' forensic expert noted that ███████████████████████████████████

10  ███████████████████████████████████████████████████████ (ECF 240 (Ex. D) at 7, 38,

11  60.)  Once again, Synopsys twists facts to drum up a factual dispute that does not exist.

12       **F.        Synopsys Cannot Establish a DMCA Claim Based on Simv**

13       Synopsys does not dispute that it does not own the copyright to VCS's "simv" output, or

14  that a DMCA plaintiff *must* own the copyright in the allegedly wrongfully accessed works.  *See*

15  17 U.S.C. 1201(a)(3) (applies to acts performed "without the authority of the copyright

16  owner").  It also does not address this Court's holding in *Dish Network, L.L.C. v. Rama*, No. 14-

17  cv-04847-WHO, 2015 WL 217135, at *2 (N.D. Cal. Jan. 14, 2015), that "[t]o state a claim

18  under § 1201(a), a plaintiff must allege:  (1) ownership of a copyrighted work . . . ."  Instead, it

19  asserts that there are links to its code, and that simv contains VCS code.  (Opp. at 16.)  But

20  those links are irrelevant to ownership because the Synopsys code does not do the "lion's share

21  of the work."  (*See* Mot. at 12.)  Synopsys does not claim otherwise.  (Opp. at 16.)  Because

22  Synopsys does not own VCS output, summary judgment should be granted for Ubiquiti and

23  UNIL on the 10,932 calls home relating to simv.  (*See* Mot. at 12.)

**II.   SYNOPSYS HAS NOT RAISED A MATERIAL FACTUAL DISPUTE WITH
        RESPECT TO ITS 18 U.S.C. § 2318 CLAIM (CLAIM 4)**

24

25       **A.        Synopsys Offers No Evidence that the License Keys Function as Labels**

26       This Court held that, without some identifying aspect, a key file does not constitute a

27  label (ECF 70 at 18) and granted Synopsys leave to amend because,

28       [a]t oral argument, Synopsys argued that evidence will show that when the keys
         were transmitted, they were accompanied by Synopsys logos and/or other

1
2
3

> information and indicia that served the 'identifying' aspect of the statute.  Those allegations, however, are not in the AC.  Absent allegations showing how the keys, and the information transmitted with them, could violate the 'identification' purpose of the statute, there is no basis to stretch Section 2318 to cover the distribution of the keys without any context associating them as Synopsys labels.

4   (Opp. at 17.)  While Synopsys added such allegations to subsequent amended complaints, its

5   opposition *fails* to cite to any evidence supporting the allegations.  Instead, it relies on its

6   familiar trope that "the Court has already rejected Defendants' argument" and asserts that its

7   license key files include "the copyright owner, the licensee, the term of the license, the physical

8   site ID," among other details about *the licensee.  (Id.)*  Significantly, it does not cite to any

9   evidence that the license keys "were accompanied by Synopsys logos and/or other information

10   and indicia *that served the 'identifying' aspect of the statute*" (ECF 70 at 18 (emphasis added)),

11   or that the *counterfeit* keys have the same "identifying" aspect.  Instead, it cites only to

12   irrelevant expert testimony about running reports or using keys to determine what license files

13   are installed on a system, to alleged evidence of copying, and to the call-home data.  (Opp.

14   at 17-18.)  This does not address what the Court is looking for, and is not sufficient to create a

15   triable issue of fact on the labeling claims.

16       Ubiquiti submits that this Court's previous holding that license keys need not

17   accompany the software for § 2318 liability (ECF 70) was erroneous in light of the purpose of

18   the statute.  *See* 18 U.S.C. § 2318 ("affixed to, enclosing, or accompanying, or designed to be

19   affixed to, enclose, or accompany"); *see also Microsoft Corporation v. My Choice Software,

20   LLC*, No. SA CV 16-2187-DOC (KESx), 2017 WL 5643210, at *5 (C.D. Cal. Oct. 10, 2017)

21   (dismissing § 2318 claim because plaintiff did not allege that the counterfeit labels were

22   "paired" with the counterfeit software that defendants sold).  Synopsys' citation of *Cleopatra

23   Records, Inc. v. Inspired Studios, Inc.*, No. LA CV 15-00915 JAK (AGRx), 2015 WL 12426147

24   (C.D. Cal. Oct. 8, 2015), is misplaced because the digital files at issue—album artwork—was

25   displayed *adjacent to* the counterfeit musical recordings that defendant was selling.  (*Id.*)

26       **B.    Synopsys Offers No Evidence that the License Keys Are Illicit Labels**

27       Although Synopsys claims that "it uses its genuine licensing certificates to verify that

28   copies are not infringing" (Opp. at 18) so that its illicit labeling claim might survive, the license

1    keys that Synopsys claims were trafficked are counterfeit, *not genuine*.  They *cannot* be illicit

2    labels under the statute's plain language.  18 U.S.C. § 2318(b)(4).  The only genuine license key

3    claim Synopsys makes is that "Ubiquiti sent copies of VCS and the temporary license keys to

4    Taiwan for use by UNIL."  (Opp. at 19.)  But Synopsys does not argue that a genuine license

5    key was used with the wrong copy, as necessary under the statute.  (*Id.*)  Sending an authentic

6    licensed key to a coworker for use with the software it is intended for is not trafficking of an

7    illicit label.  Synopsys' claim that alleged spoliation prevents it from determining if anyone used

8    "modified versions of the original Synopsys temporary keys" (*id.*) is a red herring.  A modified

9    version is no longer "genuine" and cannot be an illicit label.

10       **C.    Consumer Confusion Is Necessary for a § 2318 Violation**

11           Synopsys asserts that § 2318 is not limited to "cases involving consumer confusion" and

12   that Ubiquiti cited history for the "wrong act." (Opp. at 18.)  Not true.  Congress "altered the

13   definition of 'traffic' found in subsection 2318(B)(2)" in 1982, creating a statutory scheme to

14   prevent customers from being "duped into believing the product purchased is genuine because

15   of counterfeited packaging."  (Mot. at 15-16.)  Synopsys cites later history related to addition of

16   computer program labels, but ignores that Congress *reiterated* its prior concern that an

17   "unsuspecting customer who unwittingly buys a counterfeit product is rightfully upset when the

18   shoddy product fails to perform to expectations," and that the anger is "mistakenly directed at

19   the legitimate manufacturer."  H. R. Rep. No. 104-556, at 2, 7 (1995).

20           Synopsys' cited cases are not helpful on this point.  In *U.S. v. Bao*, 189 F.3d 860 (9th Cir.

21   1999), the defendant was convicted for a scheme to print 40,000 counterfeit Microsoft manuals.

22   The defendant's actions were clearly prefatory to a plot to deceive consumers, which is absent

23   here.  *See also U.S. v. Teh*, 535 F.3d 511 (6th Cir. 2008) (convicted for importing counterfeit

24   DVDs and DVD sleeves); *U.S. v. Akram*, 165 F.3d 452 (6th Cir. 1999) (convicted for

25   transporting counterfeit videotapes).  In denying a motion to dismiss, the *Cleopatra Records*

26   court expressly found such confusion alleged.  2015 WL 12426147, at *7 ("by using the album

27   cover Images with its sales, Plaintiff has led consumers to believe that the recordings are

28   genuine").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.      Synopsys Proffers No Evidence that Defendants Trafficked in Labels

Synopsys proffers no evidence for label trafficking except that employees working on a *single* engineering team shared license keys.  (Opp. at 19-20).  Synopsys focuses on corporate separateness arguments in a facile attempt to apply an anti-trafficking traffic statute to mere *users* of trafficked goods.  That the employees allegedly bragged about the money they would save does not turn them into traffickers, as such a reading would create claims against any purchaser who opportunistically purchased trafficked goods, stretching application of the statute far beyond its purpose.  S. Rep. No. 97-274, at 9 (1981) (trafficking intentionally "exclude[s] those who knowingly acquire counterfeit articles solely for personal use").

### III.     SYNOPSYS HAS NOT RAISED A MATERIAL FACTUAL DISPUTE WITH RESPECT TO ITS 18 U.S.C. § 1962(c) CLAIM (CLAIM 6)

This Court made clear in its August Order that whether Ubiquiti and UNIL are sufficiently distinct from the alleged piracy enterprise could "be revisited on summary judgment after discovery about the governance and operation of the two corporate entities is conducted."  (ECF 70 at 28).  The Court called out a lack of evidence as to whether UNIL is wholly-owned and controlled by Ubiquiti.  (*Id.* at 27 n.18.)  The evidence now shows that UNIL is wholly-owned and controlled by Ubiquiti.  Synopsys does not refute this.  As demonstrated in the opening brief, the Ninth Circuit and the vast majority of other courts have held that a defendant corporation is not sufficiently distinct from an enterprise that is made up of that corporation, its subsidiaries, and/or its employees.  (Mot. at 19.)  Synopsys' arguments to the contrary should be rejected.

***Synopsys' Formal Distinctiveness Argument.***  Synopsys cites *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158 (2001) for the proposition that legal separateness is sufficient to satisfy RICO's distinctiveness requirement.  Synopsys ignores that *Cedric Kushner* was about whether a sole proprietor can be sufficiently distinct from his corporation.  The Supreme Court explicitly drew a distinction between that situation and the one at hand, explaining that "a claim that a corporate employee is the 'person' and the corporation is the 'enterprise'" presents "quite different circumstances" than "a claim that a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise,'" which the Court

1   referred to as an "oddly constructed entity." *Id*.  Similarly, Synopsys relies on *Sever v. Alaska*

2   *Pulp Corp.,* 978 F.2d 1529, 1534 (9th Cir. 1992), in which the Ninth Circuit held that "individual

3   officers as defendants/persons" were sufficiently distinct from the "enterprise" corporation.  But

4   Synopsys ignores that the Ninth Circuit, like the Supreme Court, distinguished that scenario from

5   one where the corporation is the named defendant, noting that with a corporate defendant, the fact

6   that a corporation operates only through its officers is an impediment to a RICO claim.  *Id*.

7           Synopsys also cites cases involving association-in-fact enterprises consisting of not only

8   members of a corporate family, but also unrelated corporations.  Under those circumstances (not

9   present here), courts have found the distinctiveness requirement met.  *See Negrete v. Allianz Life*

10  *Ins. Co. of N. Am.*, 926 F. Supp. 2d 1143, 1151, 1153 n.7 (C.D. Cal. 2013) (several corporate

11  members of enterprise "were not owned by [the parent corporation] at all"); *MH Pillars Ltd. v.*

12  *Realini*, No. 15-cv-01383-PJH, 2018 WL 1184847, at *4 (N.D. Cal. Mar. 7, 2018) (same).  In this

13  case, however, every member of the purported enterprise is part of the same corporate family.

14          Finally, Synopsys cites to *Watts* and its progeny, a handful of district court cases holding

15  that legal separateness is sufficient.  *Watts* was decided before the Ninth Circuit decided *Chagby*,

16  and the *Watts* court noted that the Ninth Circuit at that time had never addressed this issue.  *Watts*

17  *v. Allstate Indem. Co.*, No. CIV. S-08-1877 LKK/GGH, 2009 WL 1905047, at *5 (E.D. Cal. June

18  30, 2009).  While *Chagby* is unpublished, it appears to be the only time the Ninth Circuit has

19  spoken on the issue, holding that the "theory that an enterprise existed between [a parent]

20  Corporation and its wholly-owned subsidiaries fails to meet the distinctiveness requirement of

21  civil RICO claims."  *Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009).  The *per se*

22  distinction rule in *Watts* is also at odds with several other Ninth Circuit decisions directing that

23  mere legal separateness is not sufficient to meet the RICO person/enterprise distinctiveness

24  requirement.[14]  No circuit court holds that mere legal separateness is sufficient to find a corporate

25  defendant distinct from an enterprise consisting solely of members of the corporate family.

26          ***Synopsys' Practical Distinctiveness Argument.***  Synopsys confuses two separate legal

27

28  _____
    [14] *See e.g. Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)
    ("[I]f the 'enterprise' consisted only of [the parent company] and its employees, the pleading would fail
    for lack of distinctiveness."); *Sever*, 978 F.2d at 1534 (same).

1    issues under RICO, citing here to cases about a different RICO requirement—that the enterprise

2    be distinct from the pattern of racketeering.  *See U.S. v. Blinder*, 10 F.3d 1468, 1473 (9th Cir.

3    1993) (RICO enterprise must have "ascertainable structure" distinct from the pattern of

4    racketeering); *U.S. v. Feldman*, 853 F.2d 648, 660 (9th Cir. 1988).  These cases do not address the

5    question at issue: whether a corporate defendant is sufficiently distinct from an enterprise

6    consisting of itself and its constituent parts.

7         ***Synopsys' "Something More" Argument.***  The Court need not apply the "something

8    more" test here given the extensive authority holding that a corporation is not sufficiently distinct

9    from its subsidiaries and employees.  (Mot. at 21-22.)  Nonetheless, some courts have found the

10   distinctiveness requirement satisfied when there is both legal separateness between the alleged

11   members of the enterprise *and* "something more."  *See e.g. In re Countrywide Fin. Corp.*

12   *Mortgage Mktg. & Sales Practices Litig.,* 601 F. Supp. 2d 1201, 1214 (S.D. Cal. 2009).  These

13   cases require that the parent company's "decision to operate through" subsidiaries was made

14   specifically to "facilitate[ ] the activity of the enterprise."  *See id*.

15        Synopsys claims that it can easily meet this test.  But it cannot.  Synopsys has no evidence

16   that Ubiquiti "took advantage of its position as a well-funded, publicly traded company" to obtain

17   Synopsys software, and then intentionally transferred the software to UNIL to avoid being sued.

18   (Opp. at 21-22.)  Synopsys can point to no evidence that Ubiquiti or UNIL was even aware that

19   Tsai planned to pirate software, much less that Ubiquiti decided to place the AME team at UNIL

20   to facilitate a RICO scheme.  Ubiquiti merely delegated the task of the AME project to UNIL in

21   the normal course of its "legitimate corporate and financial relationship."  *In re Countrywide,* 601

22   F. Supp. 2d at 1201.  Synopsys cannot simply invent a theory during summary judgment; it must

23   proffer evidence that creates a triable issue of fact.  Synopsys has not and cannot do so here.

24        **A.    Synopsys Proffers No Evidence of the Existence of a "Common Purpose"**

25        Synopsys argues that it is not required to provide evidence that Ubiquiti and UNIL shared

26   the common purpose of the enterprise because "a corporation can act only through its agents and

27   employees."  (Opp. at 22.)  But "an association-in-fact enterprise is a group of persons associated

28   together for a common purpose of engaging in a course of conduct."  *Odom v. Microsoft Corp.*, 486

1    F.3d 541, 552 (9th Cir. 2007).  If Ubiquiti and UNIL are separate and distinct members of the

2    purported enterprise, they must each share the alleged purpose.  *Ellis v. J.P. Morgan Chase & Co.*,

3    No. 12-cv-3897-YGR, 2015 WL 78190 (N.D. Cal. Jan. 6, 2015).  And there is simply no evidence

4    of this.

5         Synopsys seems to suggest (without authority) that it is exempt from the requirement of

6    proving each element of a RICO claim as to each defendant.  Synopsys confusingly claims that *Ellis*

7    held that while the enterprise members must share a common purpose, that purpose need not be

8    criminal.  (Opp. at 22, citing *Ellis*, 2015 WL 78190, at *4.)  Yet the alleged common purpose of the

9    piracy enterprise was to pirate Synopsys' software.  And there is no evidence that Ubiquiti and UNIL

10   even knew about Tsai's activities.  Synopsys also notes that corporate defendants can face liability

11   under respondeat superior, citing *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1155 (9th Cir.

12   1992).  (Opp. at 23.)  But *Brady* makes clear that "respondeat superior liability is inappropriate under

13   18 U.S.C. § 1962(c) when the enterprise and person are not distinct."  *Brady*, 974 F.2d at 1154.

14        **B.    Synopsys Proffers No Evidence that Ubiquiti or UNIL Managed the Affairs of an Enterprise**

15        Lacking evidence that *Ubiquiti or UNIL* played a role in the managing the alleged

16   enterprise, Synopsys attempts to attribute Tsai's actions to them.  But Synopsys has alleged them

17   to be distinct RICO persons, and the law (undisputed by Synopsys) is clear: "*each individual*

18   *Defendant*" must have "participate[d] in the operation or management of the enterprise."  *Prime*

19   *Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-01860-ODW, 2012 WL 1669726, at

20   *6 (C.D. Cal. May 14, 2012).  With no evidence that Ubiquiti or UNIL managed the affairs of an

21   alleged enterprise, separate and apart from simply running their business, Synopsys' claim fails.

22        **C.    Synopsys Proffers No Evidence of Any RICO Predicate Acts**
          **1.    There Is No Evidence of Fraud with Access Devices**

23

24        Synopsys' access device fraud claim is equally farfetched.  It claims that when a customer

25   licenses its software, the customer deposits money into an account to obtain the software.  (Opp.

26   at 25).  But there is no evidence that Ubiquiti accessed Synopsys customer deposit accounts.

27   Instead, Synopsys accuses Ubiquiti of using counterfeit license keys to access goods

28   directly.  (Opp. at 25 ("create[d] fake licenses that gave them unlimited access to Synopsys

software"; ECF 253-17 at 17.)  Synopsys' creation of a user account for each licensee is not the

system of "debits and credits" required under Ninth Circuit law.  *See U.S. v. Bailey*, 41 F.3d 413,

417 (9th Cir. 1994) (account is "a contractual relationship that makes possible the provision of

goods, services, or money based on payment, or the expectation of payment, at some later point in

time, as described by the entry of credits and debits in a formal record").

### 2. The Alleged Copyright Infringement Cannot Serve as a Predicate Act

The circumstances here do not nearly rise to the level of "large-scale" counterfeiting or

piracy by "large scale bootleggers and pirates" contemplated by Congress when it added criminal

copyright as a RICO predicate act.  *See Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx),

2005 WL 6184235, at *6 (C.D. Cal. June 14, 2005) ("The court can find no legislative history

consistent with a Congressional intent to expand RICO liability to all knowing copyright

infringement, including acts that cannot be characterized as counterfeiting or piracy"); ECF 253-

35 at 6 ("Only the most egregious instances of criminal copyright infringement have ever been

upheld as predicate offenses to racketeering charges under RICO.").  The evidence that Synopsys

cites does not suggest that Ubiquiti engaged in such large scale criminal copyright infringement.

At most, it establishes one download of one program, perhaps several downloads and

configurations of another, and maybe even use by the entire ASIC team.  (Opp. at 23-24.)  The

Court should reject this escalation tactic and grant summary judgment on this claim.

## IV.   SYNOPSYS HAS NOT RAISED A FACTUAL DISPUTE WITH RESPECT TO ITS 18 U.S.C. § 1962(d) RICO CONSPIRACY CLAIM

Synopsys does not dispute that neither Ubiquiti nor UNIL can be liable for conspiracy

because they are the enterprise, and enterprises cannot be held liable under § 1962(d).  (Mot. at

24.)  Rather, Synopsys contends that "because the summary judgment motion fails as to

Synopsys' § 1962(c) claim, it fails as to the § 1962(d) claim, too."  (Opp. at 25.)  This is wrong.

While a RICO conspiracy claim *does* fail when a substantive RICO claim fails, it is not true that

simply because a substantive RICO claim survives, a related conspiracy claim must as well.

### CONCLUSION

Because Synopsys has failed to raise genuine disputes of material fact, the Court should

grant summary judgment in Ubiquiti and UNIL's favor.

Dated:  October 31, 2018

JENNIFER LEE TAYLOR
WENDY J. RAY
STACEY M. SPRENKEL
JOYCE LIOU
AMANDA D. PHILLIPS
MORRISON & FOERSTER LLP


By:  _/s/ Jennifer Lee Taylor_
JENNIFER LEE TAYLOR

Attorneys for Defendants
UBIQUITI NETWORKS, INC. and
UBIQUITI NETWORKS
INTERNATIONAL LIMITED